MICV2004-04144

AW CHESTERTON CO, INC

V.

ST PAUL FIRE & MARINE INSURANCE CO

****REMOVED TO US DISTRICT COURT****

**Commonwealth of Massachusetts**
**SUPERIOR COURT DEPARTMENT**
**THE TRIAL COURT**
**CAMBRIDGE**

MICV2004-04144

I, Karen O'Connor, Deputy Assistant Clerk of the Superior Court, within and for said County of Middlesex, do certify that the annexed papers are true copies made by photographic process of pleadings entered in the Superior Court on the 18th of October, in the year of our Lord, Two Thousand Four



In testimony whereof, I hereunto set my hand and affix the seal of said Superior Court, at Cambridge, in said County, this 29th of Nov., in the year of our Lord, Two Thousand Four

_Karen A. O'Connor_
Deputy Assistant Clerk

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.

SUPERIOR COURT DEPT.
CIVIL ACTION NO. 04-4144

A.W. CHESTERTON CO., INC., )
    Plaintiff, )
                         )
                           )
v. )
                           )
ST. PAUL FIRE & MARINE )
INSURANCE COMPANY, )
    Defendant. )
                            )

**NOTICE OF FILING**
**OF NOTICE OF REMOVAL**

To:   THE HONORABLE JUSTICES OF THE MIDDLESEX SUPERIOR
COURT, COMMONWEALTH OF MASSACHUSETTS, AND ALL
PARTIES BY AND THROUGH THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on this 24th day of November, 2004, defendant

St. Paul Fire & Marine Insurance Company filed a Notice of Removal of this action to

the United States District Court for the District of Massachusetts. A true copy of the

Notice of Removal as so filed is attached hereto.

The State Court shall proceed no further.

FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS
FOR THE

NOV 2 4 2004

St. Paul Fire and Marine
Insurance Company,
By its attorneys,

J. Patrick Kennedy
BBO# 565778
Bulkley, Richardson, and Gelinas LLP
One Post Office Squire, Suite 3700
Boston, Massachusetts 02109
Telephone: (617) 368-2500
Facsimile: (617) 368-2525
Email: pkennedy@bulkley.com

Of Counsel

Harry Lee
March D. Coleman
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 429-8073
Facsimile: (202) 429-3902
Email: mcoleman@steptoe.com

Dated: November 24, 2004

## CERTIFICATE OF SERVICE

I, J. Patrick Kennedy, hereby certify that a true and correct copy of the foregoing

Notice of Removal was served on this 24th day of November, 2004, by first class mail,

postage prepaid, upon the following counsel of record:

Harry L. Manion III, Esq.
Martin F. Gaynor III, Esq.
Kathryn L. Colburn, Esq.
Cooley, Manion & Jones LLP
21 Custom House Street
Boston, Massachusetts 02110

J. Patrick Kennedy

284197.1

# UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| A.W. CHESTERTON CO., INC. ) | Civil Action No. _____ |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **NOTICE OF REMOVAL** |
| ST. PAUL FIRE AND MARINE ) | |
| INSURANCE COMPANY ) | |
| ) | |
| ) | |
| Defendant. ) | |

## To: THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

Pursuant to 28 U.S.C. §§ 1441 and 1446, defendant, St. Paul Fire and Marine Insurance Company ("St. Paul") hereby files this Notice of Removal in connection with the above-entitled action and sets out below the grounds for this Notice of Removal.

1.    On October 18, 2004, plaintiff A.W. Chesterton Company, Inc. ("Chesterton") filed a complaint (the "Original Complaint") against "The St. Paul Travelers Companies, Inc." in the Superior Court of Middlesex County, Massachusetts.  On October 27, 2004, Chesterton, through the Massachusetts Division of Insurance, served process of the Original Complaint on St. Paul's registered agent, which St. Paul's registered agent received on October 29, 2004.

2.    On November 3, 2004, Chesterton filed an amended complaint (the "Amended Complaint") against St. Paul in the Superior Court of Middlesex County, Massachusetts.  On November 3, 2004, Chesterton, through the Massachusetts Division of Insurance, served process

of the Amended Complaint on St. Paul's registered agent, which St. Paul's registered agent received on November 15, 2004.

3.    The Amended Complaint seeks damages and declaratory relief in connection with a certain liability insurance policy issued or allegedly issued by St. Paul to Chesterton. The United States District Court for the District of Massachusetts has jurisdiction by reason of the diversity of citizenship of the parties.

4.    Plaintiff Chesterton seeks a declaration and damages the value of which exceeds $75,000, exclusive of interests and costs, as prescribed by 28 U.S.C. § 1332(a).

5.    At the time this action was commenced in the Superior Court for Middlesex County, Massachusetts, and at the present time, plaintiff Chesterton was, and is a citizen of Massachusetts. At the time this action was commenced, defendant St. Paul was, and is, a corporation organized under the laws of the Minnesota, with its principal place of business in the State of Minnesota. Thus, the plaintiff and the defendant are "citizens" of different states, as prescribed by 28 U.S.C. §1332(a)(1).

6.    A copy of all process and pleadings served upon defendant St. Paul are filed with this notice and are attached as Exhibit A.

7.    St. Paul will give written notice of the filing of this Notice as required by 28 U.S.C. § 1446(d), including filing a copy of this notice with the clerk of the Superior Court of Middlesex County, Massachusetts.

St. Paul Fire and Marine Insurance Company,
By its attorneys,

_(signature)_

J. Patrick Kennedy
BBO# 565778
Bulkley, Richardson, and Gelinas LLP
One Post Office Squire, Suite 3700
Boston, Massachusetts 02109
Telephone: (617) 368-2500
Facsimile:   (617) 368-2525
Email:  pkennedy@bulkley.com

Of Counsel

Harry Lee
March D. Coleman
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 429-8073
Facsimile:  (202) 429-3902
Email:  mcoleman@steptoe.com

Dated:  November 24, 2004

## CERTIFICATE OF SERVICE

I, J. Patrick Kennedy, HEREBY CERTIFY that a true and correct copy of the foregoing

Notice of Removal was served on this 24th day of November, 2004, by first class mail, postage

prepaid, upon the following counsel of record:

Harry L. Manion III, Esq.
Martin F. Gaynor III, Esq.
Kathryn L. Colburn, Esq.
Cooley, Manion & Jones LLP
21 Custom House Street
Boston, Massachusetts 02110

_(signature)_

J. Patrick Kennedy

284193-1

- 3 -

**CIVIL ACTION COVER SHEET**

**04-4144**

Trial Court of Massachusetts
Superior Court Department
County:

| PLAINTIFF(S) | DEFENDANT(S) |
|---|---|
| A.W. Chesterton Company | The St. Paul Travelers Companies |

**ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE** 617 737-3100
Harry L. Manion, Martin F. Gaynor III
Cooley Manion Jones LLP, 21 Custom House St.
Board of Bar Overseers number: 564384   Boston, MA 02110

**ATTORNEY (if known)** unknown

## Origin code and track designation

Place an x in one box only:

[XX] 1. F01 Original Complaint
[ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
[ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)

[ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
[ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
[ ] 6. E10 Summary Process Appeal (X)

## TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| A99 | Breach of Ins. Contract | F | (XX) Yes    ( ) No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . .
2. Total Doctor expenses . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . .
3. Total chiropractic expenses . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . .
4. Total physical therapy expenses . . . . . . . . . . . . . . . $. . . . . . . . . . .
5. Total other expenses (describe) . . . . . . . . . . . . . . . . $. . . . . . . . . . .

Subtotal $. . . . . . . . . . .

B. Documented lost wages and compensation to date . . . . . . . . $. . . . . . . . . . .
C. Documented property damages to date . . . . . . . . . . . . . . . . . $. . . . . . . . . . .
D. Reasonably anticipated future medical and hospital expenses . . $. . . . . . . . . . .
E. Reasonably anticipated lost wages . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . .
F. Other documented items of damages (describe) . . . . . . . . . . . $. . . . . . . . . . .

G. Brief description of plaintiff's injury, including nature and extent of injury (describe)

$. . . . . . . . . . .

TOTAL $. . . . . . . . . . .

*FILED IN THE OFFICE OF THE CLERK OF THE COURTS FOR THE ... ESEX OCT 18 2004 ... CLERK.*

### CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):   The Defendant issued an umbrella excess general liability policy to the Plaintiff, which covers asbestos-related liabilities. The Defendant has breached the contract by failing to pay loss or expenses as defined in the policy on account of asbestos-related claims against the Plaint.

TOTAL $. . . . . . . . . . .
In excess of $5 mill

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _____   DATE: 10-18-04

AOTC-6 mtc005-11/99
A.O.S.C. 1-2000

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss

SUPERIOR COURT DEPT.
CIVIL ACTION NO.

A.W. CHESTERTON COMPANY, INC.
    Plaintiff,

    v.

THE ST. PAUL TRAVELERS COMPANIES,
INC.,
    Defendant.

04-4144



FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS
For:
OCT 18 2004

CLERK

## COMPLAINT AND DEMAND FOR JURY TRIAL

### PARTIES

1.    The plaintiff, A.W. Chesterton Company, Inc. ("Chesterton") is a Massachusetts corporation with its principal place of business in Stoneham, Middlesex County, Massachusetts.

2.    Defendant The St. Paul Travelers Companies, Inc. ("St. Paul"), formerly St. Paul Fire and Marine Insurance Company, is a Minnesota corporation with its principal place of business in Saint Paul, Minnesota. St. Paul is and/or at all relevant times mentioned herein was, engaged in the business of writing liability insurance policies in Massachusetts and elsewhere.

### JURISDICTION AND VENUE

3.    Jurisdiction in this Court is proper under Mass. Gen. L. ch. 223A because the defendant, within the time period relevant to the cause of action stated herein, has transacted business within Massachusetts, including contracting to supply services in

Massachusetts, contracting to insure persons, property or risks located within Massachusetts, and engaging in the business of writing or delivering liability insurance policies in Massachusetts. Moreover, the cause of action stated herein arises from the defendant's contracting to supply services in Massachusetts and contracting to insure risks located within Massachusetts at the time of contracting.

4.    Venue is proper because Chesterton has its principal place of business in Middlesex County.

## FACTUAL BACKGROUND

5.    Chesterton is a manufacturer of products that for many decades contained encapsulated asbestos. In excess of 400,000 claims, beginning in January, 1980, have been asserted against Chesterton by persons who allege that they have suffered personal injury as a result of exposure to asbestos fibers ("Underlying Claims"). Chesterton has spent millions of dollars defending and settling the Underlying Claims.

6.    During the period relevant to this action, Chesterton has been insured by means of primary comprehensive general liability policies, and several layers of excess insurance policies.

7.    In 1996, Chesterton filed a declaratory judgment action in this Court (Civil Action No. 96-4871) against its first layer excess carriers, American Home Assurance Company, United States Fire Insurance Company, The Continental Insurance Company, Northbrook Insurance Company, certain London Market Companies, First State Insurance Company, and Stonewall Insurance Company, and the Massachusetts Insurers Insolvency Fund ("MIIF"), seeking a determination of the scope of the insurers'

- 2 -

obligations to Chesterton under their policies and damages for the insurers' failure to perform their contractual obligations pursuant to the policies.

8.    A trial was held in June, 2002 ("the Phase I" Trial") to decide several issues including whether Chesterton had exhausted all primary comprehensive general liability insurance available to it that covered asbestos-related claims. The Superior Court issued a memorandum and decision following that trial in which the Court decided that Chesterton had in fact exhausted all primary coverage that was required to be exhausted. The Court then scheduled a second trial ("the Phase II Trial") to resolve various issues raised by the remaining defendants and to determine the amounts owed to Chesterton by those defendants. The Court resolved most of the legal issues raised by the defendants through a series of summary judgment motions. The Court issued decisions on the motions for summary judgment on May 20, 2003. The Court then scheduled the Phase II Trial for June 16, 2003 to resolve all outstanding issues of fact.

9.    Prior to the Phase II Trial, Chesterton settled with all of the defendants other than the MIIF. The Phase II Trial was then held in June, 2003 between Chesterton and the MIIF and the Court issued its final judgment in September, 2003.

10.    In its final judgment, the Court declared that Chesterton had exhausted all coverage provided by its primary policies that applied to asbestos-related claims. Specifically, Judge McLaughlin, sitting by special assignment, held, "[a]ll valid and collectible primary comprehensive general liability policies, the limits of which were required to have been exhausted prior to any obligation of the defendant excess insurance carriers to indemnify or defend, have been, in fact, exhausted."

- 3 -

- 4 -

11.     The defendant in this case, St. Paul, in consideration for premiums duly paid by Chesterton, issued a second-layer excess policy to Chesterton, bearing policy number 569XA5135, with an effective period of January 18, 1972 to July 1, 1974 (attached as Exhibit A).

12.     The policy obligates St. Paul to pay Chesterton's "loss," defined as "the sums paid in settlements of losses for which the Insured is liable." "in excess of the exhausted primary and first-layer excess policies that underlie the St. Paul policy.

13.     The St. Paul policy also obligates St. Paul to pay a proportional share of costs and expenses associated with the Underlying Claims against Chesterton.

14.     In nearly every Underlying Claim, the claimant alleges to have suffered asbestos-related injury during the time period in which the St. Paul policy was in effect, thereby triggering the St. Paul policy.

15.     Chesterton has exhausted all primary and first-layer excess policies required to be exhausted before the obligations of the St. Paul policy arise.

16.     On August 14, 1997, Chesterton put St. Paul on notice that it was being named as a defendant in a large number of lawsuits for asbestos-related personal injuries. Thereafter, Chesterton periodically updated St. Paul on the amount Chesterton was spending defending and settling Underlying Claims. Since at least early 2003, Chesterton has responded to numerous specific requests for information by St. Paul related to Chesterton's settlement payments, allocation methods, and exhaustion of primary and first-layer excess policies.

17.     Despite St. Paul's knowledge that it is obligated now to fulfill its insurance obligations to Chesterton, St. Paul has refused to do so.

18.    Chesterton has satisfied all conditions precedent to St. Paul's coverage obligations.

## COUNT I

## (BREACH OF CONTRACT)

19.    Chesterton restates the allegations contained in paragraphs 1 through 18.

20.    St. Paul has breached the terms of its policy by refusing to assume its indemnification and expense obligations with respect to asbestos-related claims against Chesterton.

21.    As a result of St. Paul's breach of contract, Chesterton has suffered damages and will suffer additional damages until St. Paul assumes its indemnification and expense obligations.

22.    St. Paul has breached the implied covenant of good faith and fair dealing implied in its policy by refusing to assume its indemnification and expense obligations.

WHEREFORE, Chesterton requests that the Court enter judgment in its favor:

a.    awarding Chesterton damages in an amount to be determined at trial together with interest, costs, and attorneys' fees; and

b.    granting Chesterton such other relief as may be appropriate.

## JURY DEMAND

Pursuant to Mass. R. Civ. P. 38(b), Chesterton demands a trial by jury on all issues so triable.

A.W. CHESTERTON COMPANY, INC.
by its attorneys,

Harry L. Manion III, BBO No. 317440
Martin F. Gaynor III, BBO No. 564384
Kathryn R. Colburn. BBO No. 653244
COOLEY MANION JONES LLP
21 Custom House Street
Boston, MA 02110
(617) 737-3100

132171v2

- 6 -

EXHIBIT A

**EXCESS THIRD PARTY LIABILITY POLICY**

No. 569XA5135

NEW

FORMER POLICY NO.

A CAPITAL STOCK COMPANY

**ST. PAUL FIRE AND MARINE INSURANCE COMPANY**

ST. PAUL, MINNESOTA



**THE ST. PAUL**
INSURANCE COMPANIES

Serving you around the world... around the clock

ITEM 1. Insured's Name and Mailing Address

A. W. CHESTERTON COMPANY &
COMMERCIAL CHEMICAL COMPANY, INC.
ASHLAND STREET
EVERETT, MASSACHUSETTS

BREWER & LORD
INSURANCE

| ITEM 2. POLICY PERIOD: | | ITEM 3. LOCATION OF COVERAGE: | |
|---|---|---|---|
| FROM | TO | | |
| 1-18-72 | 4-17-74 | EVERETT, MASSACHUSETTS | and as further defined in the Primary Policy. |

*12.01 A.M., Standard time at the address of the Insured as stated herein.

ITEM 4. PRIMARY INSURANCE:

| INSURER'S NAME | POLICY NO'S. (Including Renewals or Replacements) | DESCRIPTION OF COVERAGE |
|---|---|---|
| UNITED STATES FIRE INS. CO. | DCL 92 10 75 | UMBRELLA EXCESS |

ITEM 5. LIMITS OF LIABILITY: The limit of the Company's liability shall be as stated herein, subject to all the terms of this Policy having reference thereto.

| SECTION I | IN EXCESS OF | SECTION II | SECTION III | |
|---|---|---|---|---|
| COMPANY LIMITS | | UNDERLYING LIMITS | TOTAL LIMITS | COVERAGE |
| $ | Each Person | $ | $ | A. Bodily Injury Automobile |
| $ | Each Accident or Occurrence | $ | $ | |
| $ | Each Person | $ | $ | B. Bodily Injury Except Automobile |
| $ | Each Accident or Occurrence | $ | $ | |
| $ | Aggregate Products | $ | $ | |
| $ | Each Accident or Occurrence | $ | $ | C. Property Damage Auto |
| $ | Aggregate Operations | $ | $ | D. Property Damage Except Automobile |
| $ | Aggregate Protective | $ | $ | |
| $ | Aggregate Products | $ | $ | |
| $ | Aggregate Contractual | $ | $ | |
| $ | Each Accident or Occurrence | $ | $ | E. Combined Single Limit Bodily Injury and/or Property Damage |
| $ | Aggregate | $ | $ | |
| $5,000,000. each occurrence | | $5,000,000. | $10,000,000. | F. Other - |
| $5,000,000.00 Aggregate | | $5,000,000. | $10,000,000. | UMBRELLA EXCESS |

ITEM 6. PREMIUM COMPUTATION Products.

| PREMIUM BASIS | ESTIMATED EXPOSURE | RATE | ESTIMATED PREM. | DEPOSIT PREM. | MINIMUM PREM. | AUDIT PERIOD |
|---|---|---|---|---|---|---|
| FLAT CHARGE | | FLAT | 1250. PER YR. | $ 304.00 $1250.00 | INSTALLMENT | |

AWC 0045655

AUTHORIZED REPRESENTATIVE

1-18-72
COUNTERSIGNATURE DATE

BOSTON, MASS.
COUNTERSIGNED AT

14184ELP 7M 8-68 W Rev. 7-63

## INSURING AGREEMENT

In consideration of the payment of premium stated in the Declarations, the ST. PAUL FIRE AND MARINE INSURANCE COMPANY, herein called the Company, agrees to indemnify the Insured, in accordance with the applicable insuring agreements of the Primary Insurance, against loss subject to the limits stated in Item 5, Section I of the Declarations and as fully and to all intents and purposes as though the Primary Insurance had been issued for the limits set forth in Item 5, Section III of the Declarations. This Policy shall apply only to coverages for which an amount is indicated in Item 5, Section I, and then only in excess of the corresponding amount as indicated in Item 5, Section II of the Declarations.

## DEFINITIONS

1.  **Loss.**  The word "loss" shall be understood to mean the sums paid in settlements of losses for which the Insured is liable after making deductions for all other recoveries, salvages and other insurances (other than recoveries under the policy/ies of the Primary Insurer), whether recoverable or not, and shall exclude all expense and costs.

2.  **Costs.**  The word "costs" shall be understood to mean interest on judgments, investigations, adjustment and legal expenses (excluding, however, all expense for salaried employees and retained counsel of and all office expense of the Insured).

3.  **Primary Insurance.**  The term "primary insurance" shall be understood to mean the policy (policies) described in Item 4.

## NUCLEAR ENERGY LIABILITY EXCLUSION

It is agreed that the insurance afforded under any liability coverage of this Policy or of any endorsement used herewith does not apply:

1.  Under any Liability Coverage, to injury, sickness, disease, death or destruction
    (a) with respect to which an Insured under the Policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or
    (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the Insured is, or had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2.  Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

3.  Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if
    (a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an Insured or (2) has been discharged or dispersed therefrom;
    (b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or
    (c) the injury, sickness, disease, death or destruction arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

4.  As used in this endorsement:
    "hazardous properties" include radioactive, toxic or explosive properties;
    "nuclear material" means source material, special nuclear material or byproduct material;
    "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;
    "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;
    "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;
    "nuclear facility" means
    (a) any nuclear reactor,
    (b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,
    (c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,
    (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,
    and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;
    "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;
    With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

THIS SPACE FOR THE ATTACHMENT OF ENDORSEMENTS, IF ANY

AWC 0045656

## CONDITIONS

1. It is agreed that this Policy, except as herein stated, is subject to all conditions, agreements and limitations of and shall follow the Primary Insurance in all respects, including changes by endorsement and the Insured shall furnish the Company with copies of such changes. It is further agreed should any alteration be made in the premium for the policy/ies of the Primary Insurers during the period of this Policy, then the premium hereon other than the Minimum Premium shall be adjusted accordingly.

2. Notice of any accident, which appears likely to involve this Policy, shall be given to the Company, which at its own option, may, but is not required to, participate in the investigation, settlement or defense of any claim or suit. In the event expense and/or costs in connection with any claim or suit is incurred jointly by mutual consent of the Company and of the Insured or Primary Insurer, the Company, in addition to its limits of liability as expressed in Item 5, Section I of the Declarations, shall be liable for no greater proportion of such expense and/or costs than the amount payable by the Company under this Policy bears to the total loss payment.

3. With respect to each coverage in Item 5, Section I of the Declarations, the Bodily Injury Limit applicable to each accident is subject to the limit specified as applicable to each person. There is no limit to the number of accidents for which claims may be brought hereunder (provided such accidents occur during the period of this Policy) except as provided by aggregate limits which, with respect to Item 5, Section I, when inserted therein apply to all accidents happening during each twelve months' term of the Policy.

4. All salvages, recoveries or payments recovered or received subsequent to a loss settlement under the Policy shall be applied as if recovered or received prior to such settlement and all necessary adjustments shall then be made between the Insured and the Company, provided always that nothing in this Policy shall be construed to mean that losses under this Policy are not recoverable until the Insured's ultimate net loss has been finally ascertained.

5. This Policy may be cancelled by the named Insured by surrender thereof to the Company or any of its authorized agents, or by mailing to the Company written notice stating when thereafter the cancellation shall be effective. This Policy may be cancelled by the Company by mailing to the named Insured at the address shown in this Policy written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of the surrender, or the effective date and hour of cancellation stated in the notice, shall become the end of the Policy Period. Delivery of such written notice either by the named Insured or by the Company shall be equivalent to mailing.

   If the named Insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

   In the event of the cancellation or termination of the primary insurance or a renewal thereof, this Policy, to the extent of such cancellation or termination, shall cease to apply at the same time without notice to the Insured.

   PROVISIONS REQUIRED BY LAW TO BE STATED IN THIS POLICY:—"This Policy is issued under and in pursuance of the laws of the State of Minnesota, relating to Guaranty Surplus and Special Reserve Funds." Chapter 437, General Laws of 1909.

   IN WITNESS WHEREOF, the ST. PAUL FIRE AND MARINE INSURANCE COMPANY, has caused this Policy to be signed by its President and Secretary at St. Paul, Minnesota, and countersigned on the Declarations page by a duly authorized representative of the Company.

_Secretary._                                    _President._

AWC 0045657

**THE ST. PAUL**
COMPANIES 

ENDORSEMENT

C

*The following spaces preceded by an asterisk (*) need not be completed if this endorsement and the policy have the same inception date.*

| ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 569XA5135 | 4-17-74 | A.W.Chesterton Company & Commercial Chemical Co. |

In consideration of an additional premium of $256.00 , it is understood and agreed that the policy period is amended to read :
1-18-72   to   7-1-74

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

*Agency Name and Address*

Brewer & Lord
40 Broad Street
Boston,Mass.  02109
200241 db

*In Witness Whereof,* the Company has caused this endorsement to be signed by a duly authorized representative of the Company.

_____
AUTHORIZED REPRESENTATIVE

16900-4 REV. REV. 8-64
PRINTED IN U.S.A.

AWC 0045658



**THE ST. PAUL**
COMPANIES

ENDORSEMENT

*The following spaces preceded by an asterisk (*) need not be completed if this endorsement and the policy have the same inception date.*

| ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 569XA5135 | 7/5/73 | A.W. Chesterton Company et al. |

It is agreed that the address of the Named Insured is amended
as follows:

Fallon Road
Middlesex Industrial Park
Stoneham, Mass.

AUG 10 1973

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

*Agency Name and Address*

Brewer & Lord
40 Broad Street
Boston, Mass. 02109
200241

14400-4 REP REV. 9-84
PRINTED IN U.S.A.

*In Witness Whereof,* the Company has caused this endorsement to be signed by its President at St. Paul, Minnesota and countersigned by a duly authorized representative of the Company.

AUTHORIZED REPRESENTATIVE

AWC 0045659



**THE ST. PAUL**
INSURANCE COMPANIES

ENDORSEMENT

*The following spaces preceded by an asterisk (\*) need not be completed if this endorsement and the policy have the same inception date.*

| ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| S69XA513S | 1-18-72 | |

IT IS HEREBY UNDERSTOOD AND AGREED THAT THE PREMIUM FOR THIS POLICY
IS PAYABLE AS FOLLOWS:

        $304.00  PAYABLE ON 1-18-72
        $1250.00 PAYABLE ON 4-17-72
        $1250.00 PAYABLE ON 4-17-73

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

*Agency Name and Address*

*In Witness Whereof,* the Company has caused this endorsement to be signed by its President at St. Paul, Minnesota and countersigned by a duly authorized representative of the Company.

Brewer & Lord

Carl B. Drake Jr. President.

AUTHORIZED REPRESENTATIVE

14600-8 REF REV. 8-64
PRINTED IN U.S.A.

AWC 0045660



**THE ST. PAUL**
INSURANCE COMPANIES

**ENDORSEMENT**

*The following spaces preceded by an asterisk (*) need not be completed if this endorsement and the policy have the same inception date.*

| ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 569XA5135 | 1-18-72 | A. W. CHESTERTON COMPANY & COMMERCIAL CHEMICAL CO., INC. |

IT IS UNDERSTOOD AND AGREED THAT ITEM 1, INSUREDS' NAME IS AMENDED TO READ AS FOLLOWS:

    A. W. CHESTERTON COMPANY
    COMMERCIAL CHEMICAL COMPANY, INC. & CHESCO., INC.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

*Agency Name and Address*

*In Witness Whereof,* the Company has caused this endorsement to be signed by its President at St. Paul, Minnesota and countersigned by a duly authorized representative of the Company.

    BREWER & LORD
    40 BROAD ST.
    BOSTON, MA 02109

President.

AUTHORIZED REPRESENTATIVE

16600-4 DEF REV. 8-64
PRINTED IN U.S.A.

AWC 0045661

June 3, 1974

# BREWER & LORD
FOUNDED 1859

*Insurance*

40 BROAD STREET
BOSTON, MASS. 02109

Telephone
426-0830

TERMS: NET 30 DAYS
FROM ABOVE DATE

560

A W CHESTERTON COMPANY
MIDDLESEX INDUSTRIAL
PARK — RTE 93
STONEHAM MASS            02180

Ch504    26

EXPIRING POLICY
NO. 56XA5135

TERMS: NET 30 DAYS FROM ABOVE DATE.
RECEIPT OF CHECK ACKNOWLEDGED ONLY WHEN REQUESTED SINCE PAID CHECK CONSTITUTES FULL RECEIPT

| EFF. DATE | | | POLICY | COMPANY | KIND OF POLICY | PREMIUM |
|---|---|---|---|---|---|---|
| 04 | 17 | 74 | 56XA5135 | ST PAUL F & M | Excess Liability | 256.00 |
| EXPIRES | | | | | | |
| 7 | 1 | 74 | | | | |

Extension Endorsement

Please detach and return TOP portion of this bill to BREWER & LORD

AWC 0045662

TO PLAINTIFF'S A__ORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: —
TORT — MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — OTHER

## COMMONWEALTH OF MASSACHUSETTS

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No. 04-4144

...........MIDDLESEX........... , ss
[seal]

A.W. Chesterton Company, Inc.
.............................................., Plaintiff(s)

v.

The St. Paul Travelers Companies, Inc.
........................................... , Defendant(s)

## SUMMONS

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

To the above-named Defendant: The St. Paul Travelers Companies, Inc., formerly St. Paul Fire and Marine Insurance Company
    You are hereby summoned and required to serve upon ....................................... Martin F. Gaynor III

.............................................. plaintiff's attorney, whose address is Cooley Manion Jones LLP

21 Custom House St., Boston MA 02110 ...., an answer to the complaint which is herewith

served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you

fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also

required to file your answer to the complaint in the office of the Clerk of this court at ..Cambridge.............

.................................................................... either before service upon plaintiff's attorney or within a

reasonable time thereafter.

    Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may

have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's

claim or you will thereafter be barred from making such claim in any other action.

    Witness, Suzanne V. DelVecchio, Esquire, at ....Boston.........................................................

the .....??? twenty-second................. day of .......October................................................

...................., in the year of our Lord ..Two Thousand Four...

A true copy Attest:

|10-25-04| Deputy Sheriff Suffolk County

Edward J Sullivan
Clerk

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

## PROOF OF SERVICE OF PROCESS

I hereby certify and return that on ........................................................................................
20........., I served a copy of the within summons, together with a copy of the complaint in this action, upon the within-named defendant, in the following manner (See Mass. R. Civ. P. 4 (d) (1-5)):

.............................................................................................................................................
.............................................................................................................................................
.............................................................................................................................................
                                                    ..................................................................................

Dated: .....................................................................................................................................

**N.B.  TO PROCESS SERVER:**
**PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN THIS BOX ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.**

(  _____  )

(     ..........................................., ...........  )

(  _____  )

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX......, ss.

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No.  04-4144

A.W. Chesterton Company, Inc.......Plff.

v.

The St. Paul Travelers Companies, Inc.......Deft.

SUMMONS
(Mass. R. Civ. P. 4)

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss

SUPERIOR COURT DEPT.
CIVIL ACTION NO. 04-4144

A.W. CHESTERTON COMPANY, INC. )
    Plaintiff, )
)
    v. )
)
ST. PAUL FIRE & MARINE INSURANCE )
COMPANY )
    Defendant. )
)

**NOTICE OF AMENDMENT OF COMPLAINT
AS A MATTER OF COURSE**

    Pursuant to Rule 15(a) of the Massachusetts Rules of Civil Procedure Plaintiff

hereby amends, as a matter of course, its Complaint by substituting the name St. Paul Fire

& Marine Insurance Company for The St. Paul Travelers Insurance Companies, Inc.

    Mass.R.Civ.P. 15(a) permits this amendment to be made as of course because no

answer has been filed and no order of dismissal has been entered.

                Attorney for Plaintiff,

                A.W. CHESTERTON COMPANY, INC.

                Harry L. Manion III, BBO No. 317440
                Martin F. Gaynor III, BBO No. 564384
                Kathryn R. Colburn. BBO No. 653244
                COOLEY MANION JONES LLP
                21 Custom House Street
                Boston, MA  02110
                (617) 737-3100

133396v1

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss

SUPERIOR COURT DEPT.
CIVIL ACTION NO. 04-4144

A.W. CHESTERTON COMPANY, INC. )
    Plaintiff, )
     )
    v. )
     )
ST. PAUL FIRE & MARINE INSURANCE )
COMPANY )
    Defendant. )
     )

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

### PARTIES

1.    The plaintiff, A.W. Chesterton Company, Inc. ("Chesterton") is a Massachusetts corporation with its principal place of business in Stoneham, Middlesex County, Massachusetts.

2.    Defendant St. Paul Fire & Marine Insurance Company ("St. Paul"), is a Minnesota corporation with its principal place of business at 385 Washington Street, Saint Paul, Minnesota 55102. St. Paul is and/or at all relevant times mentioned herein was, engaged in the business of writing liability insurance policies in Massachusetts and elsewhere.

### JURISDICTION AND VENUE

3.    Jurisdiction in this Court is proper under Mass. Gen. L. ch. 223A because the defendant, within the time period relevant to the cause of action stated herein, has transacted business within Massachusetts, including contracting to supply services in

Massachusetts, contracting to insure persons, property or risks located within
Massachusetts, and engaging in the business of writing or delivering liability insurance
policies in Massachusetts. Moreover, the cause of action stated herein arises from the
defendant's contracting to supply services in Massachusetts and contracting to insure
risks located within Massachusetts at the time of contracting.

4.     Venue is proper because Chesterton has its principal place of business in
Middlesex County.

## FACTUAL BACKGROUND

5.     Chesterton is a manufacturer of products that for many decades contained
encapsulated asbestos. In excess of 400,000 claims, beginning in January, 1980, have
been asserted against Chesterton by persons who allege that they have suffered personal
injury as a result of exposure to asbestos fibers ("Underlying Claims"). Chesterton has
spent millions of dollars defending and settling the Underlying Claims.

6.     During the period relevant to this action, Chesterton has been insured by
means of primary comprehensive general liability policies, and several layers of excess
insurance policies.

7.     In 1996, Chesterton filed a declaratory judgment action in this Court (Civil
Action No. 96-4871) against its first layer excess carriers, American Home Assurance
Company, United States Fire Insurance Company, The Continental Insurance Company,
Northbrook Insurance Company, certain London Market Companies, First State
Insurance Company, and Stonewall Insurance Company, and the Massachusetts Insurers
Insolvency Fund ("MIIF"), seeking a determination of the scope of the insurers'

obligations to Chesterton under their policies and damages for the insurers' failure to perform their contractual obligations pursuant to the policies.

8.     A trial was held in June, 2002 ("the Phase I" Trial") to decide several issues including whether Chesterton had exhausted all primary comprehensive general liability insurance available to it that covered asbestos-related claims. The Superior Court issued a memorandum and decision following that trial in which the Court decided that Chesterton had in fact exhausted all primary coverage that was required to be exhausted. The Court then scheduled a second trial ("the Phase II Trial") to resolve various issues raised by the remaining defendants and to determine the amounts owed to Chesterton by those defendants. The Court resolved most of the legal issues raised by the defendants through a series of summary judgment motions. The Court issued decisions on the motions for summary judgment on May 20, 2003. The Court then scheduled the Phase II Trial for June 16, 2003 to resolve all outstanding issues of fact.

9.     Prior to the Phase II Trial, Chesterton settled with all of the defendants other than the MIIF. The Phase II Trial was then held in June, 2003 between Chesterton and the MIIF and the Court issued its final judgment in September, 2003.

10.     In its final judgment, the Court declared that Chesterton had exhausted all coverage provided by its primary policies that applied to asbestos-related claims. Specifically, Judge McLaughlin, sitting by special assignment, held, "[a]ll valid and collectible primary comprehensive general liability policies, the limits of which were required to have been exhausted prior to any obligation of the defendant excess insurance carriers to indemnify or defend, have been, in fact, exhausted."

- 3 -

11.     The defendant in this case, St. Paul, in consideration for premiums duly paid by Chesterton, issued a second-layer excess policy to Chesterton, bearing policy number 569XA5135, with an effective period of January 18, 1972 to July 1, 1974 (attached as Exhibit A).

12.     The policy obligates St. Paul to pay Chesterton's "loss," defined as "the sums paid in settlements of losses for which the Insured is liable..." in excess of the exhausted primary and first-layer excess policies that underlie the St. Paul policy.

13.     The St. Paul policy also obligates St. Paul to pay a proportional share of costs and expenses associated with the Underlying Claims against Chesterton.

14.     In nearly every Underlying Claim, the claimant alleges to have suffered asbestos-related injury during the time period in which the St. Paul policy was in effect, thereby triggering the St. Paul policy.

15.     Chesterton has exhausted all primary and first-layer excess policies required to be exhausted before the obligations of the St. Paul policy arise.

16.     On August 14, 1997, Chesterton put St. Paul on notice that it was being named as a defendant in a large number of lawsuits for asbestos-related personal injuries. Thereafter, Chesterton periodically updated St. Paul on the amount Chesterton was spending defending and settling Underlying Claims.  Since at least early 2003, Chesterton has responded to numerous specific requests for information by St. Paul related to Chesterton's settlement payments, allocation methods, and exhaustion of primary and first-layer excess policies.

17.     Despite St. Paul's knowledge that it is obligated now to fulfill its insurance obligations to Chesterton, St. Paul has refused to do so.

- 4 -

18.    Chesterton has satisfied all conditions precedent to St. Paul's coverage obligations.

## COUNT I

## (BREACH OF CONTRACT)

19.    Chesterton restates the allegations contained in paragraphs 1 through 18.

20.    St. Paul has breached the terms of its policy by refusing to assume its indemnification and expense obligations with respect to asbestos-related claims against Chesterton.

21.    As a result of St. Paul's breach of contract, Chesterton has suffered damages and will suffer additional damages until St. Paul assumes its indemnification and expense obligations.

22.    St. Paul has breached the implied covenant of good faith and fair dealing implied in its policy by refusing to assume its indemnification and expense obligations.

WHEREFORE, Chesterton requests that the Court enter judgment in its favor:

a.    awarding Chesterton damages in an amount to be determined at trial together with interest, costs, and attorneys' fees; and

b.    granting Chesterton such other relief as may be appropriate.

## JURY DEMAND

Pursuant to Mass. R. Civ. P. 38(b), Chesterton demands a trial by jury on all issues so triable.

A.W. CHESTERTON COMPANY, INC.
by its attorneys,

Harry L. Manion III, BBO No. 317440
Martin F. Gaynor III, BBO No. 564384
Kathryn R. Colburn. BBO No. 653244
COOLEY MANION JONES LLP
21 Custom House Street
Boston, MA 02110
(617) 737-3100

133377v1

- 6 -

EXHIBIT A

**EXCESS THIRD PARTY LIABILITY POLICY**

No. 569XA5135
NEW
FORMER POLICY NO.

A CAPITAL STOCK COMPANY
**ST. PAUL FIRE AND MARINE INSURANCE COMPANY**
ST. PAUL, MINNESOTA



**THE ST. PAUL**
INSURANCE COMPANIES

*Serving you around the world... around the clock*

**ITEM 1. Insured's Name and Mailing Address**

A. W. CHESTERTON COMPANY &
COMMERCIAL CHEMICAL COMPANY, INC.
ASHLAND STREET
EVERETT, MASSACHUSETTS



| ITEM 2. POLICY PERIOD: | | ITEM 3. LOCATION OF COVERAGE: | |
|---|---|---|---|
| **FROM** | **TO** | | |
| 1-18-72 | 4-17-74 | EVERETT, MASSACHUSETTS | and as further defined in the Primary Policy. |

*12:01 A.M., Standard time at the address of the Insured as stated herein.

**ITEM 4. PRIMARY INSURANCE:**

| INSURER'S NAME | POLICY NO'S. (Including Renewals or Replacements) | DESCRIPTION OF COVERAGE |
|---|---|---|
| UNITED STATES FIRE INS. CO. | DCL 92 10 75 | UMBRELLA EXCESS |

**ITEM 5. LIMITS OF LIABILITY:** The limit of the Company's liability shall be as stated herein, subject to all the terms of this Policy having reference thereto.

| SECTION I | IN EXCESS OF SECTION II | SECTION III | COVERAGE |
|---|---|---|---|
| **COMPANY LIMITS** | **UNDERLYING LIMITS** | **TOTAL LIMITS** | |
| $ Each Person | | | A. Bodily Injury |
| $ Each Accident or Occurrence | $ | $ | Automobile |
| $ Each Person | | | B. Bodily Injury |
| $ Each Accident or Occurrence | $ | $ | Except Automobile |
| $ Aggregate Products | $ | $ | |
| $ Each Accident or Occurrence | $ | | C. Property Damage Auto |
| $ Each Accident or Occurrence | $ | $ | D. Property Damage |
| $ Aggregate Operations | $ | $ | Except Automobile |
| $ Aggregate Protective | $ | $ | |
| $ Aggregate Products | $ | $ | |
| $ Aggregate Contractual | $ | $ | |
| $ Each Accident or Occurrence | $ | $ | E. Combined Single Limit Bodily Injury and/or Property Damage |
| $ Aggregate | $ | $ | |
| $5,000,000. each occurrence | $5,000,000. | $10,000,000. | F. Other |
| $5,000,000.00 Aggregate | $5,000,000. | $10,000,000. | UMBRELLA EXCESS |

**ITEM 6. PREMIUM COMPUTATION — Products.**

| PREMIUM BASIS | ESTIMATED EXPOSURE | RATE | ESTIMATED PREM. | DEPOSIT PREM. | MINIMUM PREM. | AUDIT PERIOD |
|---|---|---|---|---|---|---|
| FLAT CHARGE | | FLAT | 1250.PER YR. | $ 304.00 | | |
| | | | | $1250.00 | INSTALLMENT | |

AUTHORIZED REPRESENTATIVE

AWC 0045655

1-18-72
COUNTERSIGNATURE DATE

BOSTON, MASS
COUNTERSIGNED AT

14184ELP 2M 8-68 W Rev. 7-63

## INSURING AGREEMENT

In consideration of the payment of premium stated in the Declarations, the ST. PAUL FIRE AND MARINE INSURANCE COMPANY, herein called the Company, agrees to indemnify the Insured, in accordance with the applicable insuring agreements of the Primary Insurance, against loss subject to the limits stated in Item 5, Section I of the Declarations and as fully and to all intents and purposes as though the Primary Insurance had been issued for the limits set forth in Item 5, Section III of the Declarations. This Policy shall apply only to coverages for which an amount is indicated in Item 5, Section I, and then only in excess of the corresponding amount as indicated in Item 5, Section II of the Declarations.

## DEFINITIONS

1. **Loss.** The word "loss" shall be understood to mean the sums paid in settlements of losses for which the Insured is liable after making deductions for all other recoveries, salvages and other insurances (other than recoveries under the policy/ies of the Primary Insurer), whether recoverable or not, and shall exclude all expense and costs.

2. **Costs.** The word "costs" shall be understood to mean interest on judgments, investigations, adjustment and legal expenses (excluding, however, all expense for salaried employees and retained counsel of and all office expense of the Insured).

3. **Primary Insurance.** The term "primary insurance" shall be understood to mean the policy (policies) described in Item 4.

## NUCLEAR ENERGY LIABILITY EXCLUSION

It is agreed that the insurance afforded under any liability coverage of this Policy or of any endorsement used herewith does not apply:

1. Under any Liability Coverage, to injury, sickness, disease, death or destruction

   (a) with respect to which an Insured under the Policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the Insured is, or had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2. Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

3. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

   (a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an Insured or (2) has been discharged or dispersed therefrom;

   (b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

   (c) the injury, sickness, disease, death or destruction arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

4. As used in this endorsement:

   "hazardous properties" include radioactive, toxic or explosive properties;

   "nuclear material" means source material, special nuclear material or byproduct material;

   "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

   "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

   "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

   "nuclear facility" means

   (a) any nuclear reactor,

   (b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

   (c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

   (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

   and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

   "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

   With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

### THIS SPACE FOR THE ATTACHMENT OF ENDORSEMENTS, IF ANY

AWC 0045656

## CONDITIONS

1. It is agreed that this Policy, except as herein stated, is subject to all conditions, agreements and limitations of and shall follow the Primary Insurance in all respects, including changes by endorsement and the Insured shall furnish the Company with copies of such changes. It is further agreed should any alteration be made in the premium for the policy/ies of the Primary Insurers during the period of this Policy, then the premium hereon other than the Minimum Premium shall be adjusted accordingly.

2. Notice of any accident, which appears likely to involve this Policy, shall be given to the Company, which at its own option, may, but is not required to, participate in the investigation, settlement or defense of any claim or suit. In the event expense and/or costs in connection with any claim or suit is incurred jointly by mutual consent of the Company and of the Insured or Primary Insurer, the Company, in addition to its limits of liability as expressed in Item 5, Section 1 of the Declarations, shall be liable for no greater proportion of such expense and/or costs than the amount payable by the Company under this Policy bears to the total loss payment.

3. With respect to each coverage in Item 5, Section I of the Declarations, the Bodily Injury limit applicable to each accident is subject to the limit specified as applicable to each person. There is no limit to the number of accidents for which claims may be brought hereunder (provided such accidents occur during the period of this Policy) except as provided by aggregate limits which, with respect to Item 5, Section I, when inserted therein apply to all accidents happening during each twelve months' term of the Policy.

4. All salvages, recoveries or payments recovered or received subsequent to a loss settlement under the Policy shall be applied as if recovered or received prior to such settlement and all necessary adjustments shall then be made between the Insured and the Company, provided always that nothing in this Policy shall be construed to mean that losses under this Policy are not recoverable until the Insured's ultimate net loss has been finally ascertained.

5. This Policy may be cancelled by the named Insured by surrender thereof to the Company or any of its authorized agents, or by mailing to the Company written notice stating when thereafter the cancellation shall be effective. This Policy may be cancelled by the Company by mailing to the named Insured at the address shown in this Policy written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of the surrender, or the effective date and hour of cancellation stated in the notice, shall become the end of the Policy Period. Delivery of such written notice either by the named Insured or by the Company shall be equivalent to mailing.

   If the named Insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

   In the event of the cancellation or termination of the primary insurance or a renewal thereof, this Policy, to the extent of such cancellation or termination, shall cease to apply at the same time without notice to the Insured.

   PROVISIONS REQUIRED BY LAW TO BE STATED IN THIS POLICY:—"This Policy is issued under and in pursuance of the laws of the State of Minnesota, relating to Guaranty Surplus and Special Reserve Funds." Chapter 437, General Laws of 1909.

   IN WITNESS WHEREOF, the ST. PAUL FIRE AND MARINE INSURANCE COMPANY, has caused this Policy to be signed by its President and Secretary at St. Paul, Minnesota, and countersigned on the Declarations page by a duly authorized representative of the Company.

*Secretary.*                                                        *President.*

AWC 0045657



**THE ST. PAUL**
COMPANIES

**ENDORSEMENT**

*The following spaces preceded by an asterisk (\*) need not be completed if this endorsement and the policy have the same inception date.*

| ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 569XA5135 | 4-17-74 | A.W.Chesterton Company & Commercial Chemical Co. |

In consideration of an additional premium of 256.00 , it is understood and agreed that the policy period is amended to read :
 1-18-72 to 7-1-74

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

*Agency Name and Address*

• Brewer & Lord
 40 Broad Street
 Boston,Mass. 02109
 200241 db

*In Witness Whereof,* the Company has caused this endorsement to be signed by a duly authorized representative of the Company.

_____
AUTHORIZED REPRESENTATIVE

1480D-4 ECF REV. 9-84
PRINTED IN U.S.A.

AWC 0045658



**THE ST. PAUL**
COMPANIES

**ENDORSEMENT**

*The following spaces preceded by an asterisk (*) need not be completed if this endorsement and the policy have the same inception date.*

| ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 569XA5135 | 7/5/73 | A.W. Chesterton Company et al. |

It is agreed that the address of the Named Insured is amended as follows:

　　　　　　Fallon Road
　　　　　　Middlesex Industrial Park
　　　　　　Stoneham, Mass.

AUG 1 0 1973

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

*Agency Name and Address*

Brewer & Lord
40 Broad Street
Boston, Mass. 02109
200241

*In Witness Whereof,* the Company has caused this endorsement to be signed by its President at St. Paul, Minnesota and countersigned by a duly authorized representative of the Company.

Brewer & Lord

AUTHORIZED REPRESENTATIVE

14000-1 REV. 5-64
PRINTED IN U.S.A.

AWC 0045659



**THE ST. PAUL**
INSURANCE COMPANIES

ENDORSEMENT

*The following spaces preceded by an asterisk (\*) need not be completed if this endorsement and the policy have the same inception date.*

| ATTACHED TO AND FORMING PART OF POLICY NO. | \*EFFECTIVE DATE OF ENDORSEMENT | \*ISSUED TO |
|---|---|---|
| 569XA513S | 1-18-72 | |

IT IS HEREBY UNDERSTOOD AND AGREED THAT THE PREMIUM FOR THIS POLICY
IS PAYABLE AS FOLLOWS:

          $304.00 PAYABLE ON 1-18-72
          $1250.00 PAYABLE ON 4-17-72
          $1250.00 PAYABLE ON 4-17-73

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

*Agency Name and Address*

*In Witness Whereof,* the Company has caused this endorsement to be signed by its President at St. Paul, Minnesota and countersigned by a duly authorized representative of the Company.

*Brewer & Lord*                    Carl B. Drake
                                   President

AUTHORIZED REPRESENTATIVE

10400-4 REF REV. 8-84
PRINTED IN U.S.A.

AWC 0045660



**THE ST. PAUL**
INSURANCE COMPANIES

ENDORSEMENT

*The following spaces preceded by an asterisk (*) need not be completed if this endorsement and the policy have the same inception date.*

| ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 569XAS135 | 1-18-72 | A. W. CHESTERTON COMPANY & COMMERCIAL CHEMICAL CO., INC. |

IT IS UNDERSTOOD AND AGREED THAT ITEM 1, INSUREDS' NAME IS AMENDED TO READ AS FOLLOWS:

      A. W. CHESTERTON COMPANY
      COMMERCIAL CHEMICAL COMPANY, INC. & CHESCO., INC.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

*Agency Name and Address*

    BREWER & LORD
    40 BROAD ST.
    BOSTON, MA 02109

*In Witness Whereof,* the Company has caused this endorsement to be signed by its President at St. Paul, Minnesota and countersigned by a duly authorized representative of the Company.

_____
AUTHORIZED REPRESENTATIVE

AWC 0045661

# BREWER & LORD
### FOUNDED 1859

June 3, 1974

*Insurance*

Telephone
476-0830

560

TERMS: NET 30 DAYS
FROM ABOVE DATE

40 BROAD STREET
BOSTON, MASS. 02109

A W CHESTERTON COMPANY
MIDDLESEX INDUSTRIAL
PARK – RTE 93
STONEHAM MASS                    02180

CK504    26

EXPIRING POLICY
NO. 56XA5135

TERMS: NET 30 DAYS FROM ABOVE DATE.
RECEIPT OF CHECK ACKNOWLEDGED ONLY WHEN REQUESTED SINCE PAID CHECK CONSTITUTES FULL RECEIPT

| EFF. DATE | | | POLICY | COMPANY | KIND OF POLICY | PREMIUM |
|---|---|---|---|---|---|---|
| 04 | 17 | 74 | 56XA5135 | ST PAUL F & M | Excess Liability | 256.00 |
| EXPIRES | | | | | | |
| 7 | 1 | 74 | | | | |

Extension Endorsement

Please detach and return TOP portion of this bill to BREWER & LORD

AWC 0045662

COMMONWEALTH OF MASSACHUSETTS
DIVISION OF INSURANCE
ONE SOUTH STATION
BOSTON, MASS 02110

St. Paul Fire & Marine Insurance Company
c/o Corporation Service Company
84 State Street
Boston, MA 02109

TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: —
TORT — MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — OTHER

## COMMONWEALTH OF MASSACHUSETTS

|  | SUPERIOR COURT |
| --- | --- |
| MIDDLESEX ........ , ss | DEPARTMENT |
| [seal] | OF THE |
|  | TRIAL COURT |
|  | CIVIL ACTION |
|  | No. 04-4144 |

A.W. Chesterton Company, Inc.
................................................ , Plaintiff(s)

v.

St. Paul Fire & Marine Insurance Company
................................................ , Defendant(s)

## SUMMONS

To the above-named Defendant: St. Paul Fire & Marine Insurance Company

You are hereby summoned and required to serve upon ...Martin F. Gaynor III...........................

.............................................. plaintiff's attorney, whose address is Cooley Manion Jones LLP

21 Custom House St., Boston, MA 02110 an answer to the complaint which is herewith

served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you

fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also

required to file your answer to the complaint in the office of the Clerk of this court at .....Cambridge...............

.............................................. either before service upon plaintiff's attorney or within a

reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may

have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's

claim or you will thereafter be barred from making such claim in any other action.

Witness, R.... Suzanne V. DelVecchio ....Esquire, at ........Boston......................................

the ..fourth........................... day of ..November......................................

...................., in the year of our Lord ....Two Thousand Four.

A true copy Attest:

[ 11-9-04 ] Deputy Sheriff Suffolk County

Edward J. Sullivan
Clerk

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used, for each defendant, each should be addressed to the particular defendant.

NOTICE TO DEFENDANT— You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss

SUPERIOR COURT DEPT.
CIVIL ACTION NO.

A.W. CHESTERTON COMPANY, INC.
    Plaintiff,

v.

THE ST. PAUL TRAVELERS COMPANIES,
INC.,
    Defendant.

)
)
)
)
)
)
)
)
)
)
)

**04-4144**

FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS
FOR THE ... ... ESEX

**OCT 18 2004**

Edward J. Sullivan
CLERK

## COMPLAINT AND DEMAND FOR JURY TRIAL

### PARTIES

1.    The plaintiff, A.W. Chesterton Company, Inc. ("Chesterton") is a

Massachusetts corporation with its principal place of business in Stoneham, Middlesex

County, Massachusetts.

2.    Defendant The St. Paul Travelers Companies, Inc. ("St. Paul"), formerly

St. Paul Fire and Marine Insurance Company, is a Minnesota corporation with its

principal place of business in Saint Paul, Minnesota. St. Paul is and/or at all relevant

times mentioned herein was, engaged in the business of writing liability insurance

policies in Massachusetts and elsewhere.

```
1288E000010/18/04CIVIL        240.00
1288E000010/18/04SUR CHARGE    15.00
1288E000010/18/04SECC          20.00
```

### JURISDICTION AND VENUE

3.    Jurisdiction in this Court is proper under Mass. Gen. L. ch. 223A because

the defendant, at all times the time period relevant to the cause of action stated herein, has

transacted business within Massachusetts, including contracting to supply services in

Massachusetts, contracting to insure persons, property or risks located within Massachusetts, and engaging in the business of writing or delivering liability insurance policies in Massachusetts. Moreover, the cause of action stated herein arises from the defendant's contracting to supply services in Massachusetts and contracting to insure risks located within Massachusetts at the time of contracting.

4.      Venue is proper because Chesterton has its principal place of business in Middlesex County.

### FACTUAL BACKGROUND

5.      Chesterton is a manufacturer of products that for many decades contained encapsulated asbestos. In excess of 400,000 claims, beginning in January, 1980, have been asserted against Chesterton by persons who allege that they have suffered personal injury as a result of exposure to asbestos fibers ("Underlying Claims"). Chesterton has spent millions of dollars defending and settling the Underlying Claims.

6.      During the period relevant to this action, Chesterton has been insured by means of primary comprehensive general liability policies, and several layers of excess insurance policies.

7.      In 1996, Chesterton filed a declaratory judgment action in this Court (Civil Action No. 96-4871) against its first layer excess carriers, American Home Assurance Company, United States Fire Insurance Company, The Continental Insurance Company, Northbrook Insurance Company, certain London Market Companies, First State Insurance Company, and Stonewall Insurance Company, and the Massachusetts Insurers

- 2 -

obligations to Chesterton under their policies and damages for the insurers' failure to perform their contractual obligations pursuant to the policies.

8.      A trial was held in June, 2002 ("the Phase I" Trial") to decide several issues including whether Chesterton had exhausted all primary comprehensive general liability insurance available to it that covered asbestos-related claims. The Superior Court issued a memorandum and decision following that trial in which the Court decided that Chesterton had in fact exhausted all primary coverage that was required to be exhausted. The Court then scheduled a second trial ("the Phase II Trial") to resolve various issues raised by the remaining defendants and to determine the amounts owed to Chesterton by those defendants. The Court resolved most of the legal issues raised by the defendants through a series of summary judgment motions. The Court issued decisions on the motions for summary judgment on May 20, 2003. The Court then scheduled the Phase II Trial for June 16, 2003 to resolve all outstanding issues of fact.

9.      Prior to the Phase II Trial, Chesterton settled with all of the defendants other than the MIIF. The Phase II Trial was then held in June, 2003 between Chesterton and the MIIF and the Court issued its final judgment in September, 2003.

10.     In its final judgment, the Court declared that Chesterton had exhausted all coverage provided by its primary policies that applied to asbestos-related claims. Specifically, Judge McLaughlin, sitting by special assignment, held, "[a]ll valid and collectible primary comprehensive general liability policies, the limits of which were required to have been exhausted prior to any obligation of the defendant excess insurance

companies to pay and defend, have in fact, exhausted."

- 3 -

11.     The defendant in this case, St. Paul, in consideration for premiums duly paid by Chesterton, issued a second-layer excess policy to Chesterton, bearing policy number 569XA5135, with an effective period of January 18, 1972 to July 1, 1974 (attached as Exhibit A).

12.     The policy obligates St. Paul to pay Chesterton's "loss," defined as "the sums paid in settlements of losses for which the Insured is liable..." in excess of the exhausted primary and first-layer excess policies that underlie the St. Paul policy.

13.     The St. Paul policy also obligates St. Paul to pay a proportional share of costs and expenses associated with the Underlying Claims against Chesterton.

14.     In nearly every Underlying Claim, the claimant alleges to have suffered asbestos-related injury during the time period in which the St. Paul policy was in effect, thereby triggering the St. Paul policy.

15.     Chesterton has exhausted all primary and first-layer excess policies required to be exhausted before the obligations of the St. Paul policy arise.

16.     On August 14, 1997, Chesterton put St. Paul on notice that it was being named as a defendant in a large number of lawsuits for asbestos-related personal injuries. Thereafter, Chesterton periodically updated St. Paul on the amount Chesterton was spending defending and settling Underlying Claims. Since at least early 2003, Chesterton has responded to numerous specific requests for information by St. Paul related to Chesterton's settlement payments, allocation methods, and exhaustion of primary and first-layer excess policies.

17.     Despite St. Paul's knowledge that it is obligated to fulfill its insurance obligations to Chesterton, St. Paul has refused to do s

- 4 -

18.    Chesterton has satisfied all conditions precedent to St. Paul's coverage obligations.

## COUNT I

## (BREACH OF CONTRACT)

19.    Chesterton restates the allegations contained in paragraphs 1 through 18.

20.    St. Paul has breached the terms of its policy by refusing to assume its indemnification and expense obligations with respect to asbestos-related claims against Chesterton.

21.    As a result of St. Paul's breach of contract, Chesterton has suffered damages and will suffer additional damages until St. Paul assumes its indemnification and expense obligations.

22.    St. Paul has breached the implied covenant of good faith and fair dealing implied in its policy by refusing to assume its indemnification and expense obligations.

WHEREFORE, Chesterton requests that the Court enter judgment in its favor:

a.    awarding Chesterton damages in an amount to be determined at trial together with interest, costs, and attorneys' fees; and

b.    granting Chesterton such other relief as may be appropriate.

## JURY DEMAND

Pursuant to Mass. R. Civ. P. 38(b), Chesterton demands a trial by jury on all issues so triable.

A.W. CHESTERTON COMPANY, INC.
by its attorneys,

Harry L. Manion III, BBO No. 317440
Martin F. Gaynor III, BBO No. 564384
Kathryn R. Colburn. BBO No. 653244
COOLEY MANION JONES LLP
21 Custom House Street
Boston, MA  02110
(617) 737-3100

132171v2

**EXCESS THIRD PARTY LIABILITY POLICY**

No. 569 X A 5135

NEW
FORMER POLICY NO.

A CAPITAL STOCK COMPANY
**ST. PAUL FIRE AND MARINE INSURANCE COMPANY**
ST. PAUL, MINNESOTA

**THE ST. PAUL**
INSURANCE COMPANIES

*Serving you around the world... around the clock*

**ITEM 1. Insured's Name and Mailing Address**

A. W. CHESTERTON COMPANY &
COMMERCIAL CHEMICAL COMPANY, INC.
ASHLAND STREET
EVERETT, MASSACHUSETTS



| ITEM 2. POLICY PERIOD:* FROM | TO | ITEM 3. LOCATION OF COVERAGE: |
|---|---|---|
| 1-18-72 | 4-17-74 | EVERETT, MASSACHUSETTS |

and as further defined in the Primary Policy.

*12:01 A.M., Standard time at the address of the Insured as stated herein.

**ITEM 4. PRIMARY INSURANCE:**

| INSURER'S NAME | POLICY NO'S. (Including Renewals or Replacements) | DESCRIPTION OF COVERAGE |
|---|---|---|
| UNITED STATES FIRE INS. CO. | DCL 92 10 75 | UMBRELLA EXCESS |

**ITEM 5. LIMITS OF LIABILITY:** The limit of the Company's liability shall be as stated herein, subject to all the terms of this Policy having reference thereto.

| SECTION I COMPANY LIMITS | IN EXCESS OF SECTION II UNDERLYING LIMITS | SECTION III TOTAL LIMITS | COVERAGE |
|---|---|---|---|
| $     Each Person | $ | $ | A. Bodily Injury Automobile |
| $     Each Accident or Occurrence | $ | $ | |
| $     Each Person | $ | $ | B. Bodily Injury Except Automobile |
| $     Each Accident or Occurrence | $ | $ | |
| $     Aggregate Products | $ | $ | |
| $     Each Accident or Occurrence | $ | $ | C. Property Damage Auto |
| $     Each Accident or Occurrence | $ | $ | D. Property Damage Except Automobile |
| $     Aggregate Operations | $ | $ | |
| $     Aggregate Protective | $ | $ | |
| $     Aggregate Products | $ | $ | |
| $     Aggregate Contractual | $ | $ | |
| $     Each Accident or Occurrence | $ | $ | E. Combined Single Limit Bodily Injury and/or Property Damage |
| $     Aggregate | $ | $ | |
| $5,000,000.each occurrence | $5,000,000. | $5,000,000. | F. Other UMBRELLA EXCESS |
| $5,000,000.00 Aggregate | $5,000,000. | $10,000,000. | |

**ITEM 6. PREMIUM COMPUTATION | Products.**

| PREMIUM BASIS | ESTIMATED EXPOSURE | RATE | ESTIMATED PREM. | DEPOSIT PREM. | MINIMUM PREM. | AUDIT PERIOD |
|---|---|---|---|---|---|---|
| FLAT CHARGE | | FLAT | 1250 PER YR | $ 304.00 | | |

_____
AUTHORIZED REPRESENTATIVE

AWC 0045955

1-15-72
COUNTERSIGNATURE DATE

BOSTON MASS
COUNTERSIGNED AT

14184ELP 2M 8-68 W Rev. 7-63

## INSURING AGREEMENT

In consideration of the payment of premium stated in the Declarations, the ST. PAUL FIRE AND MARINE INSURANCE COMPANY, herein called the Company, agrees to indemnify the Insured, in accordance with the applicable insuring agreements of the Primary Insurance, against loss subject to the limits stated in Item 5, Section I of the Declarations and as fully and to all intents and purposes as though the Primary Insurance had been issued for the limits set forth in Item 5, Section III of the Declarations. This Policy shall apply only to coverages for which an amount is indicated in Item 5, Section I, and then only in excess of the corresponding amount as indicated in Item 5, Section II of the Declarations.

## DEFINITIONS

1. **Loss.**  The word "loss" shall be understood to mean the sums paid in settlements of losses for which the Insured is liable after making deductions for all other recoveries, salvages and other Insurances (other than recoveries under the policy/ies of the Primary Insurer), whether recoverable or not, and shall exclude all expense and costs.

2. **Costs.**  The word "costs" shall be understood to mean interest on judgments, investigations, adjustment and legal expenses (excluding, however, all expense for salaried employees and retained counsel of and all office expense of the Insured).

3. **Primary Insurance.**  The term "primary insurance" shall be understood to mean the policy (policies) described in Item 4.

## NUCLEAR ENERGY LIABILITY EXCLUSION

It is agreed that the insurance afforded under any liability coverage of this Policy or of any endorsement used herewith does not apply:

1. Under any Liability Coverage, to injury, sickness, disease, death or destruction
   (a) with respect to which an Insured under the Policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or
   (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the Insured is, or had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2. Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

3. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if
   (a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an Insured or (2) has been discharged or dispersed therefrom;
   (b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or
   (c) the injury, sickness, disease, death or destruction arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

4. As used in this endorsement:
   "hazardous properties" include radioactive, toxic or explosive properties;
   "nuclear material" means source material, special nuclear material or byproduct material;
   "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;
   "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;
   "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;
   "nuclear facility" means
   (a) any nuclear reactor,
   (b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,
   (c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,
   (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,
   and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;
   "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;
   With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

THIS SPACE FOR THE ATTACHMENT OF ENDORSEMENTS, IF ANY

AWC 0045656

## CONDITIONS

1. It is agreed that this Policy, except as herein stated, is subject to all conditions, agreements and limitations of and shall follow the Primary Insurance in all respects, including changes by endorsement and the Insured shall furnish the Company with copies of such changes. It is further agreed should any alteration be made in the premium for the policy/ies of the Primary Insurers during the period of this Policy, then the premium hereon other than the Minimum Premium shall be adjusted accordingly.

2. Notice of any accident, which appears likely to involve this Policy, shall be given to the Company, which at its own option, may, but is not required to, participate in the investigation, settlement or defense of any claim or suit. In the event expense and/or costs in connection with any claim or suit is incurred jointly by mutual consent of the Company and of the Insured or Primary Insurer, the Company, in addition to its limits of liability as expressed in Item 5, Section I of the Declarations, shall be liable for no greater proportion of such expense and/or costs than the amount payable by the Company under this Policy bears to the total loss payment.

3. With respect to each coverage in Item 5, Section I of the Declarations, the Bodily Injury limit applicable to each accident is subject to the limit specified as applicable to each person. There is no limit to the number of accidents for which claims may be brought hereunder (provided such accidents occur during the period of this Policy) except as provided by aggregate limits which, with respect to Item 5, Section I, when inserted therein apply to all accidents happening during each twelve months' term of the Policy.

4. All salvages, recoveries or payments recovered or received subsequent to a loss settlement under the Policy shall be applied as if recovered or received prior to such settlement and all necessary adjustments shall then be made between the Insured and the Company, provided always that nothing in this Policy shall be construed to mean that losses under this Policy are not recoverable until the Insured's ultimate net loss has been finally ascertained.

5. This Policy may be cancelled by the named Insured by surrender thereof to the Company or any of its authorized agents, or by mailing to the Company written notice stating when thereafter the cancellation shall be effective. This Policy may be cancelled by the Company by mailing to the named Insured at the address shown in this Policy written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of the surrender, or the effective date and hour of cancellation stated in the notice, shall become the end of the Policy Period. Delivery of such written notice either by the named Insured or by the Company shall be equivalent to mailing.

   If the named Insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

   In the event of the cancellation or termination of the primary insurance or a renewal thereof, this Policy, to the extent of such cancellation or termination, shall cease to apply at the same time without notice to the Insured.

   PROVISIONS REQUIRED BY LAW TO BE STATED IN THIS POLICY:—"This Policy is issued under and in pursuance of the laws of the State of Minnesota, relating to Guaranty Surplus and Special Reserve Funds." Chapter 437, General Laws of 1909.

   IN WITNESS WHEREOF, the ST. PAUL FIRE AND MARINE INSURANCE COMPANY, has caused this Policy to be signed by its President and Secretary at St. Paul, Minnesota, and countersigned on the Declarations page by a duly authorized representative of the Company.

*Secretary.*                    *President.*

AWC 0045657



**THE ST. PAUL**
COMPANIES

ENDORSEMENT

*The following spaces preceded by an asterisk (\*) need not be completed if this endorsement and the policy have the same inception date.*

| ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 569XA5135 | 4-17-74 | A.W.Chesterton Company & Commercial Chemical Co. |

In consideration of an additional premium of $256.00 , it is understood and agreed that the policy period is amended to read :
      1-18-72  to  7-1-74

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

*Agency Name and Address*

    Brewer & Lord
    40 Broad Street
    Boston,Mass.  02109
    200241 db

*In Witness Whereof,* the Company has caused this endorsement to be signed by a duly authorized representative of the Company.

_____
AUTHORIZED REPRESENTATIVE

14600-4 DEF. REV. 8-64
PRINTED IN U.S.A.

AWC 0045658



**THE ST. PAUL**
COMPANIES

**ENDORSEMENT**

*The following spaces preceded by an asterisk (\*) need not be completed if this endorsement and the policy have the same inception date.*

| ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 569XA5135 | 7/5/73 | A.W. Chesterton Company et al. |

It is agreed that the address of the Named Insured is amended as follows:

Fallon Road
Middlesex Industrial Park
Stoneham, Mass.

AUG 1 0 1973

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

*Agency Name and Address*

Brewer & Lord
40 Broad Street
Boston, Mass. 02109
200241

*In Witness Whereof,* the Company has caused this endorsement to be signed by its President at St. Paul, Minnesota and countersigned by a duly authorized representative of the Company.

Brewer & Lord

President

AUTHORIZED REPRESENTATIVE

14600-4 REF. REV. 8-64
PRINTED IN U.S.A.



**THE ST. PAUL**
INSURANCE COMPANIES

*Serving you around the world...around the clock*

**ENDORSEMENT**

*The following spaces preceded by an asterisk (*) need not be completed if this endorsement and the policy have the same inception date.*

| ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 569XA5135 | 1-18-72 | |

IT IS HEREBY UNDERSTOOD AND AGREED THAT THE PREMIUM FOR THIS POLICY
IS PAYABLE AS FOLLOWS:

          $304.00 PAYABLE ON 1-18-72
        $1250.00 PAYABLE ON 4-17-72
        $1250.00 PAYABLE ON 4-17-73

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

*Agency Name and Address*

*In Witness Whereof,* the Company has caused
this endorsement to be signed by its President
at St. Paul, Minnesota and countersigned by a
duly authorized representative of the Company.

Brewer & Lord

Carl B. Drake *President.*

AUTHORIZED REPRESENTATIVE



**THE ST. PAUL**
INSURANCE COMPANIES

*Serving you around the world...around the clock*

ENDORSEMENT

The following spaces preceded by an asterisk (*) need not be completed if this endorsement and the policy have the same inception date.

| ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 569XA5135 | 1-18-72 | A. W. CHESTERTON COMPANY & COMMERCIAL CHEMICAL CO., INC. |

IT IS UNDERSTOOD AND AGREED THAT ITEM #1, INSUREDS' NAME IS AMENDED TO
READ AS FOLLOWS:

A. W. CHESTERTON COMPANY
COMMERCIAL CHEMICAL COMPANY, INC. & CHESCO., INC.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

*Agency Name and Address*

BREWER & LORD
40 BROAD ST.
BOSTON, MA 02109

*In Witness Whereof,* the Company has caused this endorsement to be signed by its President at St. Paul, Minnesota and countersigned by a duly authorized representative of the Company.

*President.*

AUTHORIZED REPRESENTATIVE

14600-4 BEF REV. 8-64
PRINTED IN U.S.A.



# BREWER & LORD
FOUNDED 1859

June 9, 1974

*Insurance*

Telephone C
426-0830

560

TERMS: NET 30 DAYS
FROM ABOVE DATE

40 BROAD STREET
BOSTON, MASS. 02109

A W CHESTERTON COMPANY
MIDDLESEX INDUSTRIAL
PARK — RTE 93
STONEHAM MASS          02180

CH504    26

EXPIRING POLICY
NO. 56XA5135

TERMS: NET 30 DAYS FROM ABOVE DATE.
RECEIPT OF CHECK ACKNOWLEDGED ONLY WHEN REQUESTED SINCE PAID CHECK CONSTITUTES FULL RECEIPT

| EFF. DATE | POLICY | COMPANY | KIND OF POLICY | PREMIUM |
|---|---|---|---|---|
| 04 17 74 | 56XA5135 | ST PAUL F & M | Excess Liability | 256.00 |
| EXPIRES 7 1 74 | | | | |

Extension Endorsement

Please detach and return TOP portion of this bill to BREWER & LORD

**Commonwealth of Massachusetts**
**County of Middlesex**
**The Superior Court**

CIVIL DOCKET # **MICV2004-04144-D**

RE:   **A.W. Chesterton Company, Inc. v St. Paul Travelers Companies, Inc.**

TO: Martin F Gaynor III, Esquire
   Cooley Manion & Jones
   21 Custom House Street
   Boston, MA 02110-2007

### TRACKING ORDER - F TRACK

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

| STAGES OF LITIGATION | DEADLINE |
|---|---|
| Service of process made and return filed with the Court | 01/16/2005 |
| Response to the complaint filed (also see MRCP 12) | 03/17/2005 |
| All motions under MRCP 12, 19, and 20 filed | 03/17/2005 |
| All motions under MRCP 15 filed | 03/17/2005 |
| All discovery requests and depositions completed | 08/14/2005 |
| All motions under MRCP 56 served and heard | 09/13/2005 |
| Final pre-trial conference held and/or firm trial date set | 10/13/2005 |
| Case disposed | 12/12/2005 |

**The final pre-trial deadline is not the scheduled date of the conference.** You will be notified of that date at a later time.
**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to session "D" sitting in **Rm 7A (Cambridge)  Middlesex Superior Court.**

Dated: 10/20/2004

Edward J. Sullivan
Clerk of the Court

BY:Lorem Hospnish
Assis

Location: Room 7A (Cambridge)
Telephone: (617) 494-4011 EXT 02

Disabled individuals who need handicap accommodations should contact the Administrative Office of the Superior Court at (617) 788-8130

Check website as to status of case: http://ma-trialcourts.org/tcic
2631966 inidcc01 dipacee

### COOLEY MANION JONES LLP

04-4144

JON S. BAROOSHIAN
RICHARD M. BURKE
KATHRYN R. COLBURN
EARLE C. COOLEY
DONNA R. CORCORAN
CHRISTOPHER J. CUNIO
ROBERT A. DELELLO
JENNIFER B. FUREY
MAITE GARCIA
MARTIN F. GAYNOR III
BRIAN D. GROSS*
JOHN T. HUGO
TRACY A. R. JOLLY
PATRICK T. JONES*†
TIMOTHY C. KELLEHER III
HARRY L. MANION III
JOHN B. MANNING*
KENNETH J. MARTIN
KERRI L. MCCOMISKEY
JAIMIE A. MCKEAN
KEITH M. MCLEAN
LISA M. SNYDER
JESSICA A. STACY˜
NICHOLAS D. STELLAKIS
JONATHAN F. TABASKY*†‡

COUNSELLORS AT LAW

21 CUSTOM HOUSE STREET

BOSTON, MASSACHUSETTS 02110-3536

(617) 737-3100

FACSIMILE (617) 737-3113

www.cooleymanionjones.com

PAUL F. BECKWITH
LEONARD T. EVERS
KEVIN M. GLYNN
ARTHUR GRIMALDO II~
FRANK A. MARINELLI*
PETER J. SCHNEIDER*
MELODY M. WILKINSON~
OF COUNSEL

RHODE ISLAND OFFICE
ONE CENTER PLACE
PROVIDENCE, RHODE ISLAND 02903
(401) 273-0800

TEXAS OFFICE
100 EAST FIFTEENTH STREET, SUITE 320
FORT WORTH, TEXAS 76102
(817) 870-1996

~ADMITTED IN TEXAS ONLY
*ALSO ADMITTED IN RHODE ISLAND
†ALSO ADMITTED IN CONNECTICUT
‡ALSO ADMITTED IN NEW HAMPSHIRE

October 18, 2004

<u>VIA HAND DELIVERY</u>

Civil Clerk's Office
Middlesex Superior Court
40 Thorndike Street
E. Cambridge, MA 02141

      RE:    A.W. Chesterton Company, Inc. v. Atlanta International
             Insurance Company, et al..

Dear Sir/Madam:

    Enclosed please find the following documents for filing in the above-referenced matter:

      1.    Civil Cover Sheet;

      2.    Complaint;

      3.    Check in the amount of $275.00 for the filing fee.

    If you have any questions or comments, please do not hesitate to contact me.

                  Sincerely,

                  Martin F. Gaynor III

MFG/jre
Enclosures

132391v1

| CIVIL ACTION COVER SHEET | 04-4144 | Trial Court of Massachusetts Superior Court Department County: |
|---|---|---|

| PLAINTIFF(S) | DEFENDANT(S) |
|---|---|
| A.W. Chesterton Company | The St. Paul Travelers Companies |

| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE  617 737-3100 | ATTORNEY (if known) |
|---|---|
| Harry L. Manion, Martin F. Gaynor III Cooley Manion Jones LLP, 21 Custom House St. Board of Bar Overseers number: 564384    Boston, MA 02110 | unknown |

## Origin code and track designation

Place an x in one box only:

XX 1. F01 Original Complaint
☐ 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
☐ 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)

☐ 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
☐ 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
☐ 6. E10 Summary Process Appeal (X)

## TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

CODE NO.      TYPE OF ACTION (specify)      TRACK        IS THIS A JURY CASE?

 A99        Breach of Ins. Contract   F      ( XX ) Yes    ( ) No

**The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.**

### TORT CLAIMS
(Attach additional sheets as necessary)

A.   Documented medical expenses to date:
1.   Total hospital expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . .
2.   Total Doctor expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . .
3.   Total chiropractic expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . .
4.   Total physical therapy expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . .
5.   Total other expenses (describe) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . .
                                                                       Subtotal $. . . . . .
B.   Documented lost wages and compensation to date . . . . . . . . . . . . . . . . . . . . $. . . . . .
C.   Documented property damages to date . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . .
D.   Reasonably anticipated future medical and hospital expenses . . . . . . . . . . . . . $. . . . . .
E.   Reasonably anticipated lost wages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . .
F.   Other documented items of damages (describe)
                                                                       $. . . . . .
G.   Brief description of plaintiff's injury, including nature and extent of injury (describe)

                                                                       $. . . . . .
                                                             TOTAL $. . . . . . . . . . .

FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS
OCT 18 2004
CLERK

### CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):    The Defendant issued an umbrella excess general liability policy to the Plaintiff, which covers asbestos-related liabilities. The Defendant has breached the contract by failing to pay loss or expenses as defined in the policy on account of asbestos-related claims against which Plaintiff

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record  _____   DATE: 10-18-04

AOTC-6 mtc005-11/99
A.O.S.C. 1-2000

MAS-20031124
gilmanr

**Commonwealth of Massachusetts**
MIDDLESEX SUPERIOR COURT
Case Summary
Civil Docket

11/24/2004
03:28 PM

# MICV2004-04144
## A.W. Chesterton Company, Inc. v St. Paul Travelers Companies, Inc.

| | | | | | |
|---|---|---|---|---|---|
| **File Date** | 10/18/2004 | **Status** | Disposed: transferred to other court (dtrans) | | |
| **Status Date** | 11/24/2004 | **Session** | D - Cv D (7A Cambridge) | | |
| **Origin** | 1 | **Case Type** | A99 - Misc contract | | |
| **Lead Case** | | **Track** | F | | |

| | | | | | |
|---|---|---|---|---|---|
| **Service** | 01/16/2005 | **Answer** | 03/17/2005 | **Rule12/19/20** | 03/17/2005 |
| **Rule 15** | 03/17/2005 | **Discovery** | 08/14/2005 | **Rule 56** | 09/13/2005 |
| **Final PTC** | 10/13/2005 | **Disposition** | 12/12/2005 | **Jury Trial** | Yes |

### PARTIES

**Plaintiff**
A.W. Chesterton Company, Inc.
Active 10/18/2004

**Private Counsel 564384**
Martin F Gaynor III
Cooley Manion & Jones
21 Custom House Street
Boston, MA 02110-2007
Phone: 617-737-3100
Fax: 617-737-3113
Active 10/18/2004 Notify

**Private Counsel 317440**
Harry L Manion III
Cooley Manion & Jones
21 Custom House Street
6th floor
Boston, MA 02110-3536
Phone: 617-737-3100
Fax: 617-737-0374
Active 10/18/2004 Notify

**Private Counsel 653244**
Kathryn R Colburn
Cooley Manion & Jones
21 Custom House Street
6th floor
Boston, MA 02110-3536
Phone: 617-737-3100
Fax: 617-737-3113
Active 10/18/2004 Notify

**Defendant**
St. Paul Travelers Companies, Inc.
Service pending 10/18/2004

**Private Counsel 565778**
J Patrick Kennedy
Bulkley Richardson & Gelinas
One Post Office Square
Suite 3700
Boston, MA 02109
Phone: 617-368-2500
Fax: 617-368-2525
Active 11/24/2004 Notify

### ENTRIES

| Date | Paper | Text |
|---|---|---|
| 10/18/2004 | 1.0 | Complaint & civil action cover sheet filed |

MAS-20031124
gilmanr

**Commonwealth of Massachusetts**
**MIDDLESEX SUPERIOR COURT**
**Case Summary**
**Civil Docket**

## MICV2004-04144
## A.W. Chesterton Company, Inc. v St. Paul Travelers Companies, Inc.

| Date | Paper | Text |
|------|-------|------|
| 10/18/2004 | | Origin 1, Type A99, Track F. |
| 10/28/2004 | 2.0 | Plff's REQUEST (non-joint) For Special Assignment pursuant to standing order #9-80 as amended  (Filed in Suffolk) |
| 10/28/2004 | 3.0 | ORDER FOR SPECIAL ASSIGNMENT: After due consideration of the request for special assignment in the above captioned case, said request is ALLOWED. It is hereby ORDERED that the Honorable Thomas E. Connolly, Associate Justice of the Superior Court, is hereby specially assigned to hear the above captioned case for all purposes. The Clerk-Magistrate's office will notify all counsel of record. (Suzanne V. DelVecchio, Chief Justice) |
| 11/05/2004 | 4.0 | Amended complaint and Demand for jury trial by the parties |
| 11/24/2004 | 5.0 | Case REMOVED this date to US District Court of Massachusetts  by deft St Paul Fire & Marine Insurance Co |
| 11/24/2004 | | ABOVE ACTION THIS DAY REMOVED TO US DISTRICT COURT |



# COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.

**SUPERIOR COURT**
**Civil Action**
**No. 04-4144**

A.W. CHESTERTON CO., INC.,

**Plaintiff**

vs.

THE ST. PAUL TRAVELERS INSURANCE CO.,

**Defendant**

## ORDER FOR SPECIAL ASSIGNMENT

After due consideration of the request for special assignment in the above captioned case, said request is **ALLOWED.** It is hereby **ORDERED** that the Honorable Thomas E. Connolly, Associate Justice of the Superior Court, is hereby specially assigned to hear the above captioned case for all purposes. The Clerk-Magistrate's office will notify all counsel of record.

Suzanne V. DelVecchio
Chief Justice

**DATED: October 28, 2004**

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss

SUPERIOR COURT DEPT.
CIVIL ACTION NO. 04-4144

A.W. CHESTERTON COMPANY, INC. )
    Plaintiff, )
        )
    v. )
        )
ST. PAUL FIRE & MARINE INSURANCE )
COMPANY )
    Defendant. )
        )

## NOTICE OF AMENDMENT OF COMPLAINT
## AS A MATTER OF COURSE

Pursuant to Rule 15(a) of the Massachusetts Rules of Civil Procedure Plaintiff hereby amends, as a matter of course, its Complaint by substituting the name St. Paul Fire & Marine Insurance Company for The St. Paul Travelers Insurance Companies, Inc.

Mass.R.Civ.P. 15(a) permits this amendment to be made as of course because no answer has been filed and no order of dismissal has been entered.

Attorney for Plaintiff,

A.W. CHESTERTON COMPANY, INC.

Harry L. Manion III, BBO No. 317440
Martin F. Gaynor III, BBO No. 564384
Kathryn R. Colburn. BBO No. 653244
COOLEY MANION JONES LLP
21 Custom House Street
Boston, MA 02110
(617) 737-3100

133396v1

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION NO. 04-4144

A.W. CHESTERTON COMPANY, INC.
    Plaintiff,

V.

THE ST. PAUL TRAVELERS COMPANIES, INC.,
    Defendants.

)
)
)
)
)
)
)

## REQUEST (NON JOINT) FOR SPECIAL ASSIGNMENT PURSUANT TO STANDING ORDER NO. 9-80, AS AMENDED

The Plaintiff in the above-entitled action requests that this case be assigned to a justice of the Superior court to be specially designated by the Chief Justice to conduct the proceedings herein.

**1.**    **List all parties (including third -parties) and counsel of record.**

| Plaintiffs | Counsel |
|---|---|
| A.W. Chesterton Company | Harry L. Manion<br>Martin F. Gaynor III<br>Cooley Manion Jones LLP<br>21 Custom House Street<br>Boston, MA 02110 |

| Defendants | Counsel |
|---|---|
| The St. Paul Travelers Companies, Inc. | Unknown |

**2.**    **Please provide a brief description of the case.**

This is an insurance coverage action in which Plaintiff seeks indemnification from its insurer for loss and expense arising from asbestos-related bodily injury claims brought against the Plaintiff.

10-28-04
Filed AT
SuFFOLK.

3.    **Why should this case be specially assigned? Are there any novel issues or questions of law? What is the expected length of the trial?**

This case should be specially assigned because it requires careful and thoughtful case administration by a single judge. Because of the amounts involved and the nature of the dispute there is the potential for unnecessary delay and inefficient use of judicial resources unless the case is actively managed from the outset. Most if not all of the pertinent legal issues were addressed in a coverage action brought by Chesterton in Middlesex Superior Court (C.A. No. 96-4871) against its first layer excess carrier that was specially assigned to J. David McLaughlin. Final Judgment in that case was entered last year.

4.    **List the names of all parties opposing this request:**

It is unknown at this time whether the Defendant will oppose this request.

5.    **The requesting party suggests that the following judges would be acceptable for this special assignment:**

1. Hon. Thomas E. Connelly        2. Hon. Diane M. Kottmyer

3. Hon. Kathryn A. White

Respectfully submitted,

A. W. CHESTERTON COMPANY
By its attorneys,

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the above document was served upon the attorney of record of each other party by mail hand on  10-21-04

and Fax

Harry L. Manion III, BBO# 317440
Martin F. Gaynor III, BBO# 564384
Kathryn R. Colburn, BBO #653244
COOLEY MANION JONES, LLP
21 Custom House Street
Boston, MA 02110
(617) 737-3100

DATE:  October 21, 2004

132384v1

2

| **Party Involved:** | | **Role:** | Defendant |
|---|---|---|---|
| **Last Name:** | St. Paul Travelers Companies, Inc. | **First Name:** | |
| **Address:** | | **Address:** | |
| **City:** | Saint Paul | **State:** | MI |
| **Zip Code:** | | **Zip Ext:** | |
| **Telephone:** | | | |

| **Party Involved:** | | **Role:** | Plaintiff |
|---|---|---|---|
| **Last Name:** | A.W. Chesterton Company, Inc. | **First Name:** | |
| **Address:** | | **Address:** | |
| **City:** | Stoneham | **State:** | MA |
| **Zip Code:** | | **Zip Ext:** | |
| **Telephone:** | | | |

## Attorneys Involved

1 Attorneys Involved for Docket: MICV2004-04144

| **Attorney Involved:** | | **Firm Name:** | COOL01 |
|---|---|---|---|
| **Last Name:** | Gaynor III | **First Name:** | Martin F |
| **Address:** | 21 Custom House Street | **Address:** | |
| **City:** | Boston | **State:** | MA |
| **Zip Code:** | 02110 | **Zip Ext:** | 2007 |
| **Telephone:** | 617-737-3100 | **Tel Ext:** | |
| **Fascimile:** | 617-737-3113 | **Representing:** | A.W. Chesterton Company, Inc (Plaintiff) |

## Calendar Events

No Calendar Events found for Docket: MICV2004-04144.

There are currently no calendar events associated with this case.

## Full Docket Entries

| CIVIL ACTION COVER SHEET | DOCKET NO.(S) 04-4141 | Trial Court of Massachusetts Superior Court Department County: |
|---|---|---|

| PLAINTIFF(S) A.W. Chesterton Company | DEFENDANT(S) The St. Paul Travelers Companies |
|---|---|

| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE 617 737-3100 Harry L. Manion, Martin F. Gaynor III Cooley Manion Jones LLP, 21 Custom House St. Board of Bar Overseers number: 564384   Boston, MA 02110 | ATTORNEY (if known)   unknown |
|---|---|

**Origin code and track designation**

Place an x in one box only:

XX  1. F01 Original Complaint
☐  2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
☐  3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)

☐  4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
☐  5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
☐  6. E10 Summary Process Appeal (X)

**TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)**

CODE NO.   TYPE OF ACTION (specify)   TRACK   IS THIS A JURY CASE?

A99   Breach of Ins. Contract   F   (XX) Yes   ( ) No

**The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.**

**TORT CLAIMS**
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $
2. Total Doctor expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $
3. Total chiropractic expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $
4. Total physical therapy expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $
5. Total other expenses (describe) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $
Subtotal $
B. Documented lost wages and compensation to date . . . . . . . . . . . . . . . . . . $
C. Documented property damages to date . . . . . . . . . . . . . . . . . . . . . . . . . . . $
D. Reasonably anticipated future medical and hospital expenses . . . . . . . . . . . $
E. Reasonably anticipated lost wages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $
F. Other documented items of damages (describe)
$
G. Brief description of plaintiff's injury, including nature and extent of injury (describe)

$ . . . . . . . . . . . .
TOTAL $ . . . . . . . . . . . .

**CONTRACT CLAIMS**
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):   The Defendant issued an umbrella excess general liability policy to the Plaintiff, which covers asbestos-related liabilities. The Defendant has breached the contract by failing to pay loss or expenses as defined in the policy on account of asbestos-related claims against the Plaintiff.

TOTAL $ . . . . . . . . . . . .
In excess of $5 million

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _____   DATE: 10-18-04

AOTC-6 mtc005-11/99
A.O.S.C. 1-2000

| DATE | INVOICE NO. OR REFERENCE | AMOUNT | DISCOUNT | BALANCE |
|------|--------------------------|--------|----------|---------|
|      | ARC/Excess #2            |        |          |         |

**TOTALS** ➡

PLEASE DETACH STATEMENT BEFORE DEPOSITING CHECK

**THIS CHECK IS VOID IF MICRO PRINT SIGNATURE LINE IS UNREADABLE UNDER MAGNIFICATION**

**COOLEY MANION JONES** LLP
21 CUSTOM HOUSE STREET
BOSTON, MA 02110

DATE 10/18/04     CHECK NO 023616
5-13
110

AMOUNT PAID
*******275.00

PAY EXACTLY

*********** Two Hundred Seventy Five & 00/100 Dollars

FLEET BANK OF MASSACHUSETTS - BOSTON, MA

PAY TO
THE
ORDER OF

**Middlesex Superior Court**
40 Thorndike Street
Cambridge, MA 02141

COOLEY MANION JONES LLP
OPERATING ACCOUNT 04-4144

AUTHORIZED SIGNATURE

⑈023616⑈ ⑆011000138⑆93745 12458⑈

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss

SUPERIOR COURT DEPT.
CIVIL ACTION NO.

A.W. CHESTERTON COMPANY, INC.
    Plaintiff,

v.

THE ST. PAUL TRAVELERS COMPANIES,
INC.,
    Defendant.

04-4144

FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS

OCT 18 2004

CLERK

## COMPLAINT AND DEMAND FOR JURY TRIAL

### PARTIES

1.    The plaintiff, A.W. Chesterton Company, Inc. ("Chesterton") is a Massachusetts corporation with its principal place of business in Stoneham, Middlesex County, Massachusetts.

2.    Defendant The St. Paul Travelers Companies, Inc. ("St. Paul"), formerly St. Paul Fire and Marine Insurance Company, is a Minnesota corporation with its principal place of business in Saint Paul, Minnesota. St. Paul is and/or at all relevant times mentioned herein was, engaged in the business of writing liability insurance policies in Massachusetts and elsewhere.

### JURISDICTION AND VENUE

3.    Jurisdiction in this Court is proper under Mass. Gen. L. ch. 223A because the defendant, within the time period relevant to the cause of action stated herein, has transacted business within Massachusetts, including contracting to supply services in

Massachusetts, contracting to insure persons, property or risks located within Massachusetts, and engaging in the business of writing or delivering liability insurance policies in Massachusetts. Moreover, the cause of action stated herein arises from the defendant's contracting to supply services in Massachusetts and contracting to insure risks located within Massachusetts at the time of contracting.

4.     Venue is proper because Chesterton has its principal place of business in Middlesex County.

## FACTUAL BACKGROUND

5.     Chesterton is a manufacturer of products that for many decades contained encapsulated asbestos. In excess of 400,000 claims, beginning in January, 1980, have been asserted against Chesterton by persons who allege that they have suffered personal injury as a result of exposure to asbestos fibers ("Underlying Claims"). Chesterton has spent millions of dollars defending and settling the Underlying Claims.

6.     During the period relevant to this action, Chesterton has been insured by means of primary comprehensive general liability policies, and several layers of excess insurance policies.

7.     In 1996, Chesterton filed a declaratory judgment action in this Court (Civil Action No. 96-4871) against its first layer excess carriers, American Home Assurance Company, United States Fire Insurance Company, The Continental Insurance Company, Northbrook Insurance Company, certain London Market Companies, First State Insurance Company, and Stonewall Insurance Company, and the Massachusetts Insurers Insolvency Fund ("MIIF"), seeking a determination of the scope of the insurers'

- 2 -

obligations to Chesterton under their policies and damages for the insurers' failure to perform their contractual obligations pursuant to the policies.

8.      A trial was held in June, 2002 ("the Phase I" Trial") to decide several issues including whether Chesterton had exhausted all primary comprehensive general liability insurance available to it that covered asbestos-related claims. The Superior Court issued a memorandum and decision following that trial in which the Court decided that Chesterton had in fact exhausted all primary coverage that was required to be exhausted. The Court then scheduled a second trial ("the Phase II Trial") to resolve various issues raised by the remaining defendants and to determine the amounts owed to Chesterton by those defendants. The Court resolved most of the legal issues raised by the defendants through a series of summary judgment motions. The Court issued decisions on the motions for summary judgment on May 20, 2003. The Court then scheduled the Phase II Trial for June 16, 2003 to resolve all outstanding issues of fact.

9.      Prior to the Phase II Trial, Chesterton settled with all of the defendants other than the MIIF. The Phase II Trial was then held in June, 2003 between Chesterton and the MIIF and the Court issued its final judgment in September, 2003.

10.     In its final judgment, the Court declared that Chesterton had exhausted all coverage provided by its primary policies that applied to asbestos-related claims. Specifically, Judge McLaughlin, sitting by special assignment, held, "[a]ll valid and collectible primary comprehensive general liability policies, the limits of which were required to have been exhausted prior to any obligation of the defendant excess insurance carriers to indemnify or defend, have been, in fact, exhausted."

- 3 -

11.    The defendant in this case, St. Paul, in consideration for premiums duly paid by Chesterton, issued a second-layer excess policy to Chesterton, bearing policy number 569XA5135, with an effective period of January 18, 1972 to July 1, 1974 (attached as Exhibit A).

12.    The policy obligates St. Paul to pay Chesterton's "loss," defined as "the sums paid in settlements of losses for which the Insured is liable..." in excess of the exhausted primary and first-layer excess policies that underlie the St. Paul policy.

13.    The St. Paul policy also obligates St. Paul to pay a proportional share of costs and expenses associated with the Underlying Claims against Chesterton.

14.    In nearly every Underlying Claim, the claimant alleges to have suffered asbestos-related injury during the time period in which the St. Paul policy was in effect, thereby triggering the St. Paul policy.

15.    Chesterton has exhausted all primary and first-layer excess policies required to be exhausted before the obligations of the St. Paul policy arise.

16.    On August 14, 1997, Chesterton put St. Paul on notice that it was being named as a defendant in a large number of lawsuits for asbestos-related personal injuries. Thereafter, Chesterton periodically updated St. Paul on the amount Chesterton was spending defending and settling Underlying Claims.  Since at least early 2003, Chesterton has responded to numerous specific requests for information by St. Paul related to Chesterton's settlement payments, allocation methods, and exhaustion of primary and first-layer excess policies.

17.    Despite St. Paul's knowledge that it is obligated now to fulfill its insurance obligations to Chesterton, St. Paul has refused to do so.

- 4 -

18.    Chesterton has satisfied all conditions precedent to St. Paul's coverage obligations.

## COUNT I

## (BREACH OF CONTRACT)

19.    Chesterton restates the allegations contained in paragraphs 1 through 18.

20.    St. Paul has breached the terms of its policy by refusing to assume its indemnification and expense obligations with respect to asbestos-related claims against Chesterton.

21.    As a result of St. Paul's breach of contract, Chesterton has suffered damages and will suffer additional damages until St. Paul assumes its indemnification and expense obligations.

22.    St. Paul has breached the implied covenant of good faith and fair dealing implied in its policy by refusing to assume its indemnification and expense obligations.

WHEREFORE, Chesterton requests that the Court enter judgment in its favor:

a.    awarding Chesterton damages in an amount to be determined at trial together with interest, costs, and attorneys' fees; and

b.    granting Chesterton such other relief as may be appropriate.

## JURY DEMAND

Pursuant to Mass. R. Civ. P. 38(b), Chesterton demands a trial by jury on all

issues so triable.

A.W. CHESTERTON COMPANY, INC.
by its attorneys,

Harry L. Manion III, BBO No. 317440
Martin F. Gaynor III, BBO No. 564384
Kathryn R. Colburn. BBO No. 653244
COOLEY MANION JONES LLP
21 Custom House Street
Boston, MA  02110
(617) 737-3100

132171v2

- 6 -

### EXCESS THIRD PARTY LIABILITY POLICY

**No. 569XA5135**

NEW
FORMER POLICY NO.

A CAPITAL STOCK COMPANY

**ST. PAUL FIRE AND MARINE INSURANCE COMPANY**
ST. PAUL, MINNESOTA

**THE ST. PAUL**
INSURANCE COMPANIES

*Serving you around the world... around the clock*



**ITEM 1. Insured's Name and Mailing Address**

A. W. CHESTERTON COMPANY &
COMMERCIAL CHEMICAL COMPANY, INC.
ASHLAND STREET
EVERETT, MASSACHUSETTS

| ITEM 2. POLICY PERIOD: | | ITEM 3. LOCATION OF COVERAGE: | |
|---|---|---|---|
| FROM | TO | EVERETT, MASSACHUSETTS | and as further defined in the Primary Policy. |
| 1-18-72 | 4-17-74 | | |

*12:01 A.M., Standard time at the address of the Insured as stated herein.

**ITEM 4. PRIMARY INSURANCE:**

| INSURER'S NAME | POLICY NO'S. (Including Renewals or Replacements) | DESCRIPTION OF COVERAGE |
|---|---|---|
| UNITED STATES FIRE INS. CO. | DCL 92 10 75 | UMBRELLA EXCESS |

**ITEM 5. LIMITS OF LIABILITY:** The limit of the Company's liability shall be as stated herein, subject to all the terms of this Policy having reference thereto.

| SECTION I COMPANY LIMITS | IN EXCESS OF | SECTION II UNDERLYING LIMITS | SECTION III TOTAL LIMITS | COVERAGE |
|---|---|---|---|---|
| $ | Each Person | $ | $ | A. Bodily Injury Automobile |
| $ | Each Accident or Occurrence | $ | $ | |
| $ | Each Person | $ | $ | B. Bodily Injury Except Automobile |
| $ | Each Accident or Occurrence | $ | $ | |
| $ | Aggregate Products | $ | $ | |
| $ | Each Accident or Occurrence | $ | $ | C. Property Damage Auto |
| $ | Each Accident or Occurrence | $ | $ | D. Property Damage Except Automobile |
| $ | Aggregate Operations | $ | $ | |
| $ | Aggregate Protective | $ | $ | |
| $ | Aggregate Products | $ | $ | |
| $ | Aggregate Contractual | $ | $ | |
| $ | Each Accident or Occurrence | $ | $ | E. Combined Single Limit Bodily Injury and/or Property Damage |
| $ | Aggregate | $ | $ | |
| $5,000,000. each occurrence $5,000,000.00 Aggregate | | $5,000,000. $5,000,000. | $10,000,000. $10,000,000. | F. Other UMBRELLA EXCESS |

**ITEM 6. PREMIUM COMPUTATION | Products.**

| PREMIUM BASIS | ESTIMATED EXPOSURE | RATE | ESTIMATED PREM. | DEPOSIT PREM. | MINIMUM PREM. | AUDIT PERIOD |
|---|---|---|---|---|---|---|
| FLAT CHARGE | | FLAT | 1250.PER YR. | $ 304.00 $1250.00 | INSTALLMENT | |

AUTHORIZED REPRESENTATIVE

AWC 0045655

1-18-72
COUNTERSIGNATURE DATE

BOSTON, MASS.
COUNTERSIGNED AT

I4184ELP 2M 8-68 W Rev. 7-63

## INSURING AGREEMENT

In consideration of the payment of premium stated in the Declarations, the ST. PAUL FIRE AND MARINE INSURANCE COMPANY, herein called the Company, agrees to indemnify the Insured, in accordance with the applicable insuring agreements of the Primary Insurance, against loss subject to the limits stated in Item 5, Section I of the Declarations and as fully and to all intents and purposes as though the Primary Insurance had been issued for the limits set forth in Item 5, Section III of the Declarations. This Policy shall apply only to coverages for which an amount is indicated in Item 5, Section I, and then only in excess of the corresponding amount as indicated in Item 5, Section II of the Declarations.

## DEFINITIONS

1. **Loss.** The word "loss" shall be understood to mean the sums paid in settlements of losses for which the Insured is liable after making deductions for all other recoveries, salvages and other insurances (other than recoveries under the policy/ies of the Primary Insurer), whether recoverable or not, and shall exclude all expense and costs.

2. **Costs.** The word "costs" shall be understood to mean interest on judgments, investigations, adjustment and legal expenses (excluding, however, all expense for salaried employees and retained counsel of and all office expense of the Insured).

3. **Primary Insurance.** The term "primary insurance" shall be understood to mean the policy (policies) described in Item 4.

## NUCLEAR ENERGY LIABILITY EXCLUSION

It is agreed that the insurance afforded under any liability coverage of this Policy or of any endorsement used herewith does not apply:

1. Under any Liability Coverage, to injury, sickness, disease, death or destruction
   (a) with respect to which an Insured under the Policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or
   (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the Insured is, or had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2. Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

3. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if
   (a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an Insured or (2) has been discharged or dispersed therefrom;
   (b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or
   (c) the injury, sickness, disease, death or destruction arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

4. As used in this endorsement:
   "hazardous properties" include radioactive, toxic or explosive properties;
   "nuclear material" means source material, special nuclear material or byproduct material;
   "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;
   "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;
   "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;
   "nuclear facility" means
   (a) any nuclear reactor,
   (b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,
   (c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,
   (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,
   and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;
   "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;
   With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

## THIS SPACE FOR THE ATTACHMENT OF ENDORSEMENTS, IF ANY

AWC 0045656

## CONDITIONS

1. It is agreed that this Policy, except as herein stated, is subject to all conditions, agreements and limitations of and shall follow the Primary Insurance in all respects, including changes by endorsement and the Insured shall furnish the Company with copies of such changes. It is further agreed should any alteration be made in the premium for the policy/ies of the Primary Insurers during the period of this Policy, then the premium hereon other than the Minimum Premium shall be adjusted accordingly.

2. Notice of any accident, which appears likely to involve this Policy, shall be given to the Company, which at its own option, may, but is not required to, participate in the investigation, settlement or defense of any claim or suit. In the event expense and/or costs in connection with any claim or suit is incurred jointly by mutual consent of the Company and of the Insured or Primary Insurer, the Company, in addition to its limits of liability as expressed in Item 5, Section I of the Declarations, shall be liable for no greater proportion of such expense and/or costs than the amount payable by the Company under this Policy bears to the total loss payment.

3. With respect to each coverage in Item 5, Section I of the Declarations, the Bodily Injury limit applicable to each accident is subject to the limit specified as applicable to each person. There is no limit to the number of accidents for which claims may be brought hereunder (provided such accidents occur during the period of this Policy) except as provided by aggregate limits which, with respect to Item 5, Section I, when inserted therein apply to all accidents happening during each twelve months' term of the Policy.

4. All salvages, recoveries or payments recovered or received subsequent to a loss settlement under the Policy shall be applied as if recovered or received prior to such settlement and all necessary adjustments shall then be made between the Insured and the Company, provided always that nothing in this Policy shall be construed to mean that losses under this Policy are not recoverable until the Insured's ultimate net loss has been finally ascertained.

5. This Policy may be cancelled by the named Insured by surrender thereof to the Company or any of its authorized agents, or by mailing to the Company written notice stating when thereafter the cancellation shall be effective. This Policy may be cancelled by the Company by mailing to the named Insured at the address shown in this Policy written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of the surrender, or the effective date and hour of cancellation stated in the notice, shall become the end of the Policy Period. Delivery of such written notice either by the named Insured or by the Company shall be equivalent to mailing.

If the named Insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

In the event of the cancellation or termination of the primary insurance or a renewal thereof, this Policy, to the extent of such cancellation or termination, shall cease to apply at the same time without notice to the Insured.

PROVISIONS REQUIRED BY LAW TO BE STATED IN THIS POLICY:—"This Policy is issued under and in pursuance of the laws of the State of Minnesota, relating to Guaranty Surplus and Special Reserve Funds." Chapter 437, General Laws of 1909.

IN WITNESS WHEREOF, the ST. PAUL FIRE AND MARINE INSURANCE COMPANY, has caused this Policy to be signed by its President and Secretary at St. Paul, Minnesota, and countersigned on the Declarations page by a duly authorized representative of the Company.

*Secretary.*                                                    *President.*

AWC 0045657



**THE ST. PAUL**
COMPANIES

ENDORSEMENT

*The following spaces preceded by an asterisk (\*) need not be completed if this endorsement and the policy have the same inception date.*

| ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 569XA5135 | 4-17-74 | A.W.Chesterton Company & Commercial Chemical Co. |

$
In consideration of an additional premium of 256.00 , it is understood and agreed that the
policy period is amended to read :
     1-18-72   to  7-1-74

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

*Agency Name and Address*

•   Brewer & Lord
    40 Broad Street
    Boston,Mass.  02109
    200241 db

*In Witness Whereof,* the Company has caused this
endorsement to be signed by a duly authorized
representative of the Company.

_____
AUTHORIZED REPRESENTATIVE

14600-4 BEF REV. 8-84
PRINTED IN U.S.A.

AWC 0045658



**THE ST. PAUL**
COMPANIES

**ENDORSEMENT**

*The following spaces preceded by an asterisk (\*) need not be completed if this endorsement and the policy have the same inception date.*

| ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 569XA5135 | 7/5/73 | A.W. Chesterton Company et al. |

It is agreed that the address of the Named Insured is amended as follows:

            Fallon Road
            Middlesex Industrial Park
            Stoneham, Mass.

AUG 10 1973

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

*Agency Name and Address*

• Brewer & Lord
  40 Broad Street
  Boston, Mass. 02109
  200241

*In Witness Whereof,* the Company has caused this endorsement to be signed by its President at St. Paul, Minnesota and countersigned by a duly authorized representative of the Company.

Brewer & Lord

*President*

AUTHORIZED REPRESENTATIVE

14600-4 BEF REV. 8-64
PRINTED IN U.S.A.

AWC 0045659



**THE ST. PAUL**
INSURANCE COMPANIES

*Serving you around the world...round the clock*

**ENDORSEMENT**

*The following spaces preceded by an asterisk (\*) need not be completed if this endorsement and the policy have the same inception date.*

| ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 569XA5135 | 1-18-72 | |

IT IS HEREBY UNDERSTOOD AND AGREED THAT THE PREMIUM FOR THIS POLICY

IS PAYABLE AS FOLLOWS:

$304.00 PAYABLE ON 1-18-72
$1250.00 PAYABLE ON 4-17-72
$1250.00 PAYABLE ON 4-17-73

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

*Agency Name and Address*

*In Witness Whereof,* the Company has caused this endorsement to be signed by its President at St. Paul, Minnesota and countersigned by a duly authorized representative of the Company.

Carl B. Drake Jr.
*President.*

Brewer & Lord
AUTHORIZED REPRESENTATIVE

14500-4 BEF REV. 8-64
PRINTED IN U.S.A.

AWC 0045660


**THE ST. PAUL**
INSURANCE COMPANIES
Serving you around the world... around the clock

ENDORSEMENT

*The following spaces preceded by an asterisk (\*) need not be completed if this endorsement and the policy have the same inception date.*

| ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 569XA5135 | 1-18-72 | A. W. CHESTERTON COMPANY & COMMERCIAL CHEMICAL CO., INC. |

IT IS UNDERSTOOD AND AGREED THAT ITEM #1, INSUREDS' NAME IS AMENDED TO READ AS FOLLOWS:

       A. W. CHESTERTON COMPANY
       COMMERCIAL CHEMICAL COMPANY, INC. & CHESCO., INC.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

*Agency Name and Address*

*In Witness Whereof,* the Company has caused this endorsement to be signed by its President at St. Paul, Minnesota and countersigned by a duly authorized representative of the Company.

  BREWER & LORD
  40 BROAD ST.
  BOSTON, MA 02109

*President.*

AUTHORIZED REPRESENTATIVE

14600-4 BEF REV. 8-64
PRINTED IN U.S.A.

AWC 0045661

# BREWER & LORD
FOUNDED 1859

June 3, 1974

TERMS: NET 30 DAYS
FROM ABOVE DATE

*Insurance*

40 BROAD STREET
BOSTON, MASS. 02109

Telephone
426-0830

560

A W CHESTERTON COMPANY
MIDDLESEX INDUSTRIAL
PARK — RTE 93
STONEHAM MASS                02180

CH504    26

EXPIRING POLICY
NO. 56XA5135

TERMS: NET 30 DAYS FROM ABOVE DATE.
RECEIPT OF CHECK ACKNOWLEDGED ONLY WHEN REQUESTED SINCE PAID CHECK CONSTITUTES FULL RECEIPT

| EFF. DATE | | | POLICY | COMPANY | KIND OF POLICY | PREMIUM |
|---|---|---|---|---|---|---|
| 04 | 17 | 74 | 56XA5135 | ST PAUL F & M | Excess Liability | 256.00 |
| EXPIRES | | | | | | |
| 7 | 1 | 74 | | | | |

Extension Endorsement

Please detach and return TOP portion of this bill to BREWER & LORD

AWC 0045662

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss                         SUPERIOR COURT DEPT.
                                        CIVIL ACTION NO. 04-4144

|  |  |
|---|---|
| A.W. CHESTERTON COMPANY, INC. | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| ST. PAUL FIRE & MARINE INSURANCE | ) |
| COMPANY | ) |
| Defendant. | ) |
|  | ) |

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

### PARTIES

1.      The plaintiff, A.W. Chesterton Company, Inc. ("Chesterton") is a Massachusetts corporation with its principal place of business in Stoneham, Middlesex County, Massachusetts.

2.      Defendant St. Paul Fire & Marine Insurance Company ("St. Paul"), is a Minnesota corporation with its principal place of business at 385 Washington Street, Saint Paul, Minnesota 55102. St. Paul is and/or at all relevant times mentioned herein was, engaged in the business of writing liability insurance policies in Massachusetts and elsewhere.

### JURISDICTION AND VENUE

3.      Jurisdiction in this Court is proper under Mass. Gen. L. ch. 223A because the defendant, within the time period relevant to the cause of action stated herein, has transacted business within Massachusetts, including contracting to supply services in

Massachusetts, contracting to insure persons, property or risks located within
Massachusetts, and engaging in the business of writing or delivering liability insurance
policies in Massachusetts. Moreover, the cause of action stated herein arises from the
defendant's contracting to supply services in Massachusetts and contracting to insure
risks located within Massachusetts at the time of contracting.

4.      Venue is proper because Chesterton has its principal place of business in
Middlesex County.

## FACTUAL BACKGROUND

5.      Chesterton is a manufacturer of products that for many decades contained
encapsulated asbestos. In excess of 400,000 claims, beginning in January, 1980, have
been asserted against Chesterton by persons who allege that they have suffered personal
injury as a result of exposure to asbestos fibers ("Underlying Claims"). Chesterton has
spent millions of dollars defending and settling the Underlying Claims.

6.      During the period relevant to this action, Chesterton has been insured by
means of primary comprehensive general liability policies, and several layers of excess
insurance policies.

7.      In 1996, Chesterton filed a declaratory judgment action in this Court (Civil
Action No. 96-4871) against its first layer excess carriers, American Home Assurance
Company, United States Fire Insurance Company, The Continental Insurance Company,
Northbrook Insurance Company, certain London Market Companies, First State
Insurance Company, and Stonewall Insurance Company, and the Massachusetts Insurers
Insolvency Fund ("MIIF"), seeking a determination of the scope of the insurers'

- 2 -

obligations to Chesterton under their policies and damages for the insurers' failure to perform their contractual obligations pursuant to the policies.

8.    A trial was held in June, 2002 ("the Phase I" Trial") to decide several issues including whether Chesterton had exhausted all primary comprehensive general liability insurance available to it that covered asbestos-related claims. The Superior Court issued a memorandum and decision following that trial in which the Court decided that Chesterton had in fact exhausted all primary coverage that was required to be exhausted. The Court then scheduled a second trial ("the Phase II Trial") to resolve various issues raised by the remaining defendants and to determine the amounts owed to Chesterton by those defendants. The Court resolved most of the legal issues raised by the defendants through a series of summary judgment motions. The Court issued decisions on the motions for summary judgment on May 20, 2003. The Court then scheduled the Phase II Trial for June 16, 2003 to resolve all outstanding issues of fact.

9.    Prior to the Phase II Trial, Chesterton settled with all of the defendants other than the MIIF. The Phase II Trial was then held in June, 2003 between Chesterton and the MIIF and the Court issued its final judgment in September, 2003.

10.    In its final judgment, the Court declared that Chesterton had exhausted all coverage provided by its primary policies that applied to asbestos-related claims. Specifically, Judge McLaughlin, sitting by special assignment, held, "[a]ll valid and collectible primary comprehensive general liability policies, the limits of which were required to have been exhausted prior to any obligation of the defendant excess insurance carriers to indemnify or defend, have been, in fact, exhausted."

11.     The defendant in this case, St. Paul, in consideration for premiums duly paid by Chesterton, issued a second-layer excess policy to Chesterton, bearing policy number 569XA5135, with an effective period of January 18, 1972 to July 1, 1974 (attached as Exhibit A).

12.     The policy obligates St. Paul to pay Chesterton's "loss," defined as "the sums paid in settlements of losses for which the Insured is liable..." in excess of the exhausted primary and first-layer excess policies that underlie the St. Paul policy.

13.     The St. Paul policy also obligates St. Paul to pay a proportional share of costs and expenses associated with the Underlying Claims against Chesterton.

14.     In nearly every Underlying Claim, the claimant alleges to have suffered asbestos-related injury during the time period in which the St. Paul policy was in effect, thereby triggering the St. Paul policy.

15.     Chesterton has exhausted all primary and first-layer excess policies required to be exhausted before the obligations of the St. Paul policy arise.

16.     On August 14, 1997, Chesterton put St. Paul on notice that it was being named as a defendant in a large number of lawsuits for asbestos-related personal injuries. Thereafter, Chesterton periodically updated St. Paul on the amount Chesterton was spending defending and settling Underlying Claims. Since at least early 2003, Chesterton has responded to numerous specific requests for information by St. Paul related to Chesterton's settlement payments, allocation methods, and exhaustion of primary and first-layer excess policies.

17.     Despite St. Paul's knowledge that it is obligated now to fulfill its insurance obligations to Chesterton, St. Paul has refused to do so.

- 4 -

18.     Chesterton has satisfied all conditions precedent to St. Paul's coverage obligations.

## COUNT I

## (BREACH OF CONTRACT)

19.     Chesterton restates the allegations contained in paragraphs 1 through 18.

20.     St. Paul has breached the terms of its policy by refusing to assume its indemnification and expense obligations with respect to asbestos-related claims against Chesterton.

21.     As a result of St. Paul's breach of contract, Chesterton has suffered damages and will suffer additional damages until St. Paul assumes its indemnification and expense obligations.

22.     St. Paul has breached the implied covenant of good faith and fair dealing implied in its policy by refusing to assume its indemnification and expense obligations.

WHEREFORE, Chesterton requests that the Court enter judgment in its favor:

    a.      awarding Chesterton damages in an amount to be determined at trial together with interest, costs, and attorneys' fees; and

    b.      granting Chesterton such other relief as may be appropriate.

## JURY DEMAND

Pursuant to Mass. R. Civ. P. 38(b), Chesterton demands a trial by jury on all

issues so triable.

A.W. CHESTERTON COMPANY, INC.
by its attorneys,

Harry L. Manion III, BBO No. 317440
Martin F. Gaynor III, BBO No. 564384
Kathryn R. Colburn. BBO No. 653244
COOLEY MANION JONES LLP
21 Custom House Street
Boston, MA  02110
(617) 737-3100

133377v1

- 6 -

EXCESS THIRD PARTY LIABILITY POLICY

No. 569XA5135

NEW
FORMER POLICY NO.

A CAPITAL STOCK COMPANY
ST. PAUL FIRE AND MARINE
INSURANCE COMPANY
ST. PAUL, MINNESOTA



THE ST. PAUL
INSURANCE COMPANIES

*Serving you around the world... around the clock*

**ITEM 1. Insured's Name and Mailing Address**

A. W. CHESTERTON COMPANY &
COMMERCIAL CHEMICAL COMPANY, INC.
ASHLAND STREET
EVERETT, MASSACHUSETTS



BREWER & LORD
INSURANCE
40 BROAD STREET, BOSTON, MASS.

| ITEM 2. POLICY PERIOD:* | | ITEM 3. LOCATION OF COVERAGE: | |
|---|---|---|---|
| FROM 1-18-72 | TO 4-17-74 | EVERETT, MASSACHUSETTS | and as further defined in the Primary Policy. |

*12:01 A.M., Standard time at the address of the Insured as stated herein.

**ITEM 4. PRIMARY INSURANCE:**

| INSURER'S NAME | POLICY NO'S. (Including Renewals or Replacements) | DESCRIPTION OF COVERAGE |
|---|---|---|
| UNITED STATES FIRE INS. CO. | DCL 92 10 75 | UMBRELLA EXCESS |

**ITEM 5. LIMITS OF LIABILITY:** The limit of the Company's liability shall be as stated herein, subject to all the terms of this Policy having reference thereto.

| SECTION I COMPANY LIMITS | IN EXCESS OF | SECTION II UNDERLYING LIMITS | SECTION III TOTAL LIMITS | COVERAGE |
|---|---|---|---|---|
| $ | Each Person | $ | $ | A. Bodily Injury Automobile |
| $ | Each Accident or Occurrence | $ | $ | |
| $ | Each Person | $ | $ | B. Bodily Injury Except Automobile |
| $ | Each Accident or Occurrence | $ | $ | |
| $ | Aggregate Products | $ | $ | |
| $ | Each Accident or Occurrence | $ | $ | C. Property Damage Auto |
| $ | Each Accident or Occurrence | $ | $ | D. Property Damage Except Automobile |
| $ | Aggregate Operations | $ | $ | |
| $ | Aggregate Protective | $ | $ | |
| $ | Aggregate Products | $ | $ | |
| $ | Aggregate Contractual | $ | $ | |
| $ | Each Accident or Occurrence | $ | $ | E. Combined Single Limit Bodily Injury and/or Property Damage |
| $ | Aggregate | $ | $ | |
| $5,000,000. each occurrence $5,000,000.00 Aggregate | | $5,000,000. $5,000,000. | $10,000,000. $10,000,000. | F. Other UMBRELLA EXCESS |

**ITEM 6. PREMIUM COMPUTATION | Products.**

| PREMIUM BASIS | ESTIMATED EXPOSURE | RATE | ESTIMATED PREM. | DEPOSIT PREM. | MINIMUM PREM. | AUDIT PERIOD |
|---|---|---|---|---|---|---|
| FLAT CHARGE | | FLAT | 1250. PER YR. | $1250.00 | $ 304.00 | INSTALLMENT |

*Brewer & Lord*
AUTHORIZED REPRESENTATIVE

AWC 0045655

1-18-72
COUNTERSIGNATURE DATE

BOSTON, MASS
COUNTERSIGNED AT

14184ELP 2M 8-68 W Rev. 7-63

## INSURING AGREEMENT

In consideration of the payment of premium stated in the Declarations, the ST. PAUL FIRE AND MARINE INSURANCE COMPANY, herein called the Company, agrees to indemnify the Insured, in accordance with the applicable insuring agreements of the Primary Insurance, against loss subject to the limits stated in Item 6, Section I of the Declarations and as fully and to all intents and purposes as though the Primary Insurance had been issued for the limits set forth in Item 5, Section III of the Declarations. This Policy shall apply only to coverages for which an amount is indicated in Item 5, Section I, and then only in excess of the corresponding amount as indicated in Item 5, Section II of the Declarations.

## DEFINITIONS

1. **Loss.**  The word "loss" shall be understood to mean the sums paid in settlements of losses for which the Insured is liable after making deductions for all other recoveries, salvages and other insurances (other than recoveries under the policy/ies of the Primary Insurer), whether recoverable or not, and shall exclude all expense and costs.

2. **Costs.**  The word "costs" shall be understood to mean interest on judgments, investigations, adjustment and legal expenses (excluding, however, all expense for salaried employees and retained counsel of and all office expense of the Insured).

3. **Primary Insurance.**  The term "primary insurance" shall be understood to mean the policy (policies) described in Item 4. ✓

## NUCLEAR ENERGY LIABILITY EXCLUSION

It is agreed that the insurance afforded under any liability coverage of this Policy or of any endorsement used herewith does not apply:

1. Under any Liability Coverage, to injury, sickness, disease, death or destruction
   (a) with respect to which an Insured under the Policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or
   (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the Insured is, or had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2. Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

3. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if
   (a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an Insured or (2) has been discharged or dispersed therefrom;
   (b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or
   (c) the injury, sickness, disease, death or destruction arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

4. As used in this endorsement:
   "hazardous properties" include radioactive, toxic or explosive properties;
   "nuclear material" means source material, special nuclear material or byproduct material;
   "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;
   "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;
   "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;
   "nuclear facility" means
   (a) any nuclear reactor,
   (b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,
   (c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,
   (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,
   and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;
   "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;
   With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

## THIS SPACE FOR THE ATTACHMENT OF ENDORSEMENTS, IF ANY

AWC 0045656

## CONDITIONS

1. It is agreed that this Policy, except as herein stated, is subject to all conditions, agreements and limitations of and shall follow the Primary Insurance in all respects, including changes by endorsement and the Insured shall furnish the Company with copies of such changes. It is further agreed should any alteration be made in the premium for the policy/ies of the Primary Insurers during the period of this Policy, then the premium hereon other than the Minimum Premium shall be adjusted accordingly.

2. Notice of any accident, which appears likely to involve this Policy, shall be given to the Company, which at its own option, may, but is not required to, participate in the investigation, settlement or defense of any claim or suit. In the event expense and/or costs in connection with any claim or suit is incurred jointly by mutual consent of the Company and of the Insured or Primary Insurer, the Company, in addition to its limits of liability as expressed in Item 5, Section I of the Declarations, shall be liable for no greater proportion of such expense and/or costs than the amount payable by the Company under this Policy bears to the total loss payment.

3. With respect to each coverage in Item 5, Section I of the Declarations, the Bodily Injury limit applicable to each accident is subject to the limit specified as applicable to each person. There is no limit to the number of accidents for which claims may be brought hereunder (provided such accidents occur during the period of this Policy) except as provided by aggregate limits which, with respect to Item 5, Section I, when inserted therein apply to all accidents happening during each twelve months' term of the Policy.

4. All salvages, recoveries or payments recovered or received subsequent to a loss settlement under the Policy shall be applied as if recovered or received prior to such settlement and all necessary adjustments shall then be made between the Insured and the Company, provided always that nothing in this Policy shall be construed to mean that losses under this Policy are not recoverable until the Insured's ultimate net loss has been finally ascertained.

5. This Policy may be cancelled by the named Insured by surrender thereof to the Company or any of its authorized agents, or by mailing to the Company written notice stating when thereafter the cancellation shall be effective. This Policy may be cancelled by the Company by mailing to the named Insured at the address shown in this Policy written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of the surrender, or the effective date and hour of cancellation stated in the notice, shall become the end of the Policy Period. Delivery of such written notice either by the named Insured or by the Company shall be equivalent to mailing.

   If the named Insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

   In the event of the cancellation or termination of the primary insurance or a renewal thereof, this Policy, to the extent of such cancellation or termination, shall cease to apply at the same time without notice to the Insured.

PROVISIONS REQUIRED BY LAW TO BE STATED IN THIS POLICY:—"This Policy is issued under and in pursuance of the laws of the State of Minnesota, relating to Guaranty Surplus and Special Reserve Funds." Chapter 437, General Laws of 1909.

IN WITNESS WHEREOF, the ST. PAUL FIRE AND MARINE INSURANCE COMPANY, has caused this Policy to be signed by its President and Secretary at St. Paul, Minnesota, and countersigned on the Declarations page by a duly authorized representative of the Company.

*Secretary.*                                                    *President.*

AWC 0045657



**THE ST. PAUL**
COMPANIES

*Serving you around the world — around the clock*

ENDORSEMENT

*The following spaces preceded by an asterisk (\*) need not be completed if this endorsement and the policy have the same inception date.*

| ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 569XA5135 | 4-17-74 | A.W.Chesterton Company & Commercial Chemical Co. |

In consideration of an additional premium of $256.00 , it is understood and agreed that the policy period is amended to read :

1-18-72  to  7-1-74

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

*Agency Name and Address*

Brewer & Lord
40 Broad Street
Boston,Mass.  02109
200241 db

*In Witness Whereof,* the Company has caused this endorsement to be signed by a duly authorized representative of the Company.

*Brewer & Lord*
—————————————————
AUTHORIZED REPRESENTATIVE

14800-4 BEF REV. 8-84
PRINTED IN U.S.A.

AWC 0045658



**THE ST. PAUL**
COMPANIES

**ENDORSEMENT**

*The following spaces preceded by an asterisk (*) need not be completed if this endorsement and the policy have the same inception date.*

| ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 569XA5135 | 7/5/73 | A.W. Chesterton Company et al. |

It is agreed that the address of the Named Insured is amended

as follows:

> Fallon Road
> Middlesex Industrial Park
> Stoneham, Mass.

AUG 10 1973

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

*Agency Name and Address*

Brewer & Lord
40 Broad Street
Boston, Mass. 02109
200241

*In Witness Whereof,* the Company has caused this endorsement to be signed by its President at St. Paul, Minnesota and countersigned by a duly authorized representative of the Company.

Brewer & Lord

_____
AUTHORIZED REPRESENTATIVE

14600-4 BEF REV. 8-84
PRINTED IN U.S.A.

AWC 0045659

**THE ST. PAUL**
INSURANCE COMPANIES



*Serving you around the world...around the clock*

ENDORSEMENT

*The following spaces preceded by an asterisk (*) need not be completed if this endorsement and the policy have the same inception date.*

| ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 569XA5135 | 1-18-72 | |

IT IS HEREBY UNDERSTOOD AND AGREED THAT THE PREMIUM FOR THIS POLICY

IS PAYABLE AS FOLLOWS:

$304.00 PAYABLE ON 1-18-72
$1250.00 PAYABLE ON 4-17-72
$1250.00 PAYABLE ON 4-17-73

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

*Agency Name and Address*

*In Witness Whereof,* the Company has caused this endorsement to be signed by its President at St. Paul, Minnesota and countersigned by a duly authorized representative of the Company.

Carl B. Drake Jr.
*President.*

Brewer & Lord

**AUTHORIZED REPRESENTATIVE**

14600-4 BEF REV. 8-64
PRINTED IN U.S.A.

AWC 0045660



**THE ST. PAUL**
INSURANCE COMPANIES

ENDORSEMENT

*The following spaces preceded by an asterisk (\*) need not be completed if this endorsement and the policy have the same inception date.*

| ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 569XA5135 | 1-18-72 | A. W. CHESTERTON COMPANY & COMMERCIAL CHEMICAL CO., INC. |

IT IS UNDERSTOOD AND AGREED THAT ITEM #1, INSUREDS' NAME IS AMENDED TO READ AS FOLLOWS:

　　　　A. W. CHESTERTON COMPANY
　　　　COMMERCIAL CHEMICAL COMPANY, INC. & CHESCO., INC.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

*Agency Name and Address*

*In Witness Whereof,* the Company has caused this endorsement to be signed by its President at St. Paul, Minnesota and countersigned by a duly authorized representative of the Company.

BREWER & LORD
40 BROAD ST.
BOSTON, MA 02109

*President.*

AUTHORIZED REPRESENTATIVE

14600-4 BEF REV. 8-64
PRINTED IN U.S.A.

AWC 0045661

# BREWER & LORD
### FOUNDED 1859

*Insurance*

June 3, 1974

**TERMS: NET 30 DAYS**
**FROM ABOVE DATE**

Telephone
426-0830

560

40 BROAD STREET
BOSTON, MASS. 02109

A W CHESTERTON COMPANY
MIDDLESEX INDUSTRIAL
PARK - RTE 93
STONEHAM MASS          02180

CK504    26

EXPIRING POLICY
NO. 56XA5135

TERMS: NET 30 DAYS FROM ABOVE DATE.
RECEIPT OF CHECK ACKNOWLEDGED ONLY WHEN REQUESTED SINCE PAID CHECK CONSTITUTES FULL RECEIPT

| EFF. DATE | | | POLICY | COMPANY | KIND OF POLICY | PREMIUM |
|---|---|---|---|---|---|---|
| 04 | 17 | 74 | 56XA5135 | ST PAUL F & M | Excess Liability | 256.00 |
| EXPIRES | | | | | | |
| 7 | 1 | 74 | | | | |

Extension Endorsement

Please detach and return TOP portion of this bill to BREWER & LORD

AWC 0045662