## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

A.W. Chesterton Company., Inc.,    )
       Plaintiff,              )
                             )
v.                         )     Civil Docket Number:
                             )     04-CV-12501 GAO
St. Paul Fire & Marine Insurance Co.    )
       Defendant.          )
_____)

## CHESTERTON'S MOTION FOR LEAVE
## TO AMEND COMPLAINT AND TO REMAND

The Plaintiff, A.W. Chesterton Company, Inc. ("Chesterton") hereby respectfully seeks leave to amend its complaint. Because the proposed amendment destroys diversity jurisdiction, Chesterton also asks that this Court remand the above-captioned action to the Middlesex Superior Court. In support of this motion, the Plaintiff respectfully refers this Court to the Memorandum in Support of Chesterton's Motion for Leave to Amend Complaint and to Remand, and the proposed Second Amended Complaint attached hereto as Exhibit 1. In summary, Chesterton states as follows:

1.      Chesterton seeks leave to amend the complaint to add additional parties defendant, including the Massachusetts Insurers Insolvency Fund (the "MIIF").

2.      The MIIF is a statutorily created entity and a resident of the Commonwealth of Massachusetts. See Mass. Gen. Laws, ch. 175D, § 3.

3.      Once the MIIF is made a party defendant, complete diversity will not exist and this Court will lack subject matter jurisdiction under 28 U.S.C. § 1441(b).

4.      Amendment is appropriate under Fed. R. Civ. P. 15(a) and also under Rule 20(a), because common questions of law and overlapping questions of fact will arise as to all four

defendants.

5.     This Court should exercise its discretion to allow amendment under 28 U.S.C.

§ 1447(e) because (1) the motion is made promptly and without delay, (2) there is no prejudice to

the defendant or to the MIIF, (3) denial of leave to amend would force multiple lawsuits in

different forums, with the possibility of inconsistent results, (4) the case involves exclusively

state-law issues, and (5) Chesterton is motivated not by a desire to defeat diversity but to

promote judicial economy and prevent duplicative litigation, and intended to seek leave to amend

before the Defendant St. Paul removed this case.  See Siedlik v. Stanley Works, Inc., 205 F.

Supp. 2d 762, 765 (E.D. Mich. 2002); Irizarry v. Marine Powers Int'l, 153 F.R.D. 12, 14-16

(D.P.R. 1994); Morze v. Southland Corp., 816 F. Supp. 369, 371 (E.D. Pa. 1993); Carter v.

Dover Corp., Rotary Lift Div., 753 F. Supp. 577, 579-580 (E.D. Pa. 1991); Wilson v. Famatex

GmbH Fabrik Fuer Textilausruestungsmaschinen, 726 F. Supp. 950, 951-952 (S.D.N.Y. 1989)

(Lasker, J.).

6.     If this Court allows the amendment, 28 U.S.C. § 1447(e) requires remand.  See

Casas Office Machs., Inc. v. Mita Copystar America, Inc., 42 F.3d 668, 6754 (1st Cir. 1994);

Sweeney v. Westvaco Co., 926 F.2d 29, 42 (1st Cir.), cert. denied, 502 U.S. 899 (1991) (Breyer,

J.).

Respectfully submitted,

A.W. CHESTERTON COMPANY, INC.
by its attorneys,


/s/ Martin F. Gaynor III
Harry L. Manion III, BBO No. 317440
Martin F. Gaynor III, BBO No. 564384
Kathryn R. Colburn, BBO No. 653244
Nicholas D. Stellakis, BBO No. 644981
COOLEY MANION JONES LLP
21 Custom House Street
Boston, MA  02110
(617) 737-3100
Email: mgaynor@cmj-law.com

Dated: January 27, 2005

134490v3

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____

| | |
|---|---|
| A.W. Chesterton Company, Inc., | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )     Civil Docket Number: |
| | )     04-CV-12501 GAO |
| St. Paul Fire & Marine Insurance Co., | ) |
| Fireman's Fund Insurance Co., | ) |
| Atlanta International Insurance Co. formerly | ) |
| Drake Insurance Co. of New York, | ) |
| Massachusetts Insurers Insolvency Fund, | ) |
|     Defendants. | ) |

_____)

**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

**PARTIES**

1.      Plaintiff, A.W. Chesterton Company, Inc. ("Chesterton") is a

Massachusetts corporation with its principal place of business in Stoneham, Middlesex

County, Massachusetts.

2.      Defendant St. Paul Fire & Marine Insurance Company ("St. Paul"), is a

Minnesota corporation with its principal place of business at 385 Washington Street,

Saint Paul, Minnesota 55102.  St. Paul is, and/or at all relevant times mentioned herein

was, engaged in the business of writing liability insurance policies in Massachusetts and

elsewhere.

3.      Defendant Fireman's Fund Insurance Company ("Fireman's"), is a

California corporation with its principal place of business at 777 San Marin Drive,

Novato, CA 94998.  Fireman's is, and/or at all relevant times mentioned herein was,

engaged in the business of writing liability insurance policies in Massachusetts and

elsewhere.

1

4.      Defendant Atlanta International Insurance Company (formerly known as Drake Insurance Company of New York) ("Atlanta"), is a New York corporation with its principal place of business at 7230 McGinnis Ferry Rd. Suite 300, Suwanee, GA, 30324. Atlanta is and/or at all relevant times mentioned herein was, engaged in the business of writing liability insurance policies in Massachusetts and elsewhere.

5.      Defendant Massachusetts Insurers Insolvency Fund (the "MIIF") is a statutorily mandated, nonprofit, unincorporated legal entity established pursuant to the provisions of Massachusetts General Laws c. 175D, § 3, as enacted by c. 261 of the Acts of 1970.  The MIIF consists of all insurers, as defined by G. L. c. 175D, § 1(5), and was established for the purpose of paying certain claims asserted against insolvent insurers. The MIIF is obligated to pay certain claims of the now-insolvent Midland Insurance Company ("Midland"), and is thus the successor to Midland's duties to defend and indemnify Chesterton pursuant to several policies that Midland issued to Chesterton.

### JURISDICTION AND VENUE

6.      Jurisdiction in Massachusetts Superior Court is proper under Mass. G. L. c. 223A with respect to each defendant.  The MIIF is a Massachusetts-based legal entity. St. Paul, Fireman's, and Atlanta, within the time period relevant to the cause of action stated herein, have transacted business within Massachusetts, including contracting to supply services in Massachusetts, contracting to insure persons, property, or risks located within Massachusetts, and engaging in the business of writing or delivering liability insurance policies in Massachusetts.  Moreover, the cause of action stated herein arises from the Defendants' contracting to supply services in Massachusetts and contracting to insure risks located within Massachusetts at the time of contracting.

2

7.     Venue in Middlesex County Superior Court is proper because Chesterton has its principal place of business in Middlesex County.

## FACTS COMMON TO ALL COUNTS

8.     Chesterton is a family-owned private company that manufactures and distributes fluid-sealing devices, such as packing and mechanical seals, pumps, and technical products.

9.     Some products that Chesterton previously manufactured and distributed for many decades contained encapsulated asbestos.  Although Chesterton's products were and continue to be safe under EPA and OSHA standards, more than 400,000 asbestos-related bodily injury claims have been asserted against Chesterton since 1980 (the "Underlying Claims").

10.     During the period 1968 through 1986, Chesterton was insured by means of primary comprehensive general-liability policies and several layers of excess-insurance policies that provided coverage for asbestos-related liabilities.

11.     After the initial claims were filed against Chesterton in January, 1980, Liberty Mutual Insurance Company ("Liberty Mutual"), which had issued a number of primary-layer comprehensive general-liability policies to Chesterton, took the lead in providing defense and indemnification of Chesterton's asbestos-related claims.  On or about March 31, 1993, after Liberty Mutual had paid substantial amounts in indemnity and defense costs, Chesterton and Liberty Mutual entered into a settlement agreement pursuant to which Chesterton settled its claims for asbestos coverage against Liberty Mutual.  Thereafter, Chesterton negotiated settlements with its other primary carriers,

Hartford Insurance Company ("Hartford") and Commercial Union Insurance Company ("Commercial Union").

12.    Chesterton established the A.W. Chesterton Asbestos-Related Claims Trust (the "ARC Trust") with the money received from the settlement with Liberty Mutual to defend and resolve asbestos-related claims made against Chesterton. All proceeds of the settlements that Chesterton reached with Liberty Mutual, Hartford, and Commercial Union were placed into the ARC Trust. Since April, 1993, all defense costs and indemnification payments related to the Underlying Claims have been paid by the ARC Trust.

13.    In 1996, Chesterton filed a declaratory judgment action in Middlesex Superior Court (Civil Action No. 96-4871) against its first layer excess carriers, American Home Assurance Company, United States Fire Insurance Company, The Continental Insurance Company, Northbrook Insurance Company, certain London Market Companies, First State Insurance Company, Stonewall Insurance Company, and the Massachusetts Insurers Insolvency Fund ("MIIF"), seeking a determination of the scope of the defendants' obligations to Chesterton under their policies and damages for the defendants' failure to perform their contractual obligations pursuant to the policies.

14.    A trial was held in June, 2002 (the "Phase I Trial") to decide several issues including whether Chesterton had exhausted all primary comprehensive general-liability insurance available to it that covered asbestos-related claims. The Superior Court issued a memorandum of decision following that trial, in which the Court decided that Chesterton had in fact exhausted all primary coverage that was required to be exhausted. The Court then scheduled a second trial (the "Phase II Trial") to resolve various issues

raised by the remaining defendants and to determine the amounts owed to Chesterton by those defendants. The Court considered most of the issues raised by the defendants through a series of summary judgment motions. The Court issued decisions on the motions for summary judgment on May 20, 2003. The Court then scheduled the Phase II Trial for June 16, 2003 to resolve all outstanding issues of fact.

15.     Prior to the Phase II Trial, Chesterton settled with all of the defendants other than the MIIF. The Phase II Trial was then held in June, 2003 between Chesterton and the MIIF, and the Court issued its final judgment in September, 2003.

16.     In its final judgment, the Court declared that Chesterton had exhausted all coverage provided by its primary policies that applied to asbestos-related claims. Specifically, Judge McLaughlin, sitting by special assignment, held, "[a]ll valid and collectible primary comprehensive general liability policies, the limits of which were required to have been exhausted prior to any obligation of the defendant excess insurance carriers to indemnify or defend, have been, in fact, exhausted."

17.     Judge McLaughlin also held "[t]hat the [MIIF] is obligated to defend Chesterton as to claims or actions that assert of [sic] adumbrate a claim that the inured [sic] party inhaled asbestos before or during a policy period of any of the valid Midland policies and there had been no diagnosis, death, or claim made prior to the commencement date of said policies." The Court conditioned the MIIF's duty to defend by also stating that "the [MIIF] has no duty to defend actions against A.W. Chesterton unless Chesterton establishes that there is no policy from a solvent carrier which provides a duty to defend coverage that has not been exhausted. Chesterton does not have to

establish that all or any 'ultimate net loss' coverages have been exhausted as a precondition for the [MIIF] to have a duty to defend."

18.     As set forth in more detail below, St. Paul, Fireman's, and Atlanta issued second-layer excess policies to Chesterton.  Chesterton has exhausted all primary and first-layer excess coverage required to be exhausted before the obligations of these Defendants' policies arise.  In addition, no other insurer has a duty to defend Chesterton, and therefore the MIIF must assume its defense obligations.

## <u>COUNT I</u>
### (Breach of Contract – St. Paul)

19.     Chesterton restates the allegations contained in paragraphs 1 through 18.

20.     St. Paul, in consideration for premiums duly paid by Chesterton, issued a second-layer excess policy to Chesterton, bearing policy number 569XA5135 (attached as Exhibit A) (the "St. Paul Policy"), with a policy period of January 18, 1972 to July 1, 1974.

21.     The St. Paul policy obligates St. Paul to pay Chesterton's "loss," defined as "the sums paid in settlements of losses for which the Insured is liable . . ." in excess of the exhausted primary and first-layer excess policies that underlie the St. Paul policy.

22.     The St. Paul policy also obligates St. Paul to pay a proportionate share of costs and expenses associated with the Underlying Claims against Chesterton.

23.     In nearly every Underlying Claim, the claimant alleges to have suffered asbestos-related injury during the time period in which the St. Paul policy was in effect, thereby triggering the St. Paul policy.

24.     Chesterton has exhausted all primary and first-layer excess policies required to be exhausted before the obligations of the St. Paul policy arise.

25.    At least as early as August, 1987, Chesterton put St. Paul on notice that it was being named as a defendant in a large number of lawsuits for asbestos-related personal injuries.  Thereafter, Chesterton periodically updated St. Paul on the amount Chesterton was spending defending and settling Underlying Claims.  Chesterton has responded to numerous specific requests for information by St. Paul related to Chesterton's settlement payments, allocation methods, and exhaustion of primary and first-layer excess policies.

26.    Despite St. Paul's knowledge that it is obligated now to fulfill its insurance obligations to Chesterton, St. Paul has refused to do so.

27.    Chesterton has satisfied all conditions precedent to St. Paul's coverage obligations.

28.    St. Paul has breached the terms of its policy by refusing to assume its indemnification and expense obligations with respect to asbestos-related claims against Chesterton.

29.    As a result of St. Paul's breach of contract, Chesterton has suffered damages and will suffer additional damages until St. Paul assumes its indemnification and expense obligations.

30.    St. Paul has breached the covenant of good faith and fair dealing implied in its policy by refusing to assume its indemnification and expense obligations.

WHEREFORE, Chesterton requests that the Court enter judgment in its favor:

a.    awarding Chesterton damages in an amount to be determined at trial together with interest, costs, and attorneys' fees; and

b.    granting Chesterton such other relief as may be appropriate.

<u>**COUNT II**</u>
**(Declaratory Judgment – St. Paul)**

31.     Chesterton restates the allegations contained in paragraphs 1 through 30.

32.     An actual controversy exists between Chesterton and St. Paul regarding (1) whether Chesterton's first-layer excess insurance has been exhausted, (2) whether St. Paul is liable in full to Chesterton, up to its limits of liability, for all loss arising from all claims for which St. Paul was on the risk at any point in time from the claimant's first exposure through diagnosis, death, or date of claim, (3) whether each Underlying Claim is a separate accident or occurrence, (4) whether the $5 million aggregate limit of liability applies separately to each annual period during the St. Paul Policy period, (5) whether the limit of liability applicable to so-called "stub" periods of less than twelve months is $5 million, and (6) whether St. Paul has a duty to pay Chesterton a proportionate share of the costs and expenses of defense in addition to the limits of liability.

33.     Declaratory relief will resolve the controversy between Chesterton and St. Paul.

WHEREFORE, Chesterton requests that the Court enter judgment declaring and adjudicating Chesterton's rights under the St. Paul policy, including but not necessarily limited to, a specific declaration that:

    a.    all coverage underlying the St. Paul policy that is required to be exhausted has been properly exhausted;

    b.    St. Paul is liable in full to Chesterton, up to its limits of liability, for all loss arising from all claims for which St. Paul was on the risk at any point in time from the claimant's first exposure through diagnosis, death, or date of claim;

    c.    each Underlying Claim is a separate accident or occurrence under the St. Paul policy;

     d.     each annual period and each "stub" period of less than twelve months during the policy period of the St. Paul Policy carries a separate $5 million aggregate limit of liability so that the limits of liability available under the St. Paul Policy for payment of "loss" total $20 million; and

     e.     St. Paul has a duty to pay its proportionate share of the costs and expenses for the defense of Chesterton in the Underlying Claims, and that all such payments are in addition to the limits of liability.

## COUNT III
### (Declaratory Judgment – Fireman's)

34.     Chesterton restates the allegations contained in paragraphs 1 through 33.

35.     Fireman's, in consideration for premiums duly paid by Chesterton, issued a second-layer excess policy to Chesterton, bearing policy number XLX-120 45 23, with an effective period of August 15, 1974 to January 1, 1977 (attached as Exhibit B) (the "Fireman's Policy").

36.     The Fireman's Policy obligates Fireman's to pay Chesterton's "ultimate net loss," defined as "all sums actually paid, or which the Insured is legally obligated to pay, as damages in settlement or satisfaction of claims or suits for which insurance is afforded by this policy . . ." in excess of the exhausted primary and first-layer excess policies that underlie the Fireman's Policy.

37.     The Fireman's Policy also obligates Fireman's to pay a proportionate share of costs and expenses associated with the Underlying Claims against Chesterton.

38.     In nearly every Underlying Claim, the claimant alleges to have suffered asbestos-related injury during the time period in which the Fireman's Policy was in effect, thereby triggering the Fireman's Policy.

39.     Chesterton has exhausted all primary and first-layer excess policies required to be exhausted before the obligations of the Fireman's Policy arise.

40.     At least as early as August, 1987, Chesterton put Fireman's on notice that it was being named as a defendant in a large number of lawsuits for asbestos-related personal injuries.  Thereafter, Chesterton periodically updated Fireman's on the amount Chesterton was spending defending and settling Underlying Claims.  Chesterton has responded to numerous specific requests for information by Fireman's related to Chesterton's settlement payments, allocation methods, and exhaustion of primary and first-layer excess policies.

41.     Chesterton has satisfied all conditions precedent to Fireman's coverage obligations.

42.     An actual controversy exists between Chesterton and Fireman's regarding (1) whether Chesterton's first-layer excess insurance has been exhausted, (2) whether Fireman's is liable in full to Chesterton, up to its limits of liability, for all ultimate net loss arising from all claims for which Fireman's was on the risk at any point in time from the claimant's first exposure through diagnosis, death, or date of claim, (3) whether each Underlying Claim is a separate accident or occurrence, (4) whether the $5 million aggregate limit of liability applies separately to each annual period during the Fireman's Policy period, (5) whether the limit of liability applicable to the so-called "stub" period of less than twelve months is $5 million, and (6) whether Fireman's has a duty to pay Chesterton a proportionate share of the costs and expenses of defense in addition to the limits of liability.

43.     Declaratory relief will resolve the controversy between Chesterton and Fireman's.

WHEREFORE, Chesterton requests that the Court enter judgment declaring and adjudicating Chesterton's rights under the Fireman's Policy, including but not necessarily limited to, a specific declaration that:

a.     all coverage underlying the Fireman's Policy that is required to be exhausted has been properly exhausted;

b.     Fireman's is liable in full to Chesterton, up to its limits of liability, for all ultimate net loss arising from all claims for which Fireman's was on the risk at any point in time from the claimant's first exposure through diagnosis, death, or date of claim;

c.     each Underlying Claim is a separate accident or occurrence under the Fireman's policy;

d.     each annual period and the "stub" period of less than twelve months during the policy period of the Fireman's Policy carries a separate $5 million aggregate limit of liability so that the limits of liability available under the Fireman's Policy for payment of ultimate net loss total $15 million; and

e.     Fireman's has a duty to pay its proportionate share of the costs and expenses for the defense of Chesterton in the Underlying Claims, and that all such payments are in addition to the limits of liability.

## COUNT IV
### (Declaratory Judgment – Atlanta)

44.     Chesterton restates the allegations contained in paragraphs 1 through 43.

45.     Atlanta, then known as Drake Insurance Company of New York, in consideration for premiums duly paid by Chesterton, issued a second-layer excess policy to Chesterton, bearing policy number XL-01483, with an effective period of January 1, 1977 to January 1, 1978 (attached as Exhibit C) (the "Atlanta Policy").

46.     The Atlanta Policy obligates Atlanta to pay Chesterton's "ultimate net loss," defined as "the sums paid in settlement of losses for which the Insured is

liable . . ." in excess of the exhausted primary and first-layer excess policies that underlie the Atlanta policy.

47.     The Atlanta Policy also obligates Atlanta to pay a proportionate share of costs and expenses associated with the Underlying Claims against Chesterton.

48.     In nearly every Underlying Claim, the claimant alleges to have suffered asbestos-related injury during the time period in which the Atlanta Policy was in effect, thereby triggering the Atlanta Policy.

49.     Chesterton has exhausted all primary and first-layer excess policies required to be exhausted before the obligations of the Atlanta Policy arise.

50.     At least as early as August, 1987, Chesterton put Atlanta on notice that it was being named as a defendant in a large number of lawsuits for asbestos-related personal injuries.  Thereafter, Chesterton periodically updated Atlanta on the amount Chesterton was spending defending and settling Underlying Claims.  Chesterton has responded to numerous specific requests for information by Atlanta related to Chesterton's settlement payments, allocation methods, and exhaustion of primary and first-layer excess policies.

51.     Chesterton has satisfied all conditions precedent to Atlanta's coverage obligations.

52.     An actual controversy exists between Chesterton and Atlanta regarding (1) whether Chesterton's first-layer excess insurance has been exhausted, (2) whether Atlanta is liable in full to Chesterton, up to its limits of liability, for all ultimate net loss arising from all claims for which Atlanta was on the risk at any point in time from the claimant's first exposure through diagnosis, death, or date of claim, (3) whether each Underlying

Claim is a separate accident or occurrence, and (4) whether Atlanta has a duty to pay a proportionate share of the costs and expenses of defense in addition to its limits of liability.

53.     Declaratory relief will resolve the controversy between Chesterton and Atlanta.

WHEREFORE, Chesterton requests that the Court enter judgment declaring and adjudicating Chesterton's rights under the Atlanta Policy, including but not necessarily limited to, a specific declaration that:

   a.   all first-layer excess coverage underlying the Atlanta Policy has been properly exhausted;

   b.   Atlanta is liable in full to Chesterton, up to its limits of liability, for all ultimate net loss arising from all claims for which Atlanta was on the risk at any point in time from the claimant's first exposure through diagnosis, death, or date of claim;

   c.   each Underlying Claim is a separate accident or occurrence under the Atlanta Policy;

   d.   Atlanta has a duty to pay its proportionate share of the cost and expense of defending the Underlying Claims, and that such payments are in addition to the limits of liability.

### COUNT V
### (Declaratory Judgment – the MIIF)

54.     Chesterton restates the allegations contained in paragraphs 1 through 53.

55.     The MIIF is successor to the indemnity and defense obligations of Midland Insurance Company under policies numbered UL 703764, UL 715793, UL 716482, and UL 737094 (all attached as Exhibit D) (collectively, the "Midland Policies").

56.     Pursuant to the final judgment of the Massachusetts Superior Court in the 1996 suit, the MIIF is required to defend Underlying Claims once Chesterton establishes that there is no policy from a solvent carrier that provides unexhausted duty-to-defend coverage.

57.     There is now no solvent carrier with unexhausted duty-to-defend obligations.

58.     The MIIF's obligations under the Midland Policies and under the judgment of the Superior Court have been triggered, and it is now required to defend Chesterton against Underlying Claims.

59.     In nearly every Underlying Claim, the claimant alleges to have suffered asbestos-related injury during the time period in which the Midland policies were in effect, thereby triggering the MIIF's obligations.

60.     Chesterton has exhausted all duty-to-defend coverage required to be exhausted before the MIIF's obligations arise.

61.     Chesterton has satisfied all conditions precedent to the MIIF's duty-to-defend obligations.

62.     Pursuant to G. L. c. 175D, the MIIF is required to fulfill the obligations of the Midland Policies.

63.     An actual controversy exists between Chesterton and the MIIF regarding (1) whether there is a policy from a solvent carrier that provides duty-to-defend coverage that has not been exhausted and (2) whether the MIIF is now required to assume its duty-to-defend obligations.

64.    Declaratory relief will resolve this controversy between Chesterton and the MIIF.

WHEREFORE, Chesterton requests that the Court enter judgment declaring and adjudicating Chesterton's rights under the Midland policies and the Superior Court judgment, including but not necessarily limited to, a specific declaration that:

a.    there is now no policy from a solvent carrier that provides duty-to-defend coverage that has not been exhausted;

b.    the MIIF is required to assume its duty-to-defend obligations, in accordance with the judgment of the Superior Court.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Chesterton demands a trial by jury on all issues so triable.

A.W. CHESTERTON COMPANY, INC.
by its attorneys,


/s/ Martin F. Gaynor
Harry L. Manion III, BBO No. 317440
Martin F. Gaynor III, BBO No. 564384
Kathryn R. Colburn, BBO No. 653244
Nicholas D. Stellakis, BBO No. 644981
COOLEY MANION JONES LLP
21 Custom House Street
Boston, MA  02110
(617) 737-3100
Email: mgaynor@cmj-law.com


136782v1

### EXCESS THIRD PARTY LIABILITY POLICY

**No. 569XA5135**

**NEW**
FORMER POLICY NO.

A CAPITAL STOCK COMPANY
**ST. PAUL FIRE AND MARINE INSURANCE COMPANY**
ST. PAUL, MINNESOTA

**THE ST. PAUL**
INSURANCE COMPANIES



Serving you around the world...around the clock

---

**ITEM 1. Insured's Name and Mailing Address**

A. W. CHESTERTON COMPANY &
COMMERCIAL CHEMICAL COMPANY, INC.
ASHLAND STREET
EVERETT, MASSACHUSETTS

BREWER & LORD
INSURANCE
40 BROAD STREET, BOSTON, MASS.

---

| ITEM 2. POLICY PERIOD:* | | ITEM 3. LOCATION OF COVERAGE: | |
|---|---|---|---|
| FROM | TO | EVERETT, MASSACHUSETTS | and as further defined in the Primary Policy. |
| 1-18-72 | 4-17-74 | | |

*12:01 A.M., Standard time at the address of the Insured as stated herein.

**ITEM 4. PRIMARY INSURANCE:**

| INSURER'S NAME | POLICY NO'S. (Including Renewals or Replacements) | DESCRIPTION OF COVERAGE |
|---|---|---|
| UNITED STATES FIRE INS. CO. | DCL 92 10 75 | UMBRELLA EXCESS |

**ITEM 5. LIMITS OF LIABILITY:** The limit of the Company's liability shall be as stated herein, subject to all the terms of this Policy having reference thereto.

| SECTION I | IN EXCESS OF SECTION II | SECTION III | COVERAGE |
|---|---|---|---|
| COMPANY LIMITS | UNDERLYING LIMITS | TOTAL LIMITS | |
| $        Each Person | $ | $ | A. Bodily Injury Automobile |
| $        Each Accident or Occurrence | $ | $ | |
| $        Each Person | $ | $ | B. Bodily Injury Except Automobile |
| $        Each Accident or Occurrence | $ | $ | |
| $        Aggregate Products | $ | $ | |
| $        Each Accident or Occurrence | $ | $ | C. Property Damage Auto |
| $        Each Accident or Occurrence | $ | $ | D. Property Damage Except Automobile |
| $        Aggregate Operations | $ | $ | |
| $        Aggregate Protective | $ | $ | |
| $        Aggregate Products | $ | $ | |
| $        Aggregate Contractual | $ | $ | |
| $        Each Accident or Occurrence | $ | $ | E. Combined Single Limit Bodily Injury and/or Property Damage |
| $        Aggregate | $ | $ | |
| $5,000,000. each occurrence | $5,000,000. | $10,000,000. | F. Other |
| $5,000,000.00 Aggregate Products | $5,000,000. | $10,000,000. | UMBRELLA EXCESS |

| ITEM 6. PREMIUM COMPUTATION | | | | | | |
|---|---|---|---|---|---|---|
| PREMIUM BASIS | ESTIMATED EXPOSURE | RATE | ESTIMATED PREM. | DEPOSIT PREM. | MINIMUM PREM. | AUDIT PERIOD |
| FLAT CHARGE | | FLAT | 1250.PER YR. | $ 304.00 $1250.00 | INSTALLMENT | |

*Brewer & Lord*
AUTHORIZED REPRESENTATIVE

AWC 0045655

1-18-72
COUNTERSIGNATURE DATE

BOSTON, MASS.
COUNTERSIGNED AT

14184ELP 2M 8-68 W Rev. 7-63

## INSURING AGREEMENT

In consideration of the payment of premium stated in the Declarations, the ST. PAUL FIRE AND MARINE INSURANCE COMPANY, herein called the Company, agrees to indemnify the Insured, in accordance with the applicable insuring agreements of the Primary Insurance, against loss subject to the limits stated in Item 5, Section I of the Declarations and as fully and to all intents and purposes as though the Primary Insurance had been issued for the limits set forth in Item 5, Section III of the Declarations. This Policy shall apply only to coverages for which an amount is indicated in Item 5, Section I, and then only in excess of the corresponding amount as indicated in Item 5, Section II of the Declarations.

## DEFINITIONS

1. **Loss.** The word "loss" shall be understood to mean the sums paid in settlements of losses for which the Insured is liable after making deductions for all other recoveries, salvages and other insurances (other than recoveries under the policy/ies of the Primary Insurer), whether recoverable or not, and shall exclude all expense and costs.

2. **Costs.** The word "costs" shall be understood to mean interest on judgments, investigations, adjustment and legal expenses (excluding, however, all expense for salaried employees and retained counsel of and all office expense of the Insured).

3. **Primary Insurance.** The term "primary insurance" shall be understood to mean the policy (policies) described in Item 4.

## NUCLEAR ENERGY LIABILITY EXCLUSION

It is agreed that the insurance afforded under any liability coverage of this Policy or of any endorsement used herewith does not apply:

1. Under any Liability Coverage, to injury, sickness, disease, death or destruction
   (a) with respect to which an Insured under the Policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or
   (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the Insured is, or had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2. Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

3. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if
   (a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an Insured or (2) has been discharged or dispersed therefrom;
   (b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or
   (c) the injury, sickness, disease, death or destruction arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

4. As used in this endorsement:
   "hazardous properties" include radioactive, toxic or explosive properties;
   "nuclear material" means source material, special nuclear material or byproduct material;
   "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;
   "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;
   "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;
   "nuclear facility" means
   (a) any nuclear reactor,
   (b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,
   (c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,
   (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,
   and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;
   "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;
   With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

### THIS SPACE FOR THE ATTACHMENT OF ENDORSEMENTS, IF ANY

AWC 0045656

## CONDITIONS

1.  It is agreed that this Policy, except as herein stated, is subject to all conditions, agreements and limitations of and shall follow the Primary Insurance in all respects, including changes by endorsement and the Insured shall furnish the Company with copies of such changes. It is further agreed should any alteration be made in the premium for the policy/ies of the Primary Insurers during the period of this Policy, then the premium hereon other than the Minimum Premium shall be adjusted accordingly.

2.  Notice of any accident, which appears likely to involve this Policy, shall be given to the Company, which at its own option, may, but is not required to, participate in the investigation, settlement or defense of any claim or suit. In the event expense and/or costs in connection with any claim or suit is incurred jointly by mutual consent of the Company and of the Insured or Primary Insurer, the Company, in addition to its limits of liability as expressed in Item 5, Section I of the Declarations, shall be liable for no greater proportion of such expense and/or costs than the amount payable by the Company under this Policy bears to the total loss payment.

3.  With respect to each coverage in Item 5, Section I of the Declarations, the Bodily Injury limit applicable to each accident is subject to the limit specified as applicable to each person. There is no limit to the number of accidents for which claims may be brought hereunder (provided such accidents occur during the period of this Policy) except as provided by aggregate limits which, with respect to Item 5, Section I, when inserted therein apply to all accidents happening during each twelve months' term of the Policy.

4.  All salvages, recoveries or payments recovered or received subsequent to a loss settlement under the Policy shall be applied as if recovered or received prior to such settlement and all necessary adjustments shall then be made between the Insured and the Company, provided always that nothing in this Policy shall be construed to mean that losses under this Policy are not recoverable until the Insured's ultimate net loss has been finally ascertained.

5.  This Policy may be cancelled by the named Insured by surrender thereof to the Company or any of its authorized agents, or by mailing to the Company written notice stating when thereafter the cancellation shall be effective. This Policy may be cancelled by the Company by mailing to the named Insured at the address shown in this Policy written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of the surrender, or the effective date and hour of cancellation stated in the notice, shall become the end of the Policy Period. Delivery of such written notice either by the named Insured or by the Company shall be equivalent to mailing.

    If the named Insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

    In the event of the cancellation or termination of the primary insurance or a renewal thereof, this Policy, to the extent of such cancellation or termination, shall cease to apply at the same time without notice to the Insured.

    PROVISIONS REQUIRED BY LAW TO BE STATED IN THIS POLICY:—"This Policy is issued under and in pursuance of the laws of the State of Minnesota, relating to Guaranty Surplus and Special Reserve Funds." Chapter 437, General Laws of 1909.

    IN WITNESS WHEREOF, the ST. PAUL FIRE AND MARINE INSURANCE COMPANY, has caused this Policy to be signed by its President and Secretary at St. Paul, Minnesota, and countersigned on the Declarations page by a duly authorized representative of the Company.

*Secretary.*                                                    *President.*

AWC 0045657



**THE ST. PAUL**
COMPANIES

**ENDORSEMENT**

*The following spaces preceded by an asterisk (\*) need not be completed if this endorsement and the policy have the same inception date.*

| ATTACHED TO AND FORMING PART OF POLICY NO. | \*EFFECTIVE DATE OF ENDORSEMENT | \*ISSUED TO |
|---|---|---|
| 569XA5135 | 4-17-74 | A.W.Chesterton Company & Commercial Chemical Co. |

In consideration of an additional premium of $256.00 , it is understood and agreed that the policy period is amended to read :
1-18-72  to 7-1-74

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

*Agency Name and Address*

- Brewer & Lord
  40 Broad Street
  Boston,Mass.  02109
  200241 db

*In Witness Whereof,* the Company has caused this endorsement to be signed by a duly authorized representative of the Company.

*Brewer & Lord*

**AUTHORIZED REPRESENTATIVE**

14600-4 BEF REV. 8-64
PRINTED IN U.S.A.

AWC 0045658



**THE ST. PAUL**
COMPANIES

*Serving you around the world...around the clock*

**ENDORSEMENT**

*The following spaces preceded by an asterisk (*) need not be completed if this endorsement and the policy have the same inception date.*

| ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 569XA5135 | 7/5/73 | A.W. Chesterton Company et al. |

It is agreed that the address of the Named Insured is amended

as follows:

> Fallon Road
> Middlesex Industrial Park
> Stoneham, Mass.

AUG 10 1973

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

*Agency Name and Address*

Brewer & Lord
40 Broad Street
Boston, Mass. 02109
200241

*In Witness Whereof,* the Company has caused this endorsement to be signed by its President at St. Paul, Minnesota and countersigned by a duly authorized representative of the Company.

*Brewer & Lord*
_____
AUTHORIZED REPRESENTATIVE

14600-4 BEF REV. 8-64
PRINTED IN U.S.A.

AWC 0045659



**THE ST. PAUL**
INSURANCE COMPANIES

*Turning you around the world...around the globe*

**ENDORSEMENT**

*The following spaces preceded by an asterisk (*) need not be completed if this endorsement and the policy have the same inception date.*

| ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 569XA5135 | 1-18-72 | |

IT IS HEREBY UNDERSTOOD AND AGREED THAT THE PREMIUM FOR THIS POLICY

IS PAYABLE AS FOLLOWS:

$304.00  PAYABLE ON 1-18-72
$1250.00 PAYABLE ON 4-17-72
$1250.00 PAYABLE ON 4-17-73

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

*Agency Name and Address*

*In Witness Whereof,* the Company has caused this endorsement to be signed by its President at St. Paul, Minnesota and countersigned by a duly authorized representative of the Company.

Carl B. Drake
*President.*

Brewer & Lord

**AUTHORIZED REPRESENTATIVE**

14600-4 BEF REV. 8-64
PRINTED IN U.S.A.

AWC 0045660



**THE ST. PAUL**
INSURANCE COMPANIES
*Serving you around the world... around the clock*

ENDORSEMENT

*The following spaces preceded by an asterisk (*) need not be completed if this endorsement and the policy have the same inception date.*

| ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 569XA5135 | 1-18-72 | A. W. CHESTERTON COMPANY & COMMERCIAL CHEMICAL CO., INC. |

IT IS UNDERSTOOD AND AGREED THAT ITEM #1, INSUREDS' NAME IS AMENDED TO READ AS FOLLOWS:

A. W. CHESTERTON COMPANY
COMMERCIAL CHEMICAL COMPANY, INC. & CHESCO., INC.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

*Agency Name and Address*

*In Witness Whereof,* the Company has caused this endorsement to be signed by its President at St. Paul, Minnesota and countersigned by a duly authorized representative of the Company.

BREWER & LORD
40 BROAD ST.
BOSTON, MA 02109

*President.*

AUTHORIZED REPRESENTATIVE

14600-4 BEF REV. 8-64
PRINTED IN U.S.A.

AWC 0045661

# BREWER & LORD
### FOUNDED 1859

June 3, 1974

**TERMS: NET 30 DAYS**
**FROM ABOVE DATE**

Telephone
426-0830

560

*Insurance*
40 BROAD STREET
BOSTON, MASS. 02109

A W CHESTERTON COMPANY
MIDDLESEX INDUSTRIAL
PARK — RTE 93
STONEHAM MASS          02180

CH504    26

EXPIRING PELICY
NC. 56XA5135

**TERMS: NET 30 DAYS FROM ABOVE DATE.**
RECEIPT OF CHECK ACKNOWLEDGED ONLY WHEN REQUESTED SINCE PAID CHECK CONSTITUTES FULL RECEIPT

| EFF. DATE | POLICY | COMPANY | KIND OF POLICY | PREMIUM |
|---|---|---|---|---|
| 04 17 74 | 56XA5135 | ST PAUL F & M | Excess Liability | 256.00 |
| **EXPIRES** 7 1 74 | | | | |

Extension Endorsement

Please detach and return TOP portion of this bill to BREWER & LORD

AWC 0045662

| PRODUCER'S CODE | NAME AND LOCATION | PREVIOUS POLICY NUMBER | POLICY NUMBER |
|---|---|---|---|
| 20-211-401 | Brewer & Lord<br>Boston, Massachusetts | New | XLX- 120 45 23 |

## BLANKET EXCESS LIABILITY POLICY
### (FOLLOWING FORM)

**01 FIREMAN'S FUND** INSURANCE COMPANY

FIREMAN'S FUND AMERICAN INSURANCE COMPANIES
HOME OFFICE
SAN FRANCISCO
CALIFORNIA

**BREWER & LORD**
INSURANCE
40 BROAD STREET. BOSTON 02109
426-0830

**18** Coverage is provided in the Company designated by number, a stock insurance Company (herein called the Company)

## DECLARATIONS

ITEM 1. INSURED'S NAME AND ADDRESS (NO., STREET, TOWN, COUNTY, STATE)

A. W. Chesterton Company, Commercial
Chemical Company, Inc., Chesco, Inc.
Middlesex Industrial Park
Route 93
Stoneham, Massachusetts

POLICY PERIOD:

| ITEM 2. | 08-15-74 | 01-01-77 |
|---|---|---|
| | INCEPTION (MO. DAY YR.) | EXPIRATION (MO. DAY YR.) |

12:01 A.M., STANDARD TIME AT THE ADDRESS OF THE NAMED INSURED AS STATED HEREIN.

**ITEM 3.**
LIMIT OF LIABILITY:
$ 5,000,000. . EACH OCCURRENCE
$ 5,000,000. . AGGREGATE

**ITEM 4.**
UNDERLYING INSURANCE LIMIT OF LIABILITY
$ 5,000,000. . EACH OCCURRENCE
$ 5,000,000. . AGGREGATE

| ITEM 5. PREMIUM BASIS | ITEM 6. |
|---|---|
| $   FLAT CHARGE | ADVANCE PREMIUM: $ See End. # 1 |
| | ANNUAL MINIMUM PREMIUM: $ 1,250. |

IN THE EVENT OF CANCELLATION BY THE NAMED INSURED. THE COMPANY SHALL RECEIVE AND RETAIN NOT LESS THAN $ 300. AS THE POLICY MINIMUM PREMIUM.

ITEM 7. SCHEDULE OF UNDERLYING INSURANCE:   $5,000,000. combined single limit any one occurrence
**Personal Injury and/or Property Damage and/or Advertising Liability as provided by
U. S. Fire, Policy No. to be advised, in excess of various schedules of underlying
insurance as provided by American Employers and Liberty Mutual.**

AWC 0044809

## FOLLOWING FORM BLANKET EXCESS LIABILITY POLICY

The Company designated above, a stock insurance company, (herein called the Company) agrees with the insured, named in the declarations made a part hereof, in consideration of the payment of premium and in reliance upon the statements in the declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy.

### INSURING AGREEMENTS

**1. Coverage.** To indemnify the Insured for the Insured's ultimate net loss in excess of the insurance afforded under the Blanket Excess Liability or "Umbrella" policies specified in Item 7 of the Declarations, hereafter called underlying insurance, in full force and effect at the inception of this policy, provided that the insurance for injury to or destruction of property under this policy and underlying policies shall not apply except as respects injury to or destruction of corporeal property, including loss of use thereof.

**2. Limit of Liability.** The Company shall be liable only for the limit of liability stated in Item 3 of the Declarations in excess of the limit or limits of liability of the applicable underlying insurance policy or policies all as stated in the declarations of this policy. The limit of the liability stated in the declarations as applicable to "each occurrence" shall be the total limit of the Company's liability for all damages sustained as the result of any one occurrence, provided, however, in the event of reduction or exhaustion of the applicable aggregate limit or limits of liability under said underlying policy or policies solely by reason of losses paid thereunder on account of occurrences during this policy period, this

policy shall in the event of reduction, apply as excess of the reduced limit of liability thereunder. Subject to the applicable limit of liability as respects each occurrence, the limit of liability stated in the declarations as "aggregate" shall be the total limit of the Company's liability for all damages sustained during each annual period of this policy.

**3. Policy Period.** This policy applies only to occurrences which take place during the policy period.

### DEFINITIONS

"Ultimate net loss" means all sums actually paid, or which the Insured is legally obligated to pay, as damages in settlement or satisfaction of claims or suits for which insurance is afforded by this policy, after proper deduction of all recoveries or salvage.

### CONDITIONS

**1. Maintenance of Primary Insurance.** The Insured warrants, and it is a condition of this policy, that at the inception of this policy, insurance afforded by the underlying policies of insurance (apply-

(Continued on Page Two)

| COUNTERSIGNATURE DATE | | COUNTERSIGNATURE OF AUTHORIZED AGENT |
|---|---|---|
| 08-16-74 | ca | |

PAGE ONE

5902—2-72

**(Continued from Preceding Page)**

ing as excess over various policies of primary insurance) with combined limits of liability for said underlying insurance stated in Item 4 of the declarations, or renewals or replacements thereof not affording coverages other than those at inception of this policy, shall be maintained in full effect during the period of this policy, except for reduction of aggregate limits solely as a result of payment of claims arising out of occurrences during this policy period. If such underlying insurance is not maintained in full effect by the Insured or if there is any change in the scope of coverage under any underlying insurance, the insurance afforded by this policy shall apply in the same manner as though such underlying policies had been so maintained and unchanged.

The insurance afforded by this policy is subject to the same warranties, terms (including the terms used to describe the application of the limits of liability), conditions and exclusions are contained in the underlying insurance on the effective date of this policy, except, unless otherwise specifically provided in this policy, any such warranties, terms, conditions or exclusions relating to premium, the obligation to investigate and defend, the amount and limits of liability, and any renewal agreement.

**2. Notice of Occurance.** The Insured shall immediately advise the Company of any occurrence or disaster which will probably result in liability under this policy. The Company shall not, however, be called upon to assume charge of the settlement or defense of any claims made, or suits brought, or proceedings instituted against the Insured, but shall have the right and opportunity to be associated with the Insured in the defense and trial of any such claims, suits or proceedings relative to any occurrence which, in the opinion of the Company, may create liability on the part of the Company under the terms of the policy. If the Company avails itself of such right and opportunity, the Insured and the Company shall cooperate in all respects so as to effect a final determination of the claim or claims.

**3. Payment of Loss.** It is a condition of this policy that the insurance afforded under this policy shall apply only after all underlying insurance has been exhausted. Upon final determination by settlement, award or verdict of the Insured, the Company shall promptly pay the Insured as the Insured shall pay, or be required to pay, the amounts of any losses falling within the terms or limits of this insurance. All losses covered under this policy shall be due and payable by the Company within 30 days after they are respectively claimed and proof of loss filed with the Company in conformity with this policy. Bankruptcy or insolvency of the Insured shall not relieve the Company of any of its obligations hereunder.

**4. Payment of Expenses.** Loss expenses and legal expenses, including court costs and interest, if any, which may be incurred by the Insured with the consent of the Company in the adjustment or defense of claims, suits or proceedings shall be borne by the Company and the Insured in the proportion that each party's share of loss bears to the total amount of said loss. Loss expense hereunder shall not include salaries and expense of the Insured's employees incurred in investigation, adjustment and litigation.

**5. Appeal.** In the event the Insured or any underlying insurer elects not to appeal a judgment in excess of the amount of the underlying insurance, the Company may elect to appeal at its expense and shall be liable for the expenses incidental thereto, but in no event shall the liability of the Company for ultimate net loss exceed the amount set forth in the policy plus the expenses incidental to such appeal.

**6. Subrogation.** In the event of any payment of this policy, the Company shall be subrogated to all the Insured's rights of recovery therefor against any person or organization and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights.

Any amount recovered as subrogation shall be apportioned in the inverse order of payment of loss to the extent of actual payment. The expenses of all such recovery proceedings shall be apportioned in the ratio of respective recoveries. If there is no recovery in proceedings conducted solely by the Company, the Company shall bear the expenses thereof.

**7. Premium.** The premium for this policy shall be computed upon the basis stated in the Declarations. The advance premium stated in the Declarations, unless otherwise specified is an estimated premium only. Upon termination of this policy the earned premium shall be computed and if the earned premium is more than the advance premium paid, the Named Insured shall pay the excess to the Company; if less, the Company shall return to the Named Insured the unearned portion, subject to the annual minimum premium stated in the Declarations for each twelve months of the policy period, and subject further to the policy minimum premium as stated in the Declarations.

**8. Cancellation.** This policy may be cancelled by either party upon 30 days' notice in writing to the other stating the date cancellation shall be effective. If cancellation is at the request of the Insured, adjustment of premium shall be at "short rate", and if cancelled by the Company, adjustment shall be made pro rata. However, in the event of cancellation or termination of the underlying insurance, this policy shall cease to apply at the same time without notice to the Insured. Notice shall be given by the Company to the Insured at the address shown in the declarations. Payment or tender of unearned premium is a condition of cancellation.

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

### (BROAD FORM)

It is agreed that the policy does not apply:

I. Under any Liability Coverage, to injury, sickness, disease, death or destruction

(a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

(a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

(b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

III. As used in this endorsement:

**"hazardous properties"** include radioactive, toxic or explosive properties;

**"nuclear material"** means source material, special nuclear material or byproduct material;

**"source material," "special nuclear material,"** and **"byproduct material"** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**"spent fuel"** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

**"waste"** means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

**"nuclear facility"** means

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1) separating

PAGE TWO

**(Continued on Next Page)**

AWC 0044810

End. # 1

| INSTALLMENT PREMIUM ENDORSEMENT |
| --- |

In consideration of the premium charged, it is understood and agreed that the premium shall be paid as follows:

| August 15, 1974 | $   476. |
| January 1, 1975 | $1,250. |
| January 1, 1976 | $1,250. |

| POLICY NUMBER | INSURED | EFFECTIVE |
| --- | --- | --- |
| XLX-120 45 23 | A. W. Chesterton Company, Etal. | 08-15-74 |

| FIREMAN'S FUND INSURANCE COMPANY<br>THE AMERICAN INSURANCE COMPANY<br>NATIONAL SURETY CORPORATION<br>ASSOCIATED INDEMNITY CORPORATION<br>AMERICAN AUTOMOBILE INSURANCE COMPANY | PRODUCER |
| --- | --- |
| | Brewer & Lord |
| | COUNTERSIGNATURE OF AUTHORIZED AGENT |
| *Stuart D. Sprint* | *Brewer & Lord* |
| PRESIDENT | |

180001—1-65  SETS

AWC 0044811

**(Continued from Preceding Page)**

the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"**nuclear reactor**" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

With respect to injury to or destruction of property, the word "**injury**" or "**destruction**" includes all forms of radioactive contamination of property.

IN WITNESS WHEREOF, FIREMAN'S FUND INSURANCE COMPANY has caused this Policy to be signed by its President and Secretary but this Policy shall not be valid unless countersigned by a duly authorized Agent of the Company.

_Robert P. J. Cooney_

SECRETARY

_Stuart D. Sprint_

PRESIDENT

FINAL PAGE

AWC 0044812

POLICY  XL  U1483

Renewal of XL

EXCESS LIABILITY POLICY

STOCK COMPANY

# Drake
## INSURANCE COMPANY OF NEW YORK

55 JOHN STREET, NEW YORK, N.Y. 100

## DECLARATIONS

**Item 1.  Named Insured and Address:** (No., Street, Town, County, State)

A. W. Chesterton
Route 93
Stoneham, Massachusetts

**Item 2.  Policy Period:**
From  *Jan. 1, 1977*  to  *Jan. 1, 1978*
12:01 A.M., Standard time at the address of the named insured as stated herein.

**Item 3.** Underlying Insurance:

*The Continental Insurance Company – Umbrella Liability*

*$5,000,000 each occurrence and aggregate in excess of various primary insurance or self-insurance.*



**CORROON & BLACK
OF MASSACHUSETTS, INC.
INSURANCE**

One Winthrop Square, Boston, Massachusetts 02110
617-482-4900

**Item 4.** Limit(s) of Coverage Hereunder:

*$15,000,000 each occurrence and aggregate in excess of the limits in Item 3 above.*

**Item 5.** Premium:

*$13,500.00 flat charge*

**Item 6.** Cancellation:

*30 days*

Date:

By: _____

Authorized Representative

AWC 0045791

## OF NEW YORK

(A stock insurance company, herein called the company)

In consideration of the payment of the premium, in reliance upon the statements in the declarations made a part hereof and subject to all terms of this policy, agree with the insured named in Item 1 of the declarations as follows:

# TERMS AND CONDITIONS

**INSURING AGREEMENT**

1. The Company hereby indemnifies the Insured against ultimate net loss in excess of and arising out of the hazards covered ar as defined and in excess of the underlying insurance as shown in Item 3 of the Declarations (hereinafter referred to as "underlyir insurance") but only up to an amount not exceeding the limit(s) shown in Item 4 of the Declarations.

2. Except as may be inconsistent with this Policy, the coverage provided by this Policy shall follow the insuring agreement conditions and exclusions of the underlying insurance (whether primary or excess) immediately preceding the layer of coverag provided by this Policy, including any change by endorsements. The Company shall be notified of any change in coverage or premiu in such underlying insurance and copies thereof shall be furnished to the Company upon request.

3. The limits of the underlying insurance shall be maintained in full effect during the currency of this Policy except f reduction of such limits by exhaustion of aggregate limits (if any) contained therein solely by payment of claims resulting fro accidents or occurrences happening during the period thereof. Failure of the Insured to comply with the foregoing shall not invalida this Policy but in the event of such failure the company shall be liable only to the extent that it would have been liable had t Insured complied therewith.

4. Unless aggregate limits are specifically stated in Items 3 and 4 of the Declarations, the coverage provided by this Poli applies only with respect to each accident or occurrence for limits in excess of the amount provided for same in the underlyir insurance and does not apply over any reduced amount of underlying insurance in the event of the exhaustion or reduction aggregate limits (if any) in the underlying insurance.

5. If aggregate limits are specifically stated in Item 3 and 4 of the Declarations, this Policy will apply in excess of reduc underlying insurance provided such reduction in the underlying insurance is solely the result of accidents or occurrences happeni after the inception date of this Policy. The Insured shall give the Company written notice as soon as possible of any reduction exhaustion of such aggregate limit in the underlying insurance.

6. If more than one insured is named in the Declarations such additional Insured(s) shall not have the effect of increasing t Company's limit of liability for each accident or occurrence stated in Item 4 of the Declarations.

**PREMIUM**

7. Premium due the Company for this excess insurance shall be that amount shown in Item 5 of the Declarations and is payab upon delivery of this Policy.

**NOTICE OF LOSS**

8. The Insured shall immediately advise the Company of any accident or occurrence which appears likely to result in liabili under this Policy and of subsequent developments likely to affect the Company's liability hereunder. At no time shall the Company called upon to assume charge of the settlement or defense of any claims made or suits brought or proceedings instituted against t Insured, but the Company shall have the right and shall be given the opportunity to associate with the Insured or its underlying insu or insurers, or both, in the control, defense and/or trial of any claims, suits or proceedings which, in the opinion of the Compar involves or appears reasonably likely to involve the Company. If the company avails itself of such right and opportunity, the Insure any underlying insurer or insurers and the Company shall cooperate in the control, defense and/or trial of such claims, suits proceedings, so as to affect a final determination thereof. Failure on the part of the Insured or the underlying insurer or insurers cooperate shall relieve the Company, at its option, of liability under this Policy.

9. The Insured shall be solely responsible for the investigation, settlement, defense and final disposition of any claim made suit brought or proceeding instituted against the Insured to which this Policy would apply and which no underlying insurer or insure is obligated to defend. The Insured shall use due diligence and prudence to settle all such claims and suits which in the exercise sound judgment should be settled, provided, however, that the Insured shall not make or agree to any settlement for any sum, excess of the underlying insurance, without the approval of the Company.

10. The Insured shall (a) cooperate with the underlying insurer or insurers, as required by the terms of the underlying insuranc (b) comply with all the terms and conditions thereof and (c) enforce any right of contribution or indemnity against any person organization who may be liable to the Insured, because of liability with respect to which insurance is afforded under this Policy at the underlying insurance.

**LOSS PAYABLE**

11. The Company's obligation to pay any ultimate net loss and costs with respect to any accident or occurrence falling within tl terms of this Policy shall not attach until the amount of the applicable underlying limit has been paid by or on behalf of the Insur on account of such accident or occurrence. The Insured snall make claim for any ultimate net loss and costs under this Policy within period of not exceeding twelve (12) months after, (a) the Insured shall have paid ultimate net loss in excess of the underlying lim. with respect to any accident or occurrence, or (b) the Insured's obligation to pay such amounts shall have been finally determine either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the company.

12. All losses covered by this Policy shall be due and payable by the Company within thirty (30) days after claim has be presented and proper proof of payment of ultimate net loss and costs has been submitted, all in accordance with the terms above.

AWC 0045792

**ULTIMATE NET LOSS AND COSTS**

13. Ultimate net loss, as used herein, shall be understood to mean the sums paid in settlement of losses for which the Insured is liable after making deductions for all recoveries, salvages and other insurances (other than recoveries under the underlying insurance policies of co-insurance, or policies specifically in excess hereof), whether recoverable or not, and shall exclude all "Costs".

14. The word "costs", as used herein, shall be understood to mean interest on judgments, investigation, adjustment and legal expenses including taxed court costs and premiums on bonds, for which the Insured is not covered by the underlying insurance (excluding, however, (a) all expenses for salaried employees and counsel on general retainer, (b) all office expenses of the Insured, and (c) regular fees paid to counsel on general retainer.

15. Costs incurred by the Insured, with the written consent of the Company, shall be apportioned as follows:

   (a) in the event of claim or suit arising which appears likely to exceed the underlying insurance limit or limits, no Costs shall be incurred by the Insured without the written consent of the Company.

   (b) should such claim or suit be settled previous to going into court for not more than the underlying insurance limit or limits, then no Costs shall be payable by the Company.

   (c) should, however, the sum for which the said claim or suit may be settled exceed the underlying insurance limit or limit, then the Company, if it approves such settlement or consents to the proceedings continuing, shall contribute to the Cost incurred by the Insured in the ratio that its proportion of the ultimate net loss as finally adjusted bears to the whole amount of such ultimate net loss.

   (d) in the event the Insured elects not to appeal a judgment in excess of the underlying insurance limit or limits, the Company may elect to conduct such appeal at its own cost and expense and shall be liable for the taxable court costs and interest incidental thereto, but in no event shall the total liability of the Company exceed its limit or limits of liability, stated above, plus the costs of such appeal.

   (e) in the event a judgment is rendered in excess of the underlying insurance limit or limits and the underlying insurer or insurers elect to appeal such judgment, the duty of obtaining an appeal bond in regard to liability in excess of the underlying insurance limit or limits shall rest with the Insured and its underlying insurer or insurers.

**SUBROGATION AND SALVAGE**

16. All salvages, recoveries or payments recovered or received subsequent to a settlement under this Policy shall be applied as recovered or received prior to such settlement and all necessary adjustments shall then be made between the Insured and the Company, provided always that nothing in this clause shall be construed to mean that losses under this Policy are not recoverable until the Insured's ultimate net loss has been finally ascertained.

17. Inasmuch as this Policy is Excess Insurance, the Insured's right of recovery against any person cannot be exclusively subrogated to the company. It is, therefore, understood and agreed that in case of any payment hereunder, the Company will act in concert with all other parties (including the Insured) concerned, in the exercise of such rights of recovery. The apportioning of any amounts which may be so recovered shall follow the principle that any parties (including the Insured) that shall have paid an amount over and above any payment hereunder, shall first be reimbursed up to the amount paid by them, the company is then to be reimbursed out of any balance then remaining up to the amount paid hereunder; lastly the parties (including the Insured) of whom this coverage is in excess are entitled to claim the residue, if any. Expenses necessary to the recovery of any such amounts shall be apportioned between the parties (including the Insured) concerned, in the ratio of their respective recoveries as finally settled.

18. Nothing herein contained shall be construed to mean that the Insured shall be required to enforce by legal action any right subrogation or indemnity before the Company shall pay any loss covered hereunder.

**TERM**

19. This Policy applies only to accidents or occurrences happening between the effective and expiration dates shown in Item 2 of the Declarations, unless otherwise cancelled.

**NUCLEAR INCIDENT EXCLUSION**

20. It is agreed that this Policy does not apply:

   I. Under any Liability Coverage, to injury, sickness, disease, death or destruction

   (a) with respect to which an insured under this Policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   II. Under any Medical Payments Coverage, or under any Supplementary Payments Provisions relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

   III. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

AWC 0045793

(a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) h $^{1}$ been discharged or dispersed therefrom;

(b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, store transported or disposed of by or on behalf of an insured; or

(c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materia parts or equipment in connection with the planning, construction, maintenance, operation or use of any nucle facility, but if such facility is located within the United States of America, its territories or possessions or Canac this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV. As used herein:

"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source materi. special nuclear material or byproduct material; "source material", "special nuclear material", and "byproduct materia have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof; "spent fuel" mea any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear react «"waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any pers or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or ( thereof; "nuclear facility" means

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time t total amount of such material in the custody of the insured at the premises where such equipment or device located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises us for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-suppc ing chain reaction or to contain a critical mass of fissionable material;

With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioacti contamination of property.

21. This Policy may be cancelled by either party upon written notice, such notice to be not less than the number of days s forth in Item 6 of the Declarations. If cancellation is at the request of the Insured, adjustment of premium shall be at short rate and cancelled by the Company, adjustment shall be pro rata. However, in the event of cancellation or non-renewal of the underlyi: insurance immediately preceding this Policy, this Policy terminates as of the same date without notice to the insured. The Compar may, however, cancel this Policy absolutely on five (5) days' notice for non-payment of premium due. Notice shall be given by t. Insured to the Company at 55 John Street, N.Y., N.Y. 10038 and by the Company to the Insured at the latter's address as show in the Declarations. Notice by the Company to the first Named Insured, if more than one, shall be deemed notice to any oth interests included as an Insured.

IN WITNESS WHEREOF the Drake Insurance Company of N.Y. has caused this Policy to be signed by its President ar Secretary, but same shall not be binding upon the Company unless countersigned by an authorized representative of the Compan

_Thomas E. Burke_

Secretary

President

AWC 0045794

# Drake

## INSURANCE COMPANY OF NEW YORK

MEMBER OF THE HOWDEN SWANN GROUP

55 JOHN STREET  NEW YORK, N.Y. 10038 ◾ 212-349-4654

August 10, 1977

Thomas & Stevens, Inc.
89 State Street
Boston, Massachusetts  02109

Attention:  Theresa Ross

Re:  A. W. Chesterton
     Policy # XL-01483

Dear Theresa:

I am in receipt of your letter of August 3, 1977.

Please mark your records, I will be unable to extend the captioned policy.

If you have any questions, please do not hesitate to contact this writer.

Cordially yours,

John P. McAuley
Senior Underwriter

JPM:cg

AWC 0045795



# UMBRELLA POLICY

STOCK COMPANY

# MIDLAND INSURANCE COMPANY

### 160 Water St., New York, New York 10038



EXHIBIT
18

(a stock company, herein called the Company)

AWC 0046054

Agrees with the Insured named in the Declarations made a part hereof, in consideration of the payment of the premium and subject to all of the terms of this policy, as follows:

## INSURING AGREEMENTS

**I. Coverage:** The Company hereby agrees to indemnify the Insured against such ultimate net loss in excess of the Insured's primary limit as the Insured sustains by reason of liability, imposed upon the Insured by law or assumed by the Insured under contract, for damages because of personal injury or property damage to which this policy applies, caused by an occurrence anywhere in the world.

**II. Defense:** If no other insurer has the right and duty to do so, the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such personal injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, but the Company shall not be obligated to defend any suit after the Company's liability has been exhausted; Provided that:

(a) In connection with the aforesaid right and duty to defend, the Company may make such investigation and settlement of any claim or suit as it deems expedient, including payment on behalf of the Insured of part or all of the Insured's primary limit. In the event of such payment of part or all of the Insured's primary limit, the Insured shall promptly reimburse the Company therefor upon notice of the action taken.

(b) If the Company is prevented by law or otherwise from defending the Insured as aforesaid, the Company will reimburse the Insured for defense costs and expenses incurred with the written consent of the Company.

(c) Amounts incurred by the Company in connection with defense of the Insured as aforesaid except settlements of claims and suits, are payable by the Company in addition to the Company's limit of liability.

When another insurer has the duty to defend the Insured against any such suit, the Company shall have the right at its own expense to associate with the Insured in the defense thereof, and the Insured shall cooperate fully with such insurer and the Company in all things in connection therewith.

**III. Persons Insured:** The unqualified word "Insured" includes not only the Named Insured but also:

(a) any officer, director or stockholder of the Named Insured while acting within the scope of his duties as such, and, if the Named Insured is or includes a partnership or joint venture, any partner or member thereof but only with respect to his liability as such;

(b) except with respect to the ownership, maintenance, use, loading or unloading of any automobile, aircraft or watercraft, (1) any employee of the Named Insured while acting within the scope of his duties as such, and (2) any person or organization while acting as agent with respect to real estate management for the Named Insured;

(c) any person, organization, trustee or estate to whom the Named Insured is obligated by virtue of a written contract or agreement to provide coverage such as is afforded by this policy, but only with respect to operations by or on behalf of the Named Insured or to facilities owned or used by the Named Insured;

(d) with respect to any automobile, aircraft or watercraft owned by or hired for use in behalf of the Named Insured, any person while using such automobile, aircraft or watercraft or any person or organization legally responsible for the use thereof, provided the actual use of such automobile, aircraft or watercraft is with the permission of the Named Insured, but none of the following, other than the Named Insured, shall be an Insured under this subdivision (d):

(1) any person or organization, or any agent or employee thereof, operating a marina, automobile repair shop, public garage, sales agency, service station, or public parking place, with respect to any occurrence arising out of the operation thereof;

(2) any manufacturer of aircraft, aircraft engines, or aviation accessories, or any aviation sales or service or repair organization or airport or hangar operator or their respective employees or agents, with respect to any occurrence arising out of the operation thereof;

(3) with respect to any hired automobile, aircraft or watercraft, the owner or lessee (of whom the Named Insured is a sub-lessee) thereof or any agent or employee of such owner or lessee;

(4) with respect to any occurrence arising out of the loading or unloading of any such automobile, any person or organization other than a lessee or borrower of the automobile or any employee of the Named Insured or of such lessee or borrower;

(e) any other person or organization:

(1) named in the underlying insurance listed in Item 4 of the Declarations as of the effective date of this policy;

(2) added to the underlying insurance during the currency of this policy if the Named Insured notifies the Company within thirty days following the effective date of such addition to such underlying insurance:

but not for broader coverage than is available to such person or organization under such underlying insurance. The Named Insured shall pay any additional premium required because of the application of this indemnity to such additional insured;

**Provided that:** (1) No person shall be an Insured under this policy with respect to personal injury to any fellow employee of such person injured in the course of his employment except with respect to personal injury for which liability insurance is afforded to such person by a policy of underlying insurance listed in Item 4 of the Declarations; and (2) This indemnity does not apply to personal injury or property damage arising out of (i) the conduct of any partnership or joint venture of which the Insured is a partner or member and which is not named in Item 1 of the Declarations, or (ii) if the Named Insured is or includes a partnership, an automobile owned by or registered in the name of a partner thereof, except insofar as coverage is available to such Named Insured under the underlying insurance listed in Item 4 of the Declarations.

**IV. Insured's Primary Limit:** The Insured's primary limit with respect to each occurrence shall be an amount of ultimate net loss equal to:

(a) In respect of damages covered by the underlying insurance listed in Item 4 of the Declarations, the sum of (1) the amount of the applicable limits of such insurance, and (2) the amount recoverable by the Insured under any other insurance available to the Insured; and

(b) in respect of damages not covered by the underlying insurance listed in Item 4 of the Declarations, the greater of (1) the amount recoverable by the Insured under any other insurance available to the Insured, or (2) the amount stated in Item 5 of the Declarations.

In the event of a reduction or exhaustion of the aggregate limit of liability under Item 4 of the Declarations, this policy shall:

(a) in the event of a reduction, pay the excess of the reduced underlying limit;

(b) in the event of exhaustion, continue in force as underlying insurance.

The underlying insurance listed in Item 4 of the Declarations shall be deemed to be effective to the full extent of the limits stated therein irrespective of whether such underlying insurance is in force when the occurrence takes place, irrespective of any defense which the underlying insurer may assert because of failure to comply with any condition of its policy and irrespective of the inability of the underlying insurer to pay by reason of bankruptcy or insolvency.

**V. Company's Limit of Liability:** Regardless of the number of (a) Insured's under this policy, (b) persons or organizations who sustain injury or damage, (c) claims made or suits brought on account of personal injury or property damage, the limit of liability stated in Item 6 (a) of the Declarations is the limit of the Company's liability for all ultimate net loss as the result of any one occurrence.

There is no limit to the number of occurrences for which claims may be made, except that the limit of liability stated in Item 6 (b) of the Declarations is the total limit of the Company's liability for all ultimate net loss in respect of all personal injury and property damage which occurs during the policy period and arising out of the products hazard or the completed operations hazard or both combined. If this policy is issued for more than one year, this aggregate limit of liability applies separately to each consecutive annual period of this policy, or if the last consecutive period is less than 12 months, to such period of less than 12 months.

**VI. Products and Completed Operations Hazards:** The "products hazard" includes personal injury and property damage arising out of the Named Insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the personal injury or property damage occurs away from premises owned by or rented to the Named Insured and after physical possession of such products has been relinquished to others.

The "completed operations hazard" includes personal injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the personal injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the Named Insured. "Operations" include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times: (a) when all operations to be performed by or on behalf of the Named Insured under the contract have been completed, (b) when all operations to be performed by or on behalf of the Named Insured at the site of the operations have been completed, or (c) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise completed shall be deemed completed. The completed operations hazard does not include personal injury or property damage arising out of (a) operations in connection with the transportation of property, unless the personal injury or property damage arises out of a condition in or on a vehicle created by the loading or unloading thereof, or (b) the existence of tools, uninstalled equipment or abandoned or unused materials.

**VII. Definitions:** When used in this policy (including endorsements forming a part hereof):

(a) "Insured" means any person or organization qualifying as an Insured under the provisions of Section III hereof. The indemnity afforded applies separately to each Insured against whom claim is made or suit is brought, except with respect to the limits of the Company's liability;

(b) "Named Insured's products" means goods or products manufactured, sold, handled or distributed by the Named Insured or by others trading under his name, including any container thereof (other than a vehicle), but "Named Insured's products" shall not include a vending machine or any property other than such container, rented or located for use of others but not sold;

(c) "occurrence" means an accident, including continuous or repeated exposure to conditions, which results in personal injury or property damage neither expected nor intended from the standpoint of the Insured. All personal injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence;

(d) "personal injury" means bodily injury, including death at any time resulting therefrom, mental injury, mental anguish, shock, sickness, disease, or disability; injury arising out of false arrest, false imprisonment, wrongful eviction, detention, malicious prosecution, humiliation, libel, slander, defamation of character, or invasion of rights of privacy, which occurs during the policy period. The term "personal injury" shall also include, when committed or alleged to have been committed in any advertisement, publicity article, broadcast or telecast during the policy period, and arising out of the Named Insured's advertising activities, injury arising out of: (1) infringement of copyright or of title or of slogan, and (2) piracy or unfair competition or idea misappropriation under an implied contract;

(e) "property damage" means (1) physical injury to or destruction of tangible property, which occurs during the policy period, including loss of use thereof at any time resulting therefrom; or (2) loss of use of tangible property, which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period;

(f) "ultimate net loss" means the total sum which the Insured, or any company as his insurer, or both, become obligated to pay as damages, including damages for care and loss of services, because of personal injury or property damage, either through adjudication or compromise with the written consent of the Company.

## EXCLUSIONS

**VIII. This policy shall not apply:**

(a) to any obligation for which the Insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

(b) to the ownership, maintenance, use, loading or unloading of any aircraft or watercraft owned by the Named Insured, but this exclusion does not apply insofar as coverage is available to the Insured under the underlying insurance listed in Item 4 of the Declarations;

(c) to damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the Named Insured's products or work completed by or for the Named Insured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein;

(d) to loss of use of tangible property which has not been physically injured or destroyed, resulting from:

(1) a delay in or lack of performance by or on behalf of the Named Insured of any contract or agreement, or

(2) the failure of the Named Insured's products or work performed by or on behalf of the Named Insured to meet the level of performance, quality, fitness or durability warranted or represented by the Named Insured;

but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the Named Insured's products or work performed by or on behalf of the

Named Insured after such products or work have been put to use by any person or organization other than an Insured;

(e) to personal injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental;

(f) to property damage to (1) property owned by the Named Insured, (2) the Named Insured's products arising out of such products or any part of such products, or (3) work performed by or on behalf of the Named Insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

(g) with respect to liability assumed by the Insured under contract, to (1) property damage to property rented to, occupied or used by or in the care, custody or control of the Insured, if such liability is greater or broader than the Insured's common law or statutory liability therefor;

(h) with respect to advertising activities, to damages claimed for (1) breach of contract under than an implied contract to pay for the misappropriation of an idea, (2) infringement or misappropriation of a trademark, service mark or trade name, (3) incorrect description of any article or commodity, or (4) mistake in advertised price;

(i) to punitive or exemplary damages awarded against the insured.

AWC 0046055

## NUCLEAR INCIDENT EXCLUSION CLAUSE

IX. It is agreed this policy shall not apply to personal injury or property damage:

(a) with respect to which an Insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b) resulting from the hazardous property of nuclear material and with respect to which;

(1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or

(2) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization; or

(c) resulting from the hazardous properties of nuclear material, if

(1) the nuclear material (i) is at any nuclear facility owned by, or operated by or on behalf of, an Insured or (ii) has been discharged or dispersed therefrom; or

(2) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

(3) the personal injury or property damage arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this subparagraph (3) applies only to property damage to property at such nuclear facility.

As used herein: "hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or by-product material; "source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under sub-paragraph (a) or (b) thereof; "nuclear facility" means

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material; "property damage" includes all forms of radioactive contamination of property.

## CONDITIONS

X. This policy is subject to the following conditions:

(a) Premium. If the Premium is stated in the Declarations as a flat premium charge the premium is not subject to adjustment except as hereinafter provided.

If the premium is stated in the Declarations as other than a flat premium charge, the deposit premium is an advance premium which shall be credited to the amount of the earned premium due at the end of the policy period.

At the close of each period for part thereof terminating with the end of the policy period designated in the Declarations as the audit reporting period the earned premium for such period shall be computed in accordance with the rates and minium premium stated in the Declarations, and upon notice thereof to the Named Insured shall become due and payable. If the total earned premium for the policy period is less than the premium previously paid, the Company shall return to the Named Insured the unearned portion paid by the Named Insured.

Appropriate additional premium shall be payable with respect to any additional Named Insured and any person who or organization which becomes an Insured under the provisions of Section III (e).

The Named Insured shall maintain records of such information as is necessary for premium computation, and shall send copies of such records to the Company at the end of the policy period and at such times during the policy period as the Company may direct.

(b) Maintenance of Underlying Insurance. The underlying insurance listed in Item 4 of the Declarations shall be maintained in full effect during the currency of this policy except for any reduction of the aggregate limit or limits applicable thereto solely by payment of claims in respect of personal injury or property damage which occurs during the period of this policy.

Failure of the Insured to comply with the foregoing shall not invalidate this policy but in the event of such failure, the Company shall only be liable to the same extent as it would have been had the Insured complied with this condition.

Upon notice that any aggregate limit of liability under any policy of underlying insurance has been exhausted, the Named Insured shall immediately make all reasonable efforts to reinstate such limits. The Named Insured shall give the Company written notice as soon as practicable of any change in the scope of coverage or in the amount or limits of insurance under any policy of underlying insurance, and of the termination of any coverage or exhaustion of aggregate limits of any underlying insurer's liability.

(c) Inspection and Audit. The Company shall be permitted but not obligated to inspect the Insured's property and operations at any time. Neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the Insured or others, to determine or warrant that such property or operations are safe or healthful, or are in compliance with any law, rule or regulation. The Company may examine and audit the Insured's books and records at any time during the policy period and within three years after the final termination of this policy or within one year after final settlement of all claims arising out of personal injury or property damage which occurs during the period of this policy, as far as they relate to the subject matter of this indemnity.

(d) Insured's Duties in the Event of Occurrence, Claim or Suit. In the event of an occurrence, which in the judgment of the Insured is likely to involve the liability of the Company hereunder, written notice containing particulars sufficient to identify the Insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the Insured to the Company as soon as practicable.

If claim is made or suit is brought against the Insured, the Insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representatives.

The Insured shall cooperate with the Company and, upon the Company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the Insured because of personal injury or property damage with respect to which indemnity is afforded under this policy; and the Insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses.

(e) Appeals. In the event the Insured or the Insured's underlying insurers elect not to appeal a judgment in excess of the Insured's primary limit, the Company may elect to make such appeal at its cost and expense, and shall be liable for the taxable costs and disbursements and interest incidental thereto, but in no event shall the liability of the Company for ultimate net loss exceed the amount set forth in Item 6 (a) of the Declarations for any one occurrence.

(f) Loss Payable. Liability under this policy with respect to any occurrence shall not attach unless and until the Insured, or the Insured's underlying insurer, shall have paid the amount of the Insured's primary limit on account of such

AWC 0046056

occurrence. The Insured shall make a definite claim for any loss for which the Company may be liable under this policy within 12 months after the Insured shall have been paid an amount of ultimate net loss in excess of the Insured's primary limit or after the Insured's liability shall have been fixed and rendered certain either by final judgment against the Insured after actual trial or by written agreement of the Insured, the claimant, and the Company. If any subsequent payments shall be made by the Insured on account of the same occurrence, additional claims shall be made similarly from time to time. Such losses shall be due and payable within 30 days after they are respectively claimed and proven in conformity with this policy.

(g) Bankruptcy and Insolvency. In the event of the bankruptcy or insolvency of the Insured or any entity comprising the Insured, the Company shall not be relieved thereby of the payment of any claims hereunder because of such bankruptcy or insolvency.

(h) Other Insurance. The indemnity afforded by this policy shall apply in excess of all other insurance or indemnity available to the Insured except insurance or indemnity purchased by the Named Insured specifically to apply in excess of the Company's limit of liability hereunder.

(i) Subrogation. In case of any payment hereunder, the Company will act in concert with all other interests (including the Insured) concerned, in the exercise of the Insured's rights of recovery therefor against any person or organization. The apportioning of any amounts which may be so recovered shall follow the principle that any interests (including the Insured) that shall have paid an amount over and above any payment hereunder, shall first be reimbursed up to the amount paid by them; the Company is then to be reimbursed out of any balance then remaining up to the amount paid hereunder; lastly, the interests (including the Insured) of whom this coverage is in excess are entitled to claim the residue, if any. Expenses necessary to the recovery of any such amounts shall be apportioned between the interests

(including the Insured) concerned, in the ratio of their respective recoveries as finally settled.

(j) Changes. Notice to or knowledge possessed by any person shall not effect a waiver or a change in any part of this policy or estop the Company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part hereof, signed by the Company.

(k) Assignment. Assignment of interest under this policy shall not bind the Company unless and until its consent is endorsed hereon.

(l) Cancellation. This policy may be cancelled by the Named Insured by surrender thereof to the Company or by mailing to the Company written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by the Company by mailing to the Named Insured at the address shown in this policy written notice stating when not less than 30 days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Named Insured or the Company shall be the equivalent to mailing.

If the Named Insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

The Insured first named in Item I of the Declarations shall be deemed to be the agent of all other Insureds with respect to the giving and receiving of notice of cancellation and to receiving any return premium that may become payable under this policy.

IN WITNESS WHEREOF, the Company has caused this policy to be signed by its President and Secretary and countersigned on the Declarations page by an authorized representative of the Company.

MIDLAND INSURANCE COMPANY

_____  Secretary

_____  President

AWC 0046057

Policy Number UL 70 64
Renewal of   UL 703764          UMBRELLA POLICY

 **MIDLAND INSURANCE COMPANY**

(a stock company, herein called the Company)
160 Water St., New York, New York 10038

## DECLARATIONS

1. Named Insured:   A.W. Chesterton          Producer:   F.S. James & Company
                                                          8532500

2. Address        Middlesex Industrial Park
                  Rte. 1-93
                  Stoneham, Mass.   02180

3. Policy Period:   From 12:01 A.M., 2/1/80
                    to   12:01 A.M., 2/1/80
                    standard time at the address of the Insured as stated herein

4. Schedule of Underlying Insurance:  See Endorsement No. 1

5. Retained Limit:                    $ 10,000.

6. Limit of Liability:
                        (a) $ 5,000,000  each occurrence
                        (b) $ 5,000,000  aggregate

7. Premium:
            (a) Flat Charge       $ 12,000.00
            (b) Deposit Premium:  $

            (c) Minimum Premium:  $
            (d) Rate:
            (e) Audit Reporting Period:
                    Annual unless otherwise stated.

AS/eo 2/28/80

                                        MIDLAND INSURANCE COMPANY

_____            _____
Countersignature                   Date

UND 200A Rev. 12/78

                ORIGINAL

AWC 0046058

Item 4 of the Declarations shall read as follows:

4. Schedule of Underlying Insurance:

| Carrier | Coverage | Limits |
|---|---|---|

Liberty Mutual     A. Employers' Liability     $ 100,000   one accident

Liberty Mutual     B. Comprehensive Auto Liability

Bodily Injury Liability
$ 250,000   each person
$ 500,000   each occurrence
Property Damage Liability
$ 100,000   each occurrence

Liberty Mutual     C. Comprehensive General Liability

Bodily Injury and Property
Damage Liability Combined
$ 500,000   each occurrence
$ 500,000   aggregate
Bodily Injury Liability
$   each person
$   each occurrence
$   aggregate
Bodily Injury Liability
$   each occurrence
$   aggregate
Property Damage Liability
$   each occurrence
$   aggregate
Personal Injury Liability
$   each person aggregate
$   general aggregate
Hospital Professional Liability
$   each claim
$   aggregate

The General Liability coverage includes the following, as indicated:

☒ Products and Completed Operations Liability Coverage     ☒ X.C.U. Liability Coverage

☐ Designated Contractual Liability Coverage     x ☒ Blanket Contractual Liability Coverage

☐ Broad Form Property Damage Liability Coverage     ☐

☐     ☐

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

*(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)*

Endorsement Effective    2/1/80     Policy No.    UL 703764     Endorsement No. One.

Named Insured   A.W. Chesterton

AS/eo 2/28/80

Secretary                  President

Countersigned

---------------------------------

Authorized Representative

UND 2004 Rev. 12/28

AWC 0046059

# ENDORSEMENT

### ERISA EXCLUSION

In consideration of the premium charged and notwithstanding anything contained herein to the contrary it is hereby agreed that such coverage as is afforded by this policy shall not apply to any claim or claims arising out of the Employee Retirement Income Security Act of 1974, Public Law 93-406, commonly referred to as the Pension Reform Act of 1974 and amendments thereto, or similar provisions of any Federal, State or Local Statutory Law or Common Law.

Effective ___2/1/80___ _____ 12:01 AM Standard Time, this Endorsement No. ___2___

attached to and made a part of Policy No. __UL 703764__ _____ of __MIDLAND INSURANCE COMPANY__

issued to __A.W. Chesterton__ _____

(The information above is required only when this endorsement is issued subsequent to preparation of the policy.)

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of this policy other than as above stated.

AS/eo 2/28/80

By _____

Authorized Representative

**AWC 0046060**

CMI-U-125 (4-78)

ORIGINAL

GU 7966a
(Ed. 5-59)

## COUNTERSIGNATURE ENDORSEMENT

This endorsement, effective     **2/1/80     12:01 A.M.**     , forms a part of policy No.     **UL 703764**
                                           (hour and date)

issued to     **A.W. Chesterton**

by          **Midland Insurance Company**

| STATE | STATE PREMIUM |
|---|---|
| **Massachusetts** | **$12,000.00** |

It is agreed that the signature appearing on this endorsement is the signature of a person duly authorized to countersign on behalf of the Company in the state designated above and which is appended hereto in conformity with the insurance laws of that state.



                                                    Countersigned by **Coverage Innovators Ins.**
                                                                          Authorized Signature

          **AS/eo 2/28/80**          **F.S. James & Company**

AWC 0046061

GU 7966a
(Ed. 5-59)

## COUNTERSIGNATURE ENDORSEMENT

This endorsement, effective     2/1/80    12:01 A.M.          , forms a part of policy No.    UL 703764
                                      (hour and date)

issued to     A.W. Chesterton

by     Midland Insurance Company

|        STATE        |  STATE PREMIUM  |
| Massachusetts       |   $12,000.00    |

It is agreed that the signature appearing on this endorsement is the signature of a person duly authorized to countersign on behalf of the Company in the state designated above and which is appended hereto in conformity with the insurance laws of that state.

Countersigned by _John C. Curtin_
                        Authorized Signature

AS/eo 2/28/80

AWC 0046062

In consideration of the premium charged, it is agreed that the Policy Period of the declarations is amended to read:
February 1, 1980 to Febuary 1, 1981.

Effective    **2/1/80**    12:01 AM Standard Time, this Endorsement No.    **#3**
attached to and made a part of Policy No.    **UL 703764**    of    MIDLAND INSURANCE COMPANY
issued to    **A.W. Chesterton**

(The information above is required only when this endorsement is issued subsequent to preparation of the policy.)

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of this policy other than as above stated.

J. Powel, Secretary    ap/AS.    3/25/80    M.S. Chenault, President

By
Authorized Representative

Form UND 262 (7/79) 15M

**EXTRA COPY**

ENDORSEMENT

301

## FOLLOWING FORM FOREIGN LIABILITY

In consideration of the premium charged, it is hereby agreed
That this policy shall not apply to any claim arising out of
an occurrence outside of the United States nor to any suit
brought in a jurisdiction outside of the United States unless
such liability is covered by valid and collectible underlying
insurance, as listed below, for the full limits shown there-
in, and then only for such hazards for which coverage is
afforded under said underlying insurance.

| CARRIER | COVERAGE | LIMITS |
|---|---|---|
| Fidelity & Casualty Company | Employer's Liability | $100,000 Each accident |
| Continental Insurance Company | Automobile Liability | $500,000 BI & PD combined single |
| Continental Insurance Company | Comprehensive General Liability | $500,000 BI & PD combined single Limit Except $100,000 Communist Country Suits |

Effective        2/1/80                                   12:01 AM Standard Time, this Endorsement No.        84
attached to and made a part of Policy No.   UL 703764                           of   MIDLAND INSURANCE COMPANY
issued to        A.W. Chesterton

(The information above is required only when this endorsement is issued subsequent to preparation of the policy.)

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations
of this policy other than as above stated.

ap/AS.        3/25/80

J. Powel, Secretary

M.S. Chenault, President

By _____

Authorized Representative

Form UND 262 (7/70) 15M

EXTRA COPY

**UMBRELLA POLICY**

STOCK COMPANY



# MIDLAND INSURANCE COMPANY

160 Water St., New York, New York 10038

(a stock company, herein called the Company)

AWC 0046175



EXHIBIT

In consideration of the payment of the premium, in reliance upon the statements in the Declarations made a part hereof, and subject to all the terms of this policy, the Company agrees with the Insured named in Item 1 of the Declarations as follows:

## INSURING AGREEMENTS

**I Coverage:** The Company hereby agrees to pay on behalf of the Insured such ultimate net loss in excess of the Insured's Primary Limit as the Insured sustains by reason of liability, imposed upon the Insured by law or assumed by the Insured under contract, for damages because of personal injury, property damage or advertising liability to which this policy applies, caused by an occurrence anywhere during the policy period.

**II. Defense:** If no other insurer has the right and duty to do so, the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such personal injury, property damage or advertising liability, even if any of the allegations of the suit are groundless, false or fraudulent, but the Company shall not be obligated to defend any suit after the Company's liability has been exhausted; provided that:

(a) In connection with the aforesaid right and duty to defend, the Company may make such investigation and settlement of any claim or suit as it deems expedient, including payment on behalf of the Insured of part or all of the Insured's primary limit. In the event of such payment of part or all of the Insured's primary limit, the Insured shall promptly reimburse the Company therefor upon notice of the action taken.

(b) If the Company is prevented by law or otherwise from defending the Insured as aforesaid, the Company will reimburse the Insured for defense costs and expenses incurred with the written consent of the Company.

(c) Amounts incurred by the Company in connection with defense of the Insured as aforesaid except settlements of claims and suits, are payable by the Company in addition to the Company's limit of liability.

When another insurer has the duty to defend the Insured against any such suit, the Company shall have the right at its own expense to associate with the Insured in the defense thereof, and the Insured shall cooperate fully with such insurer and the Company in all things in connection therewith.

## III. PERSONS OR ENTITIES INSURED:

(a) The Named Insured is the organization(s) named in the Declarations of this policy and includes:

(1) any subsidiary company (including subsidiaries thereof) and any other company under their control and active management at the inception of this policy;

(2) new organizations acquired by the Named Insured during the policy period, through consolidation, merger, purchase of the assets of, or assumption of control and active management; provided such acquisition or assumption is reported to the Company within ninety (90) days after it is effected and provided further such acquisition is endorsed on this policy. It is further agreed that the coverage afforded such new organization shall be subject to the same underlying insurance requirements as applicable to the Named Insured, and that the Insured shall pay any additional premium required because of the application of this coverage to such additional insured;

(3) if the Named Insured in the Declarations is a partnership or joint venture, any partner or member thereof is included as a Named Insured but only with respect to his liability as a partner or member of such partnership or joint venture,

(4) if the Named Insured in the Declarations is an individual, the person so designated and his spouse, if a resident of the same household, but only with respect to the conduct of a business of which he is a sole proprietor.

(b) Each of the following is an Insured under this policy to the extent set forth below:

(1) any person, organization, trustee or estate to whom or to which the Named Insured is obligated by virtue of a written contract or permit to provide insurance such as is afforded by the terms of this policy, but only with respect to operations for or on behalf of the Named Insured or to facilities of or facilities used by the Named Insured and then only to the extent of the coverage required by such contract and for the limits of liability specified in such contract, but in no event for insurance not afforded by this policy nor for limits of liability in excess of the applicable limits of liability of this policy;

(2) at the option of the Named Insured and subject to the terms of the coverage of this insurance, any additional Insured(s) included in the underlying insurance listed in Item 4 of the Declarations, but only to the extent that insurance is provided for such additional Insured(s) thereunder;

(3) except with respect to the ownership, maintenance or use, including loading or unloading, of automobiles or aircraft,

   (i) any officer, executive, employee, director or stockholder of the Named Insured while acting on behalf of such Named Insured;

   (ii) any person or organization while acting as real estate manager for the Named Insured;

(4) any person while using, with the permission of the Named Insured, any automobile or aircraft owned by, loaned to or hired for use by or on behalf of the Named Insured and any person or organization legally responsible for the use thereof, provided the actual operation or other actual use is within the scope of such permission, and any officer, director or stockholder of the Named Insured with respect to the use of an automobile or aircraft not owned by the Named Insured but only while such automobile or aircraft is being used in the business of the Named Insured. The insurance with respect to any person or organization other than the Named Insured does not apply under this paragraph (4):

   (i) to any person or organization, or to any agent or employee thereof, operating an automobile sales agency, repair shop, service station, storage garage or public parking place;

   (ii) to any automobile or aircraft hired by or loaned to the Named Insured, to the owner or a lessee (of whom the Named Insured is a sub-lessee) thereof other than the Named Insured, or to any agent or employee of such owner or lessee;

   (iii) to any manufacturer of aircraft, aircraft engines or aviation accessories, or any aviation sales, service or repair organization or airport or hangar operator or their respective employees or agents.

(c) As respects the coverage afforded under (a) and (b) above, it is agreed that:

(1) No person shall be an Insured under this policy with respect to personal injury to any fellow employee of such person injured in the course of his employment except with respect to personal injury for which liability insurance is afforded to such person by a policy of underlying insurance listed in Item 4 of the Declarations; and

(2) This indemnity does not apply to personal injury, property damage or advertising liability arising out of:

   (i) the conduct of any partnership or joint venture of which the Insured is a partner or member and which is not named in Item 1 of the Declarations, or

   (ii) if a Named Insured is or includes a partnership, an automobile owned

O Rev 10-79

by or registered in the name of a partner thereof, except insofar as coverage is available to such Named Insured under the underlying insurance listed in Item 4 of the Declarations.

**IV. Insured's Primary Limit:** The Insured's primary limit for each occurrence shall be the amount of ultimate net loss equal to:

(a) With respect to damages covered by the underlying insurance listed in Item 4 of the Declarations, the sum of:

    (1) the amount of the applicable limits of such insurance, and

    (2) the amount recoverable by the Insured under any other insurance available to the Insured; and

(b) With respect to damages not covered by the underlying insurance listed in Item 4 of the Declarations, the greater of:

    (1) the amount recoverable by the Insured under any other insurance available to the Insured, or

    (2) the amount stated in Item 5 of the Declarations.

In the event of a reduction or exhaustion of the aggregate limit of liability under Item 4 of the Declarations, this policy shall:

(a) In the event of a reduction, pay the excess of the reduced underlying limit;

(b) In the event of exhaustion, continue in force as underlying insurance.

The underlying insurance listed in Item 4 of the Declarations shall be deemed to be effective to the full extent of the limits stated therein irrespective of whether such underlying insurance is in force when the occurrence takes place, irrespective of any defense which the underlying insurer may assert because of failure to comply with any condition of its policy and irrespective of the inability of the underlying insurer to pay by reason of bankruptcy or insolvency.

**V. Company's Limit of Liability:** Regardless of the number of:

(a) Insured's under this policy;

(b) Persons or organizations who sustain personal injury, property damage or advertising liability; or

(c) Claims made or suits brought on account of personal injury, property damage or advertising liability, the Company's liability is limited as follows:

**Each Occurrence**—The limit of liability stated in Item 6(a) of the Declarations as applicable to "each occurrence" is the limit of the Company's liability for all ultimate net loss to which this policy applies as the result of any one occurrence.

**Aggregate**—Subject to the above provisions respecting "each occurrence" the total liability of the Company for all ultimate net loss and loss to which this policy applies and described in any of the following subparagraphs shall not exceed the "aggregate" limit of liability stated in Item 6(b) of the Declarations:

(a) All property damage;

(b) All personal injury or property damage included within either the products hazard or the completed operations hazard;

(c) All advertising liability;

(d) All occupational disease sustained by all employees of insureds arising out of and in the course of employment; or

(e) All occurrences arising out of any hazard for which an aggregate limit of liability applies in the underlying policies.

If this policy is issued for more than one year, this "aggregate" limit of liability applies separately to each consecutive annual period of this policy or, if the consecutive period is less than twelve months, to such period of less than twelve months.

For the purpose of determining the limit of the Company's liability:

(a) All personal injury or property damage arising out of continuous or repeated exposure to substantially the same conditions shall be considered as arising out of one occurrence;

(b) With respect to advertising liability, all injury arising out of any advertisement, publicity article, broadcast or telecast or any combination thereof involving the same injurious material or act, regardless of the frequency of repetition thereof or the number or kind of media used, whether claim is made by one or more persons, shall be considered as arising out of one occurrence.

**VI. Definitions:** When used in this policy (including endorsements forming a part hereof):

(a) "advertising liability" means libel, slander, defamation, infringement of copyright, title or slogan, piracy, unfair competition, idea misappropriation or invasion of rights of privacy, arising out of the Insured's advertising activities;

(b) "completed operations hazard" includes personal injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the personal injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the Named Insured. "Operations" include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

    (1) when all operations to be performed by or on behalf of the Named Insured under the contract have been completed;

    (2) when all operations to be performed by or on behalf of the Named Insured at the site of the operations have been completed; or

    (3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise completed shall be deemed completed. The completed operations hazard does not include personal injury or property damage arising out of:

    (i) operations in connection with the transportation of property, unless the personal injury or property damage arises out of a condition in or on a vehicle created by the loading or unloading thereof; or

    (ii) the existence of tools, uninstalled equipment or abandoned or unused materials.

(c) "Insured" means any person or organization qualifying as an Insured under the provisions of Section III hereof. The indemnity afforded applies separately to each Insured against whom claim is made or suit is brought, except with respect to the limits of the Company's liability;

(d) "Named Insured" means the organization(s) named in the Declarations of this policy. The word "Insured" includes the Named Insured;

(e) "Named Insured's products" means goods or products manufactured, sold, handled or distributed by the Named Insured or by others trading under his name, including any container thereof (other than a vehicle), but "Named Insured's products" shall not include a vending machine or any property other than such container, rented or located for use of others but not sold;

(f) "occurrence" means an accident, happening or event, including continuous or repeated exposure to conditions, which results in personal injury, property damage or advertising liability neither expected nor intended from the standpoint of the Insured. All such exposure arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence;

(g) "personal injury" means:

    (1) bodily injury, including death at any time resulting therefrom;

    (2) mental anguish, mental injury or shock;

    (3) disease, sickness or disability;

    (4) assault and battery not committed by or at the direction of the Insured, unless committed for the purpose of protecting persons or property;

    (5) false arrest, detention or imprisonment, wrongful entry or eviction or other invasion of private occupancy, malicious prosecution or humiliation; except that maliciously inflicted by, at the direction of, or with the consent of the Insured;

    (6) the publication or utterance of a libel or slander or other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy; except that maliciously published or uttered by, at the direction of, or with consent of the Insured and except that contained in any advertisement, publicity article, broadcast or telecast and arising out of an Insured's advertising activities;

(h) "products hazard" includes personal injury and property damage arising out of the Named Insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the personal injury or property damage occurs away from premises owned by or rented to the Named Insured and after physical possession of such products has been relinquished to others;

(i) "property damage" means:

    (1) physical injury to or destruction of tangible property, which occurs during the policy period, including loss of use thereof at any time resulting therefrom; or

    (2) loss of use of tangible property, which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period;

(j) "ultimate net loss" means the total sum which the Insured, or any company as his insurer, or both, becomes obligated to pay as damages, including damages for care and loss of services, because of personal injury, property damage or advertising liability, either through adjudication or compromise with the written consent of the Company.

AWC 0046176

## EXCLUSIONS

**VII. This policy shall not apply:**

(a) to any obligation for which the Insured or any carrier as his insurer may be held liable under any worker's compensation, unemployment compensation or disability benefits law, or under any similar law;

(b) to the ownership, maintenance, use, loading or unloading of any aircraft or water-craft owned by the Named Insured, but this exclusion does not apply insofar as coverage is available to the Insured under the underlying insurance listed in Item 4 of the Declarations;

(c) to damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the Named Insured's products or work completed by or for the Named Insured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein;

(d) to loss of use of tangible property which has not been physically injured or de-stroyed, resulting from:

    (1) a delay in or lack of performancy by or on behalf of the Named Insured of any contract or agreement; or

    (2) the failure of the Named Insured's products or work performed by or on behalf of the Named Insured to meet the level of performance, quality, fitness or durability warranted or represented by the Named Insured;

but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the Named Insured's products or work performed by or on behalf of the Named Insured after such products or work have been put to use by any person or organization other than an Insured;

(e) to personal injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental; but in no event shall the coverage provided by this policy for Contamination and Pollution be broader than that provided by the Underlying Insurances set forth in the Schedule of Underlying Insurances;

(f) to property damage to:

(1) property owned by the Named Insured;

(2) the Named Insured's products arising out of such products or any part of such products; or

(3) work performed by or on behalf of the Named Insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith.

(g) with respect to liability assumed by the Insured under contract, to:

(1) property damage to property rented to, occupied or used by or in the care, custody or control of the Insured, if such liability is greater or broader than the Insured's common law or statutory liability therefor;

(h) with respect to advertising activities, to damages claimed for:

(1) breach of contract other than an implied contract to pay for the misappropria-tion of an idea;

(2) infringement or misappropriation of a trademark, service mark or trade name;

(3) incorrect description of any article or commodity; or

(4) mistake in advertised price;

(i) to any claim or claims arising out of the Employee Retirement Income Security Act of 1974, Public Law 93-406, commonly referred to as the Pension Reform Act of 1974 and amendments thereto, or similar provisions of any Federal, State or Local Statutory Law or Common Law;

(j) to any claim or claims made by or against the Insured with respect to No-Fault, Personal Injury Protection or Uninsured Motorists;

(k) except with respect to occurrences taking place in the United States of America, its territories or possessions or Canada, to any liability of the Insured directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalization or requisition or destruction of or damage to property by or under the order of any government or public or local authority, with respect to any liability assumed by the Insured under any contract or agreement.

## NUCLEAR INCIDENT EXCLUSION CLAUSE

**VIII. It is agreed this policy shall not apply to personal injury or property damage:**

(a) with respect to which an Insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b) resulting from the hazardous property of nuclear material and with respect to which:

(1) any person or organization is required to maintain financial protection pursu-ant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

(2) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization; or

(c) resulting from the hazardous properties of nuclear material, if:

(1) the nuclear material:

    (i) is at any nuclear facility owned by, or operated by or on behalf of, an Insured, or

    (ii) has been discharged or dispersed therefrom; or

(2) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

(3) the personal injury or property damage arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territo-ries or possessions or Canada, this subparagraph (3) applies only to property damage to property at such nuclear facility.

As used herein: "hazardous properties" include radioactive, toxic or explosive proper-ties; "nuclear material" means source material, special nuclear material or by-product material; "source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material:

(1) containing by-product material; and

(2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under subparagraph (a) or (b) thereof; "nuclear facility" means:

(a) any nuclear reactor;

(b) any equipment or device designed or used for:

(1) separating the isotopes of uranium or plutonium;

(2) processing or utilizing spent fuel; or

(3) handling, processing or packaging waste;

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material; "property damage" includes all forms of radioactive contamination of property.

**AWC 0046177**

## CONDITIONS

IX. This policy is subject to the following conditions:

(a) Premium. If the Premium is stated in the Declarations as a flat premium charge the premium is not subject to adjustment except as hereinafter provided.

If the premium is stated in the Declarations as other than a flat premium charge, the deposit premium is an advance premium which shall be credited to the amount of the earned premium due at the end of the policy period.

At the close of each period (or part thereof terminating with the end of the policy period) designated in the Declarations as the audit reporting period the earned premium for such period shall be computed in accordance with the rates and minimum premium stated in the Declarations, and upon notice thereof to the Named Insured shall become due and payable. If the total earned premium for the policy period is less than the premium previously paid, the Company shall return to the Named Insured the unearned portion paid by the Named Insured.

Appropriate additional premium shall be payable with respect to any additional Named Insured and any person who or organization which becomes an Insured under the provisions of Section III (a).

The Named Insured shall maintain records of such information as is necessary for the premium computation, and shall send copies of such records to the Company at the end of the policy period and at such times during the policy period as the Company may direct.

(b) Maintenance of Underlying Insurance. The underlying insurance listed in Item 4 of the Declarations or renewals or replacement thereof not more restrictive, shall be maintained in full effect during the currency of this policy except for any reduction of the aggregate limit or limits applicable thereto solely by payment of claims in respect of personal injury, property damage or advertising liability which occurs during the period of this policy.

Failure of the Insured to comply with the foregoing shall not invalidate this policy but in the event of such failure, the Company shall only be liable to the same extent as it would have been had the Insured complied with this condition.

Upon notice that any aggregate limit of liability under any policy of underlying insurance has been exhausted, the Named Insured shall immediately make all reasonable efforts to reinstate such limits. The Named Insured shall give the Company written notice as soon as practicable of any change in the scope of coverage or in the amount or limits of insurance under any policy of underlying insurance, and of the termination of any coverage or exhaustion of aggregate limits of any underlying insurer's liability.

(c) Inspection and Audit. The Company shall be permitted but not obligated to inspect the Insured's property and operations at any time. Neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute any undertaking, on behalf of or for the benefit of the Insured or others, to determine or warrant that such property or operations are safe or healthful, or are in compliance with any law, rule or regulation. The Company may examine and audit the Insured's books and records at any time during the policy period and within three years after the final termination of this policy or within one year after final settlement of all claims arising out of personal injury, property damage or advertising liability which occurs during the period of this policy, as far as they relate to the subject matter of this insurance.

(d) Insured's Duties in the Event of Occurrence, Claim or Suit. In the event of an occurrence, which in the judgement of the Insured is likely to involve the liability of the Company hereunder, written notice containing particulars sufficient to identify the Insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the Insured to the Company as soon as practicable.

If claim is made or suit is brought against the Insured, the Insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representatives.

The Insured shall cooperate with the Company and, upon the Company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the Insured because of personal injury, property damage or advertising liability with respect to which insurance is afforded under this policy; and the insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses.

(e) Appeals. In the event the Insured or the Insured's underlying insurers elect not

to appeal a judgment in excess of the Insured's primary limit, the Company may elect to make such appeal at its cost and expense, and shall be liable for the taxable costs and disbursements and interest incidental thereto, but in no event shall the liability of the Company for ultimate net loss exceed the amount set forth in Item 6(a) of the Declarations for any one occurrence.

(f) Loss Payable. Liability under this policy with respect to any occurrence shall not attach unless and until the Insured, or the Insured's underlying insurer, shall have paid the amount of the Insured's primary limit on account of such occurrence. The Insured shall make a definite claim for any loss for which the Company may be liable under this policy within twelve (12) months after the amount of such loss have been paid an amount of ultimate net loss in excess of the Insured's primary limit or after the Insured's liability shall have been fixed and rendered certain either by final judgment against the Insured after actual trial or by written agreement of the Insured, the claimant, and the Company. If any subsequent payments shall be made by the Insured on account of the same occurrence, additional claims shall be made similarly from time to time. Such losses shall be due and payable within thirty (30) days after they are respectively claimed and proven in conformity with this policy.

(g) Bankruptcy and Insolvency. In the event of the bankruptcy or insolvency of the Insured or any entity comprising the Insured, the Company shall not be relieved thereby of the payment of any claims hereunder because of such bankruptcy or insolvency.

(h) Other Insurance. The insurance afforded by this policy shall apply in excess of all other insurance or indemnity available to the Insured except insurance or indemnity purchased by the Named Insured specifically to apply in excess of the Company's limit of liability hereunder.

(i) Subrogation. In case of any payment hereunder, the Company will act in concert with all other interests (including the Insured) concerned, in the exercise of the Insured's rights of recovery therefor against any person or organization. The apportioning of any amounts which may be so recovered shall follow the principle that any interests (including the Insured) that shall have paid an amount over and above any payment hereunder, shall first be reimbursed up to the amount paid by them; the Company is then to be reimbursed out of any balance then remaining up to the amount paid hereunder; lastly, the interests (including the Insured) of whom this coverage is in excess are entitled to claim the residue, if any. Expenses necessary to the recovery of any such amounts shall be apportioned between the interest (including the Insured) concerned, in the ratio of their respective recoveries as finally settled.

(j) Changes. Notice to or knowledge possessed by any person shall not effect a waiver or a change in any part of this policy or estop the Company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part hereof, signed by the Company.

(k) Assignment. Assignment of interest under this policy shall not bind the Company unless and until its consent is endorsed hereon.

## X. Cancellation

This policy may be cancelled by the Insured by surrender thereof to the Company or by mailing to the Company written notice stating when thereafter such cancellation shall be effective. This policy may be cancelled by the Company by mailing to the Insured at the last address known by the Company, written notice stating when, not less than thirty (30) days or as soon thereafter as permitted by law, such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date of such cancellation stated in the notice shall become the end of the policy period.

Irrespective of any statements contained herein to the contrary, this policy may be cancelled by the Company, for non-payment of any unpaid portion of the premium, by mailing to the Insured at the last mailing address known by the Company, written notice stating when, not less than ten (10) days or as soon thereafter as permitted by law, such cancellation shall be effective.

If cancellation is at the request of the Insured, earned premium shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premium shall be computed pro rata. Notice by the Company to the first Named Insured, if more than one, shall be deemed notice to any other interests included as an Insured. Premium adjustment may be made either at the time of cancellation or as soon thereafter as practicable, but payment or tender of unearned premium is not a condition of cancellation.

IN WITNESS WHEREOF, the Company has caused this policy to be signed by its President and Secretary and countersigned on the Declarations page by an authorized representative of the Company.

MIDLAND INSURANCE COMPANY

Secretary

President

AWC 0046178

Policy Number  UL 715,53
Renewal of   UL 703764

**UMBRELLA POLICY**

 **MIDLAND INSURANCE COMPANY**

(a stock company, herein called the Company)
160 Water St., New York, New York 10038

## DECLARATIONS

1. Named Insured:

   A. W. CHESTERTON COMPANY

   Producer:

   Fred S. James & Co. - Boston
   #8532500

2. Address    MIDDLESEX INDUSTRIAL PARK
   ROUTE 1-93
   STONEHAM, MASSACHUSETTS   02180

3. Policy Period:   From 12:01 A.M.,  **February 1, 1981**
                    to    12:01 A.M.   **February 1, 1982**
   standard time at the address of the Insured as stated herein

4. Schedule of Underlying Insurance:  See Endorsement No. 1

5. Retained Limit:         $ 10,000.

6. Limit of Liability:

   (a) $ 5,000,000  each occurrence
   (b) $ 5,000,000  aggregate

7. Premium:
   (a) Flat Charge        $ 10,000.
   (b) Deposit Premium:   $

   (c) Minimum Premium:   $
   (d) Rate:
   (e) Audit Reporting Period:
       Annual unless otherwise stated.

AS:tl
2/12/81

Countersignature                    Date

MIDLAND INSURANCE COMPANY

AWC 0046179

UND 200A Rev. 12/78

ORIGINAL

# ENDORSEMENT

Effective Date _____ February 1, 1981 _____

| Carrier | Coverage | Limits |
|---|---|---|
| Liberty Mutual (U.S.) | A. Employers' Liability | $100,000  one accident |
| Liberty Mutual (U.S. & Canada) | B. Comprehensive Auto Liability | Bodily Injury Liability<br>$250,000  each person<br>500,000  each occurrence<br><br>Property Damage Liability<br>$100,000  each occurrence |
| Liberty Mutual (Mass.) | Comprehensive Auto Liability | Bodily Injury Liability<br>$250,000  each person<br>500,000  each occurrence<br><br>Property Damage Liability<br>$100,000  each occurrence |
| Liberty Mutual (U.S.) | C. Comprehensive General Liability | Bodily Injury and Property Damage Liability Combined Single Limit<br>$500,000  each occurrence<br>500,000  aggregate |
| Federal Insurance Co. (Canada) | Comprehensive General Liability | Bodily Injury and Property Damage Liability Combined<br>$2,000,000  each occurrence<br>2,000,000 aggregate |
| Federal Insurance Co.  (Canada) | D. Employers' Liability | $100,000  one accident |

Effective _____ February 1, 1981 _____ 12:01 AM Standard Time, this Endorsement No. _____ 1 – Page 1 _____

attached to and made a part of Policy No. __ UL 715793 __ of __ MIDLAND INSURANCE COMPANY __

issued to ____ A. W. CHESTERTON COMPANY ____

(The information above is required only when this endorsement is issued subsequent to preparation of the policy.)

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of this policy other than as above stated.

AS:tl – 2/12/81

By _____
Authorized Representative

**AWC 0046180**

CM1 19 (7/78) 15M                    ORIGINAL

# ENDORSEMENT

Effective Date __February 1, 1981__

| Carrier | | Coverage | Bodily Injury and Property Damage Liability Combined |
|---|---|---|---|
| Federal Insurance Co. (Canada) | E. | Auto Non Ownership | $2,000,000   each occurrence  2,000,000   aggregate |
| USAIG | F. | Aircraft Non Ownership | Bodily Injury and Property Damage Liability Combined  $5,000,000   each occurrence  5,000,000   aggregate |
| Continental F & C (Grand Cayman) | G. | Employers' Liability | $100,000   one accident |
| Continental F & C (Grand Cayman) | H. | Comprehensive Auto Liability | Bodily Injury and Property Damage Liability Combined  $500,000   each occurrence  500,000   aggregate |
| Continental F & C (Grand Cayman) | I. | Comprehensive General Liability | Bodily Injury and Property Damage Liability Combined  $500,000   each occurrence  500,000   aggregate |

Effective __February 1, 1981__ 12:01 AM Standard Time, this Endorsement No. __1 – Page 2__

attached to and made a part of Policy No. __UL 715793__ of __MIDLAND INSURANCE COMPANY__

issued to __A. W. CHESTERTON COMPANY__

(The information above is required only when this endorsement is issued subsequent to preparation of the policy.)

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of this policy other than as above stated.

AS:tl – 2/12/81

By _____
Authorized Representative

AWC 0046181

CMI 19 (7/78) 15M

ORIGINAL

# ENDORSEMENT

## FOLLOWING-FORM FOREIGN LIABILITY

In consideration of the premium charged, it is hereby agreed that this policy shall not apply to any claim arising out of an occurrence outside of the United States nor to any suit brought in a jurisdiction outside of the United States unless such liability is covered by valid and collectible underlying insurance, as listed below, for the full limits shown therein, and then only for such hazards for which coverage is afforded under said underlying insurance.

| CARRIER | COVERAGE | LIMITS |
|---|---|---|
| Fidelity & Casualty Company | Employer's Liability | $100,000 each accident |
| Continental Insurance Company | Automobile Liability | $500,000 B.I. & P.D. Combined Single Limit |
| Continental Insurance Company | Comprehensive General Liability | $500,000 B.I. & P.D. Combined Single Limit Except $100,000 Communist Country Suits |

Effective __February 1, 1981__ _____ 12:01 AM Standard Time, this Endorsement No. ____2____

attached to and made a part of Policy No. __UL 715793__ ___ of ___ MIDLAND INSURANCE COMPANY ___

issued to __A.W. CHESTERTON COMPANY__

(The information above is required only when this endorsement is issued subsequent to preparation of the policy.)

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of this policy other than as above stated.

AS:tl -2/12/81

_____
P̶ ̶wel, Secretary

By _____
Authorized Representative

_____
M.S. Chenault, President

AWC 0046182

Form UND 262 (11/80) 15M                    ORIGINAL

# ENDORSEMENT

### ERISA EXCLUSION

In consideration of the premium charged and notwithstanding anything contained herein to the contrary it is hereby agreed that such coverage as is afforded by this policy shall not apply to any claim or claims arising out of the Employee Retirement Income Security Act of 1974, Public Law 93-406, commonly referred to as the Pension Reform Act of 1974 and amendments thereto, or similar provisions of any Federal, State or Local Statutory Law or Common Law.

Effective _____ February 1, 1981 _____ 12:01 AM Standard Time, this Endorsement No. ___3___

attached to and made a part of Policy No. ___UL 715793_____ of ___MIDLAND INSURANCE COMPANY___

issued to ____A.W. CHESTERTON COMPANY_____ .

(The information above is required only when this endorsement is issued subsequent to preparation of the policy.)

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of this policy other than as above stated.

AS:tl - 2/12/81

By _____
Authorized Representative

**AWC 0046183**

CMI-U-125 (7/80)                                       ORIGINAL

# UMBRELLA POLICY

STOCK COMPANY

# MIDLAND INSURANCE COMPANY

160 Water St., New York, New York 10038

(a stock company, herein called the Company)



EXHIBIT
20
6/6/07

AWC 0046140

In consideration of the payment of the premium, in reliance upon the statements in the Declarations made a part hereof, and subject to all the terms of this policy, the Company agrees with the Insured named in Item 1 of the Declarations as follows:

## INSURING AGREEMENTS

**I. Coverage:** The Company hereby agrees to pay on behalf of the Insured such ultimate net loss in excess of the Insured's Primary Limit as the Insured sustains by reason of liability, imposed upon the Insured by law or assumed by the Insured under contract, for damages because of personal injury, property damage or advertising liability to which this policy applies, caused by an occurrence anywhere during the policy period.

**II. Defense:** If no other insurer has the right and duty to do so, the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such personal injury, property damage or advertising liability, even if any of the allegations of the suit are groundless, false or fraudulent, but the Company shall not be obligated to defend any suit after the Company's liability has been exhausted; provided that:

(a) In connection with the aforesaid right and duty to defend, the Company may make such investigation and settlement of any claim or suit as it deems expedient, including payment on behalf of the Insured of part or all of the Insured's primary limit. In the event of such payment of part or all of the Insured's primary limit, the Insured shall promptly reimburse the Company therefor upon notice of the action taken.

(b) If the Company is prevented by law or otherwise from defending the Insured as aforesaid, the Company will reimburse the Insured for defense costs and expenses incurred with the written consent of the Company.

(c) Amounts incurred by the Company in connection with defense of the Insured as aforesaid except settlements of claims and suits, are payable by the Company in addition to the Company's limit of liability.

When another insurer has the duty to defend the Insured against any such suit, the Company shall have the right at its own expense to associate with the Insured in the defense thereof, and the Insured shall cooperate fully with such insurer and the Company in all things in connection therewith.

## III. PERSONS OR ENTITIES INSURED:

(a) The Named Insured is the organization(s) named in the Declarations of this policy and includes:

(1) any subsidiary company (including subsidiaries thereof) and any other company under their control and active management at the inception of this policy;

(2) new organizations acquired by the Named Insured during the policy period, through consolidation, merger, purchase of the assets of, or assumption of control and active management; provided such acquisition or assumption is reported to the Company within ninety (90) days after it is effected and provided further such acquisition is endorsed on this policy. It is further agreed that the coverage afforded such new organization shall be subject to the same underlying insurance requirements as applicable to the Named Insured, and that the Insured shall pay any additional premium required because of the application of this coverage to such additional insured;

(3) if the Named Insured in the Declarations is a partnership or joint venture, any partner or member thereof is included as a Named Insured but only with respect to his liability as a partner or member of such partnership or joint venture;

(4) if the Named Insured in the Declarations is an individual, the person so designated and his spouse, if a resident of the same household, but only with respect to the conduct of a business of which he is a sole proprietor.

(b) Each of the following is an Insured under this policy to the extent set forth below:

(1) any person, organization, trustee or estate to whom or to which the Named Insured is obligated by virtue of a written contract or permit to provide insurance such as is afforded by the terms of this policy, but only with respect to operations by or on behalf of the Named Insured or to facilities of or facilities used by the Named Insured and then only to the extent of the coverage required by such contract and for the limits of liability specified in such contract, but in no event for insurance not afforded by this policy nor for limits of liability in excess of the applicable limits of liability of this policy;

(2) at the option of the Named Insured and subject to the terms of the coverage of this insurance, any additional Insured(s) included in the underlying insurance listed in Item 4 of the Declarations, but only to the extent that insurance is provided for such additional Insured(s) thereunder;

(3) except with respect to the ownership, maintenance or use, including loading or unloading, of automobiles or aircraft,

   (i) any officer, executive, employee, director or stockholder of the Named Insured while acting on behalf of such Named Insured;

   (ii) any person or organization while acting as real estate manager for the Named Insured;

(4) any person while using, with the permission of the Named Insured, any automobile or aircraft owned by, loaned to or hired for use by or on behalf of the Named Insured and any person or organization legally responsible for the use thereof, provided the actual operation or other actual use is within the scope of such permission, and any officer, director or stockholder of the Named Insured with respect to the use of an automobile or aircraft not owned by the Named Insured but only while such automobile or aircraft is being used in the business of the Named Insured. The insurance with respect to any person or organization other than the Named Insured does not apply under this paragraph (4):

   (i) to any person or organization, or to any agent or employee thereof, operating an automobile sales agency, repair shop, service station, storage garage or public parking place;

   (ii) to any automobile or aircraft hired by or loaned to the Named Insured, to the owner or a lessee (of whom the Named Insured is a sub-lessee) thereof other than the Named Insured, or to any agent or employee of such owner or lessee;

   (iii) to any manufacturer of aircraft, aircraft engines or aviation accessories, or any aviation sales, service or repair organization or airport or hangar operator or their respective employees or agents.

(c) As respects the coverage afforded under (a) and (b) above, it is agreed that:

(1) No person shall be an Insured under this policy with respect to personal injury to any fellow employee of such person injured in the course of his employment except with respect to personal injury for which liability insurance is afforded to such person by a policy of underlying insurance listed in Item 4 of the Declarations; and

(2) This indemnity does not apply to personal injury, property damage or advertising liability arising out of:

   (i) the conduct of any partnership or joint venture of which the Insured is a partner or member and which is not named in Item 1 of the Declarations, or

   (ii) if a Named Insured is or includes a partnership, an automobile owned

Und 200 Rev. 10/79

by or registered in the name of a partner thereof, except insofar as coverage is available to such Named Insured under the underlying insurance listed in Item 4 of the Declarations.

**IV. Insured's Primary Limit:** The Insured's primary limit for each occurrence shall be the amount of ultimate net loss equal to:

(a) With respect to damages covered by the underlying insurance listed in Item 4 of the Declarations, the sum of:

    (1) the amount of the applicable limits of such insurance, and

    (2) the amount recoverable by the Insured under any other insurance available to the Insured; and

(b) With respect to damages not covered by the underlying insurance listed in Item 4 of the Declarations, the greater of:

    (1) the amount recoverable by the Insured under any other insurance available to the Insured, or

    (2) the amount stated in Item 5 of the Declarations.

In the event of a reduction or exhaustion of the aggregate limit of liability under Item 4 of the Declarations, this policy shall:

(a) In the event of a reduction, pay the excess of the reduced underlying limit;

(b) In the event of exhaustion, continue in force as underlying insurance.

The underlying insurance listed in Item 4 of the Declarations shall be deemed to be effective to the full extent of the limits stated therein irrespective of whether such underlying insurance is in force when the occurrence takes place, irrespective of any defense which the underlying insurer may assert because of failure to comply with any condition of its policy and irrespective of the inability of the underlying insurer to pay by reason of bankruptcy or insolvency.

**V. Company's Limit of Liability:** Regardless of the number of:

(a) Insured's under this policy;

(b) Persons or organizations who sustain personal injury, property damage or advertising liability; or

(c) Claims made or suits brought on account of personal injury, property damage or advertising liability, the Company's liability is limited as follows:

Each Occurrence—The limit of liability stated in Item 6(a) of the Declarations as applicable to "each occurrence" is the limit of the Company's liability for all ultimate net loss to which this policy applies as the result of any one occurrence.

Aggregate—Subject to the above provisions respecting "each occurrence" the total liability of the Company for all ultimate net loss and loss to which this policy applies and described in any of the following subparagraphs shall not exceed the "aggregate" limit of liability stated in Item 6(b) of the Declarations:

(a) All property damage;

(b) All personal injury or property damage included within either the products hazard or the completed operations hazard;

(c) All advertising liability;

(d) All occupational disease sustained by all employees of insureds arising out of and in the course of employment; or

(e) All occurrences arising out of any hazard for which an aggregate limit of liability applies in the underlying policies.

If this policy is issued for more than one year, this "aggregate" limit of liability applies separately to each consecutive annual period of this policy or, if the consecutive period is less than twelve months, to such period of less than twelve months.

For the purpose of determining the limit of the Company's liability:

(a) All personal injury or property damage arising out of continuous or repeated exposure to substantially the same conditions shall be considered as arising out of one occurrence;

(b) With respect to advertising liability, all injury arising out of any advertisement, publicity article, broadcast or telecast or any combination thereof involving the same injurious material or act, regardless of the frequency of repetition thereof or the number or kind of media used, whether claim is made by one or more persons, shall be considered as arising out of one occurrence.

**VI. Definitions:** When used in this policy (including endorsements forming a part hereof):

(a) "advertising liability" means libel, slander, defamation, infringement of copyright, title or slogan, piracy, unfair competition, idea misappropriation or invasion of rights of privacy, arising out of the Insured's advertising activities;

(b) "completed operations hazard" includes personal injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the personal injury or property damage occurs after such operations have been completed or abandoned and occurs away from

premises owned by or rented to the Named Insured. "Operations" include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

    (1) when all operations to be performed by or on behalf of the Named Insured under the contract have been completed;

    (2) when all operations to be performed by or on behalf of the Named Insured at the site of the operations have been completed; or

    (3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise completed shall be deemed completed. The completed operations hazard does not include personal injury or property damage arising out of:

    (i) operations in connection with the transportation of property, unless the personal injury or property damage arises out of a condition in or on a vehicle created by the loading or unloading thereof; or

    (ii) the existence of tools, uninstalled equipment or abandoned or unused materials.

(c) "Insured" means any person or organization qualifying as an Insured under the provisions of Section III hereof. The indemnity afforded applies separately to each Insured against whom claim is made or suit is brought, but the application of the limits of the Company's liability;

(d) "Named Insured" means the organization(s) named in the Declarations of this policy. The word "Insured" includes the Named Insured;

(e) "Named Insured's products" means goods or products manufactured, sold, handled or distributed by the Named Insured or by others trading under his name, including any container thereof (other than a vehicle), but "Named Insured's products" shall not include a vending machine or any property other than such container, rented or located for use of others but not sold;

(f) "occurrence" means an accident, happening or event, including continuous or repeated exposure to conditions, which results in personal injury, property damage or advertising liability neither expected nor intended from the standpoint of the Insured. All such exposure arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence;

(g) "personal injury" means:

    (1) bodily injury, including death at any time resulting therefrom;

    (2) mental anguish, mental injury or shock;

    (3) disease, sickness or disability;

    (4) assault and battery not committed by or at the direction of the Insured, unless committed for the purpose of protecting persons or property;

    (5) false arrest, detention or imprisonment, wrongful entry or eviction or other invasion of private occupancy, malicious prosecution or humiliation; except that maliciously inflicted by, at the direction of, or with the consent of the Insured;

    (6) the publication or utterance of a libel or slander or other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy; except that maliciously published or uttered by, at the direction of, or with consent of the Insured and except that contained in any advertisement, publicity article, broadcast or telecast and arising out of an Insured's advertising activities.

(h) "products hazard" includes personal injury and property damage arising out of the Named Insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the personal injury or property damage occurs away from premises owned by or rented to the Named Insured and after physical possession of such products has been relinquished to others;

(i) "property damage" means:

    (1) physical injury to or destruction of tangible property, which occurs during the policy period, including loss of use thereof at any time resulting therefrom; or

    (2) loss of use of tangible property, which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period;

(j) "ultimate net loss" means the total sum which the Insured, or any company as his insurer, or both, becomes obligated to pay as damages, including damages for care and loss of services, because of personal injury, property damage or advertising liability, either through adjudication or compromise with the written consent of the Company.

AWC 0046141

## CONDITIONS

IX. This policy is subject to the following conditions:

(a) Premium. If the Premium is stated in the Declarations as a flat premium charge the premium is not subject to adjustment except as hereinafter provided.

If the premium is stated in the Declarations as other than a flat premium charge, the deposit premium is an advance premium which shall be credited to the amount of the earned premium due at the end of the policy period.

At the close of each period (or part thereof terminating with the end of the policy period) designated in the Declarations as the audit reporting period the earned premium for such period shall be computed in accordance with the rates and minimum premium stated in the Declarations, and upon notice thereof to the Named Insured shall become due and payable. If the total earned premium for the policy period is less than the premium previously paid, the Company shall return to the Named Insured the unearned portion paid by the Named Insured.

Appropriate additional premium shall be payable with respect to any additional Named Insured and any person who or organization which becomes an Insured under the provisions of Section III (a).

The Named Insured shall maintain records of such information as is necessary for the premium computation, and shall send copies of such records to the Company at the end of the policy period and at such times during the policy period as the Company may direct.

(b) Maintenance of Underlying Insurance. The underlying insurance listed in Item 4 of the Declarations or renewals or replacement thereof not more restrictive, shall be maintained in full effect during the currency of this policy except for any reduction of the aggregate limit or limits applicable thereto solely by payment of claims in respect of personal injury, property damage or advertising liability which occurs during the period of this policy.

Failure of the Insured to comply with the foregoing shall not invalidate this policy but in the event of such failure, the Company shall only be liable to the same extent as it would have been had the Insured complied with this condition.

Upon notice that any aggregate limit of liability under any policy of underlying insurance has been exhausted, the Named Insured shall immediately make all reasonable efforts to reinstate such limits. The Named Insured shall give the Company written notice as soon as practicable of any change in the scope of coverage or in the amount or limits of insurance under any policy of underlying insurance, and of the termination of any coverage or exhaustion of aggregate limits of any underlying insurer's liability.

(c) Inspection and Audit. The Company shall be permitted but not obligated to inspect the Insured's property and operations at any time. Neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute any undertaking, on behalf of or for the benefit of the Insured or others, to determine or warrant that such property or operations are safe or healthful, or are in compliance with any law, rule or regulation. The Company may examine and audit the Insured's books and records at any time during the policy period and within three years after the final termination of this policy or within one year after final settlement of all claims arising out of personal injury, property damage or advertising liability which occurs during the period of this policy, as far as they relate to the subject matter of this insurance.

(d) Insured's Duties in the Event of Occurrence, Claim or Suit. In the event of an occurrence, which in the judgement of the Insured is likely to involve the liability of the Company hereunder, written notice containing particulars sufficient to identify the Insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the Insured to the Company as soon as practicable.

If claim is made or suit is brought against the Insured, the Insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representatives.

The Insured shall cooperate with the Company and, upon the Company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the Insured because of personal injury, property damage or advertising liability with respect to which insurance is afforded under this policy; and the insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses.

(e) Appeals. In the event the Insured or the Insured's underlying insurers elect not

to appeal a judgment in excess of the Insured's primary limit, the Company may elect to make such appeal at its cost and expense, and shall be liable for the taxable costs and disbursements and interest incidental thereto, but in no event shall the liability of the Company for ultimate net loss exceed the amount set forth in Item 6(a) of the Declarations for any one occurrence.

(f) Loss Payable. Liability under this policy with respect to any occurrence shall not attach unless and until the Insured, or the Insured's underlying insurer, shall have paid the amount of the Insured's primary limit on account of such occurrence. The Insured shall make a definite claim for any loss for which the Company may be liable under this policy within twelve (12) months after the Insured shall have been paid an amount of ultimate net loss in excess of the Insured's primary limit or after the Insured's liability shall have been fixed and rendered certain either by final judgment against the Insured after actual trial or by written agreement of the Insured, the claimant, and the Company. If any subsequent payments shall be made by the Insured on account of the same occurrence, additional claims shall be made similarly from time to time. Such losses shall be due and payable within thirty (30) days after they are respectively claimed and proven in conformity with this policy.

(g) Bankruptcy and Insolvency. In the event of the bankruptcy or insolvency of the Insured or any entity comprising the Insured, the Company shall not be relieved thereby of the payment of any claims hereunder because of such bankruptcy or insolvency.

(h) Other Insurance. The insurance afforded by this policy shall apply in excess of all other insurance or indemnity available to the Insured except insurance or indemnity purchased by the Named Insured specifically to apply in excess of the Company's limit of liability hereunder.

(i) Subrogation. In case of any payment hereunder, the Company will act in concert with all other interests (including the Insured) concerned, in the exercise of the Insured's rights of recovery therefor against any person or organization. The apportioning of any amounts which may be so recovered shall follow the principle that any interests (including the Insured) that shall have paid an amount over and above any payment hereunder, shall first be reimbursed up to the amount paid by them; the Company is then to be reimbursed out of any balance then remaining up to the amount paid hereunder; lastly, the interests (including the Insured) of whom this coverage is in excess are entitled to claim the residue, if any. Expenses necessary to the recovery of any such amounts shall be apportioned between the interest (including the Insured) concerned, in the ratio of their respective recoveries as finally settled.

(j) Changes. Notice to or knowledge possessed by any person shall not effect a waiver or a change in any part of this policy or estop the Company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part hereof, signed by the Company.

(k) Assignment. Assignment of interest under this policy shall not bind the Company unless and until its consent is endorsed hereon.

X. Cancellation

This policy may be cancelled by the Insured by surrender thereof to the Company or by mailing to the Company written notice stating when thereafter such cancellation shall be effective. This policy may be cancelled by the Company by mailing to the Insured at the last address known by the Company, written notice stating when, not less than thirty (30) days or as soon thereafter as permitted by law, such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date of such cancellation stated in the notice shall become the end of the policy period.

Irrespective of any statements contained herein to the contrary, this policy may be cancelled by the Company, for non-payment of any unpaid portion of the premium, by mailing to the Insured at the last mailing address known by the Company, written notice stating when, not less than (10) days or as soon thereafter as permitted by law, such cancellation shall be effective.

If cancellation is at the request of the Insured, earned premium shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premium shall be computed pro rata. Notice by the Company to the first Named Insured, if more than one, shall be deemed notice to any other interests included as an Insured. Premium adjustment may be made either at the time of cancellation or as soon thereafter as practicable, but payment or tender of unearned premium is not a condition of cancellation.

IN WITNESS WHEREOF, the Company has caused this policy to be signed by its President and Secretary and countersigned on the Declarations page by an authorized representative of the Company.

MIDLAND INSURANCE COMPANY

Secretary

AWC 0046142

President

## EXCLUSIONS

**VII.** This policy shall not apply:

(a) to any obligation for which the Insured or any carrier as his insurer may be held liable under any worker's compensation, unemployment compensation or disability benefits law, or under any similar law;

(b) to the ownership, maintenance, use, loading or unloading of any aircraft or watercraft owned by the Named Insured, but this exclusion does not apply insofar as coverage is available to the Insured under the underlying insurance listed in Item 4 of the Declarations;

(c) to damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the Named Insured's products or work completed by or for the Named Insured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein;

(d) to loss of use of tangible property which has not been physically injured or destroyed, resulting from:

   (1) a delay in or lack of performancy by or on behalf of the Named Insured of any contract or agreement; or

   (2) the failure of the Named Insured's products or work performed by or on behalf of the Named Insured to meet the level of performance, quality, fitness or durability warranted or represented by the Named Insured;

but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the Named Insured's products or work performed by or on behalf of the Named Insured after such products or work have been put to use by any person or organization other than an Insured;

(e) to personal injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental; but in no event shall the coverage provided by this policy for Contamination and Pollution be broader than that provided by the Underlying Insurances set forth in the Schedule of Underlying Insurances;

(f) to property damage to:

(1) property owned by the Named Insured;

(2) the Named Insured's products arising out of such products or any part of such products; or

(3) work performed by or on behalf of the Named Insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith.

(g) with respect to liability assumed by the Insured under contract, to:

(1) property damage to property rented to, occupied or used by or in the care, custody or control of the Insured, if such liability is greater or broader than the Insured's common law or statutory liability therefor;

(h) with respect to advertising activities, to damages claimed for:

(1) breach of contract other than an implied contract to pay for the misappropriation of an idea;

(2) infringement or misappropriation of a trademark, service mark or trade name;

(3) incorrect description of any article or commodity; or

(4) mistake in advertised price;

(i) to any claim or claims arising out of the Employee Retirement Income Security Act of 1974, Public Law 93-406, commonly referred to as the Pension Reform Act of 1974 and amendments thereto, or similar provisions of any Federal, State or Local Statutory Law or Common Law;

(j) to any claim or claims made by or against the Insured with respect to No-Fault, Personal Injury Protection or Uninsured Motorists;

(k) except with respect to occurrences taking place in the United States of America, its territories or possessions or Canada, to any liability of the Insured directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalization or requisition or destruction of or damage to property by or under the order of any government or public or local authority, with respect to any liability assumed by the Insured under any contract or agreement.

## NUCLEAR INCIDENT EXCLUSION CLAUSE

**VIII.** It is agreed this policy shall not apply to personal injury or property damage:

(a) with respect to which an Insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b) resulting from the hazardous property of nuclear material and with respect to which:

(1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

(2) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization; or

(c) resulting from the hazardous properties of nuclear material, if:

(1) the nuclear material:

   (i) is at any nuclear facility owned by, or operated by or on behalf of, an Insured, or

   (ii) has been discharged or dispersed therefrom; or

(2) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

(3) the personal injury or property damage arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this subparagraph (3) applies only to property damage to property at such nuclear facility.

As used herein; "hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or by-product material; "source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material:

(1) containing by-product material; and

(2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under subparagraph (a) or (b) thereof; "nuclear facility" means:

(a) any nuclear reactor;

(b) any equipment or device designed or used for:

(1) separating the isotopes of uranium or plutonium;

(2) processing or utilizing spent fuel; or

(3) handling, processing or packaging waste;

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material; "property damage" includes all forms of radioactive contamination of property.

AWC 0046143

Policy Number  UL 716482
Renewal of     UL 715793                    UMBRELLA POLICY



# MIDLAND INSURANCE COMPANY

(a stock company, herein called the Company)
160 Water St., New York, New York 10038

## DECLARATIONS

**1. Named Insured:**

    A.W. CHESTERTON

**Producer:**

    #8532500
    Fred S.James

**2. Address**

    MIDDLESEX INDUSTRIAL PARK
    ROUTE #193
    STONEHAM, MASSACHUSETTS  02180

**3. Policy Period:**  From 12:01 A.M.,  FEBRUARY 1, 1982
              to    12:01 A.M.,  FEBRUARY 1, 1983
              standard time at the address of the Insured as stated herein

**4. Schedule of Underlying Insurance:**  See Endorsement No. 1

**5. Retained Limit:**            $  10,000.

**6. Limit of Liability:**

    (a) $ 5,000,000.    each occurrence
    (b) $ 5,000,000.    aggregate

**7. Premium:**

    (a) Flat Charge      $ 7,500.
    (b) Deposit Premium:  $

    (c) Minimum Premium:  $
    (d) Rate:
    (e) Audit Reporting Period:
        Annual unless otherwise stated.

AWC 0046187

MIDLAND INSURANCE COMPANY

        MB/rc   2-27-82

Countersignature                    Date

UND 200A Rev. 12/78

ORIGINAL

# ENDORSEMENT

| CARRIER | | COVERAGE | LIMITS |
|---|---|---|---|
| Liberty Mutual (U.S.) | A. | Employers' Liability | $100,000. one accident |
| Liberty Mutual (U.S. & Canada) | B. | Comprehensive Auto Liability | Bodily Injury Liability $250,000. each person $500,000. each occurrence<br><br>Property Damage Liability $100,000. each occurrence |
| Liberty Mutual (Mass.) | | Comprehensive Auto Liability | Bodily Injury Liability $250,000. each person $500,000. each occurrence<br><br>Property Damage Liability $100,000. each occurrence |
| Liberty Mutual (U.S.) | C. | Comprehensive General | Bodily Injury and Property Damage Liability Combined Single Limit $500,000. each occurrence $500,000. aggregate |
| Federal Insurance Co. (Canada) | | Comprehensive General Liability | Bodily Injury and Property Damage Liability Combined $2,000,000. each occurrence $2,000,000. aggregate |
| Federal Insurance Co. (Canada) | D. | Employers' Liability | $100,000. one accident |

FEBRUARY 1, 1982

Effective _____ 12:01 AM Standard Time, this Endorsement No. 1  —PAGE -1- of 2

attached to and made a part of Policy No. _____UL716482_____ of ___MIDLAND INSURANCE COMPANY___

issued to _____A.W. CHESTERTON, MIDDLESEX INDUSTRIAL PARK_____

(The information above is required only when this endorsement is issued subsequent to preparation of the policy.)

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of this policy other than as above stated.

MB/rc  2-27-82

_____
Fred A. Koenig, Secretary

By _____
Authorized Representative

_____
James P. Craig, President

AWC 0046188

# ENDORSEMENT

| CARRIER | | COVERAGE | LIMITS |
|---------|---|----------|--------|
| Federal Insurance Co. | E. | Auto<br>Non Ownership | Bodily Injury and Property<br>Damage Liability Combined<br>$2,000,000. each occurrence<br>$2,000,000. aggregate |
| USAIG | F. | Aircraft<br>Non Ownership | Bodily Injury and Property<br>Damage Liability Combined<br>$5,000,000. each occurrence<br>$5,000,000. aggregate |
| Continental F & C<br>(Grand Cayman) | G. | Employers'<br>Liability | $100,000.  One Accident |
| Continental F & C | H. | Comprehensive<br>Auto Liability | Bodily Injury and Property<br>Damage Liability Combined<br>$500,000.  each occurrence<br>$500,000.  aggregate |
| Continental F & C<br>(Grand Cayman) | I. | Comprehensive<br>General<br>Liability | Bodily Injury and Property<br>Damage Liability Combined<br>$500,000.  each occurrence<br>$500,000.  aggregate |

Effective _____ FEBRUARY 1, 1982 _____ 12:01 AM Standard Time, this Endorsement No. ____ 1 - PAGE -2-

attached to and made a part of Policy No. _____ UL716482 _____ of _____ MIDLAND INSURANCE COMPANY

issued to _____ A.W. CHESTERTON MIDDLESEX INDUSTRIAL PARK _____

(The information above is required only when this endorsement is issued subsequent to preparation of the policy.)

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of this policy other than as above stated.

MB/rc 2-27-82

_Fred A. Koernig, Secretary_

_James P. Craig, President_

By _____

Authorized Representative

**AWC 0046189**

# ENDORSEMENT

<u>FOLLOWING-FORM FOREIGN LIABILITY</u>

In consideration of the premium charged, it is hereby agreed that this policy shall not apply to any claim arising out of an occurrence outside of the United States nor to any suit brought in a jurisdiction outside of the United States unless such liability is covered by valid and collectible underlying insurance, as listed below, for the full limits shown therein, and then only for such hazards for which coverage is afforded under said underlying insurance.

| CARRIER | COVERAGE | LIMITS |
|---|---|---|
| Fidelity & Casualty Company | Employer's Liability | $100,000. each accident |
| Continental Insurance | Automobile Liability | $500,000. BI & PD Combined Single Limit |
| Continental Insurance Company | Comprehensive General Liability | $500,000. BI & P.D. Combined Single Limit Except $100,000. Communist Country Suits |

Effective _____February 1, 1982_____ 17:01 AM Standard Time, this Endorsement No. _2_
attached to and made a part of Policy No. ___UL716482___ of ___MIDLAND INSURANCE COMPANY___
issued to ___A.W. CHESTERTON COMPANY___

(The information above is required only when this endorsement is issued subsequent to preparation of the policy.)

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of this policy other than as above stated.

MB/rc 2-27-82

Fred A. Koerner, Secretary

James P. Craig, President

By _____

Authorized Representative

**AWC 0046190**

Form UND 262 (10/81) 25M          ORIGINAL          UND 449 (10/81)

# ENDORSEMENT

## ERISA EXCLUSION

In consideration of the premium charged and notwithstanding anything contained herein to the contrary it is hereby agreed that such coverage as is afforded by this policy shall not apply to any claim or claims arising out of the Employee Retirement Income Security Act of 1974, Public Law 93-406, commonly referred to as the Pension Reform Act of 1974 and amendments thereto, or similar provisions of any Federal, State or Local Statutory Law or Common Law.

Effective ___FEBRUARY 1, 1982___ 12:01 AM Standard Time, this Endorsement No. ___3___

attached to and made a part of Policy No. ___UL716482___ of _MIDLAND INSURANCE COMPANY_

issued to ___A.W. CHESTERTON COMPANY___

(The information above is required only when this endorsement is issued subsequent to preparation of the policy.)

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of this policy other than as above stated.

MB/rc 2-27-82

By _____
Authorized Representative

**AWC 0046191**

CMI-U-125 (7/80)

ORIGINAL

# ENDORSEMENT

### NEW YORK AMENDATORY ENDORSEMENT

It is agreed that the policy is amended as follows:

The following paragraph is added to Section II – Defense, (a):

> ""Solely as respects to the coverage provided under Section IV – Insured's Primary Limit, (b) the Company shall not settle any claims without the consent of the insured, but the Company shall have, at all times, the right to recommend a settlement of any claim.  If the Insured shall refuse to settle such claim pursuant to the Company's recommendation, the Company's liability for the claim shall not exceed the amount for which the claim could have been settled and any expenses incurred by the insured up to the date of the insureds refusal to settle the claim."

Section VI – Definition (g) (1) is eliminated in its entirety.

The following sentence is added to VI – Definitions, (j):

> "The term 'ultimate net loss' does not include (a) salaries or other renumeration to the Insured's employees or (b) any office expenses of the Insured."

The following is added to Section VII - Exclusions:

> (1)  to personal injury or property damage arising out of or in connection with any act of discrimination based on race, color, creed or national origin;
>
> (m)  to any act committed by or on behalf of the Insured with intent to cause personal injury or property damage;

The first paragraph of Section IX – Conditions (d) is deleted in its entirety and replaced by the following:

FEBRUARY 1, 1982                                                              4

Effective _____ 12:01 AM Standard Time, this Endorsement No. _____

attached to and made a part of Policy No. ___UL716482___ of _____MIDLAND INSURANCE COMPANY_____

issued to _A.W. CHESTERTON,MIDDLESEX INDUSTRIAL PARK_

(The information above is required only when this endorsement is issued subsequent to preparation of the policy.)

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of this policy other than as above stated.

MB/rc   2-27-82

Fred A. Koernig, Secretary

James P. Craig, President

By _____

Authorized Representative

**AWC 0046192**

Form UNO 262 (.0/81) 25M                          ORIGINAL

# ENDORSEMENT

UMBRELLA POLICY
NEW YORK AMENDATORY ENDORSEMENT
PAGE - 2 -

"Insured's Duties in the Event of Occurrence, Claim or Suit.

In the event of an occurrence, claim or suit; which in the judgement of the Insured is likely to involve the liability of the Company hereunder, written notice containing particulars sufficient to identify the Insured and also reasonably obtainable information with respect to the time, place and circumstances thereof and the names and addresses of the injured and of available witnesses, shall be given by or for the Insured to the Company or any of its authorized agents as soon as practicable;"

The phrase "after actual trial" is deleted from Section IX - Conditions (f), Loss Payable.

FEBRUARY 1, 1982                                                    4    PAGE 2 of 2

Effective _____ 12:01 AM Standard Time, this Endorsement No. _____

attached to and made a part of Policy No. ___ UL716482 _____ of ___ MIDLAND INSURANCE COMPANY

issued to A.W. CHESTERTON, MIDDLESEX INDUSTRIAL PARK

(The information above is required only when this endorsement is issued subsequent to preparation of the policy.)

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of this policy other than as above stated.

MB/rc 2-27-82

Fred A. Koerner, Secretary

By _____
Authorized Representative

James P. Craig, President

AWC 0046193

Form HD3 262 (16/81) 25M                              ORIGINAL

# ENDORSEMENT

In consideration of the premium charged, it is agreed that item 6
Limit of Liability is amended to read:

     a)  $10,000,000 each occurrence
     b)  $10,000,000 aggregate

Effective __February 1, 1982_____ 12:01 AM Standard Time, this Endorsement No. _____5_____

attached to and made a part of Policy No. ___UL 716482_____ of ____MIDLAND INSURANCE COMPANY___

issued to _A.W. Chesterton_

(The information above is required only when this endorsement is issued subsequent to preparation of the policy.)

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations
of this policy other than as above stated.

LHG:cmf
5/6/82

Fred A. Koernig, Secretary

By _____
     Authorized Representative

James P. Craig, President

AWC 0046194

ORIGINAL

# UMBRELLA POLICY



STOCK COMPANY



# MIDLAND INSURANCE COMPANY

### 160 Water St., New York, New York 10038

(a stock company, herein called the Company)



EXHIBIT

AWC 0046249

In consideration of the payment of the premium, in reliance upon the statements in the Declarations made a part hereof, and subject to all the terms of this policy, the Company agrees with the Insured named in Item 1 of the Declarations as follows:

## INSURING AGREEMENTS

**I. Coverage:** The Company hereby agrees to pay on behalf of the Insured such ultimate net loss in excess of the Insured's Primary Limit as the Insured sustains by reason of liability, imposed upon the Insured by law or assumed by the Insured under contract, for damages because of personal injury, property damage or advertising liability to which this policy applies, caused by an occurrence anywhere during the policy period.

**II. Defense:** If no other insurer has the right and duty to do so, the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such personal injury, property damage or advertising liability, even if any of the allegations of the suit are groundless, false or fraudulent, but the Company shall not be obligated to defend any suit after the Company's liability has been exhausted; provided that:

(a)   In connection with the aforesaid right and duty to defend, the Company may make such investigation and settlement of any claim or suit as it deems expedient, including payment on behalf of the Insured of part or all of the Insured's primary limit. In the event of such payment of part or all of the Insured's primary limit, the Insured shall promptly reimburse the Company therefor upon notice of the action taken.

(b)   If the Company is prevented by law or otherwise from defending the Insured as aforesaid, the Company will reimburse the Insured for defense costs and expenses incurred with the written consent of the Company.

(c)   Amounts incurred by the Company in connection with defense of the Insured as aforesaid except settlements of claims and suits, are payable by the Company in addition to the Company's limit of liability.

When another insurer has the duty to defend the Insured against any such suit, the Company shall have the right at its own expense to associate with the Insured in the defense thereof, and the Insured shall cooperate fully with such insurer and the Company in all things in connection therewith.

## III. PERSONS OR ENTITIES INSURED:

The Named Insured is the organization(s) named in the Declarations of this policy and includes:

(a)   any subsidiary company (including subsidiaries thereof) and any other company under their control and active management;

(b)   if the Named Insured in the Declarations is an individual, the person so designated and his spouse, if a resident of the same household, but only with respect to the conduct of a business of which he is sole proprietor;

(c)   if the Named Insured in the Declarations is a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof, but only with respect to his liability as such;

(d)   any person, organization, trustee or estate to whom or to which the Named Insured is obligated by virtue of a written contract or permit to provide insurance such as is afforded by the terms of this policy, but only with respect to operations by or on behalf of the Named Insured or to facilities of or facilities used by the Named Insured and then only to the extent of the coverage required by such contract and for the limits of liability specified in such contract, but in no event for insurance not afforded by this policy nor for limits of liability in excess of the applicable limits of liability of this policy;

(e)   any officer, executive, employee, director or stockholder of the Named Insured while acting within the scope of his duties as such;

(f)   at the option of the Named Insured, any other person or organization included as an additional insured under the provisions of the underlying insurance listed in Item 4 of the Declarations, and then only for the same coverage except limits of liability, afforded under such underlying insurance.

**IV. Insured's Primary Limit:** The Insured's primary limit for each occurrence shall be the amount of ultimate net loss equal to:

(a)   With respect to damages covered by the underlying insurance listed in Item 4 of the Declarations, the sum of:

(1)   the amount of the applicable limits of such insurance, and

(2)   the amount recoverable by the Insured under any other insurance available to the Insured; and

(b)   With respect to damages not covered by the underlying insurance listed in Item 4 of the Declarations, the greater of:

(1)   the amount recoverable by the Insured under any other insurance available to the Insured, or

(2)   the amount stated in Item 5 of the Declarations.

In the event of reduction or exhaustion of the aggregate limit of liability of the underlying insurance designated in Item 4 of the Declarations by reason of losses paid thereunder, this policy shall, subject to the Limits of Liability of this policy, and to the terms and conditions of the underlying insurance:

(a)   in the event of reduction, continue in force as excess of the reduced underlying insurance;

(b)   in the event of exhaustion, continue in force as underlying insurance.

The underlying insurance listed in Item 4 of the Declarations shall be deemed to be effective to the full extent of the limits stated therein irrespective of whether such underlying insurance is in force when the occurrence takes place, irrespective of any defense which the underlying insurer may assert because of failure to comply with any condition of its policy and irrespective of the inability of the underlying insurer to pay by reason of bankruptcy or insolvency.

**V. Company's Limit of Liability:** Regardless of the number of:

(a)   Insured's under this policy;

(b)   Persons or organizations who sustain personal injury, property damage or advertising liability; or

(c)   Claims made or suits brought on account of personal injury, property damage or advertising liability, the Company's liability is limited as follows:

Each Occurrence—The limit of liability stated in Item 6(a) of the Declarations as applicable to "each occurrence" is the limit of the Company's liability for all ultimate net loss to which this policy applies as the result of any one occurrence.

Aggregate—Subject to the above provisions respecting "each occurrence" the total liability of the Company for all ultimate net loss and loss to which this policy applies and described in any of the following subparagraphs shall not exceed the "aggregate" limit of liability stated in Item 6(b) of the Declarations:

(a)   All property damage;

(b)   All personal injury or property damage included within either the products hazard or the completed operations hazard;

(c)   All advertising liability;

(d)   All occupational disease sustained by all employees of insureds arising out of and in the course of employment; or

Und 200 Rev. 1-82

(e) All occurrences arising out of any hazard for which an aggregate limit of liability applies in the underlying policies.

If this policy is issued for more than one year, this "aggregate" limit of liability applies separately to each consecutive annual period of this policy or, if the consecutive period is less than twelve months, to such period of less than twelve months.

For the purpose of determining the limit of the Company's liability:

(a) All personal injury or property damage arising out of continuous or repeated exposure to substantially the same conditions shall be considered as arising out of one occurrence;

(b) With respect to advertising liability, all injury arising out of any advertisement, publicity article, broadcast or telecast or any combination thereof involving the same injurious material or act, regardless of the frequency of repetition thereof or the number or kind of media used, whether claim is made by one or more persons, shall be considered as arising out of one occurrence.

**VI. Definitions:** When used in this policy (including endorsements forming a part hereof):

(a) "advertising liability" means libel, slander, defamation, infringement of copyright, title or slogan, piracy, unfair competition, idea misappropriation or invasion of rights of privacy, arising out of the Insured's advertising activities;

(b) "completed operations hazard" includes personal injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the personal injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the Named Insured. "Operations" include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

(1) when all operations to be performed by or on behalf of the Named Insured under the contract have been completed;

(2) when all operations to be performed by or on behalf of the Named Insured at the site of the operations have been completed; or

(3) when that portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise completed shall be deemed completed. The completed operations hazard does not include personal injury or property damage arising out of:

(i) operations in connection with the transportation of property, unless the personal injury or property damage arises out of a condition in or on a vehicle created by the loading or unloading thereof; or

(ii) the existence of tools, uninstalled equipment or abandoned or unused materials.

(c) "Insured" means any person or organization qualifying as an Insured under the provisions of Section III hereof. The indemnity afforded applies separately to each Insured against whom claim is made or suit is brought, except with respect to the limits of the Company's liability;

(d) "Named Insured" means the organization(s) named in the Declarations of this policy. The word "Insured" includes the Named Insured;

(e) "Named Insured's products" means goods or products manufactured, sold, handled or distributed by the Named Insured or by others trading under his name, including any container thereof (other than a vehicle), but "Named Insured's products" shall not include a vending machine or any property other than such container, rented or located for use of others but not sold;

(f) "occurrence" means an accident, happening or event, including continuous or repeated exposure to conditions, which results in personal injury, property damage or advertising liability neither expected nor intended from the standpoint of the Insured. All such exposure arising out of Continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence;

(g) "personal injury" means:

(1) bodily injury, including death at any time resulting therefrom, and if arising from the foregoing, mental anguish, mental injury, shock or fright;

(2) disease, sickness or disability ;

(3) assault and battery not committed by or at the direction of the Insured, unless committed for the purpose of protecting persons or property;

(4) false arrest, detention or imprisonment, wrongful entry or eviction or other invasion of private occupancy, malicious prosecution or humiliation; except that maliciously inflicted by, at the direction of, or with the consent of the Insured;

(5) the publication or utterance of a libel or slander or other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy; except that maliciously published or uttered by, at the direction of, or with consent of the Insured and except that contained in any advertisement, publicity article, broadcast or telecast and arising out of an Insured's advertising activities;

(6) discrimination, unless insurance therefore is prohibited by law, except that intentionally committed by, at the direction of or with the knowledge or consent of the Insured.

(h) "products hazard" includes personal injury and property damage arising out of the Named Insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the personal injury or property damage occurs away from premises owned by or rented to the Named Insured and after physical possession of such products has been relinquished to others;

(i) "property damage" means:

(1) physical injury to or destruction of tangible property, which occurs during the policy period, including loss of use thereof at any time resulting therefrom; or

(2) loss of use of tangible property, which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period;

(j) "ultimate net loss" means the total sum which the Insured, or any company as his insurer, or both, becomes obligated to pay as damages, including damages for care and loss of services, because of personal injury, property damage or advertising liability, either through adjudication or compromise with the written consent of the Company.

## EXCLUSIONS

**VII. This policy shall not apply:**

(a) to any obligation for which the Insured or any carrier as his insurer may be held liable under any worker's compensation, unemployment compensation or disability benefits law, or under any similar law;

(b) to the ownership, maintenance, use, loading or unloading of any aircraft or watercraft owned by the Named Insured, but this exclusion does not apply insofar as coverage is available to the Insured under the underlying insurance listed in Item 4 of the Declarations;

(c) to damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the Named Insured's products or work completed by or for the Named Insured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein;

(d) to loss of use of tangible property which has not been physically injured or destroyed, resulting from:

(1) a delay in or lack of performancy by or on behalf of the Named Insured of any contract or agreement; or

(2) the failure of the Named Insured's products or work performed by or on behalf of the Named Insured to meet the level of performance, quality, fitness or durability warranted or represented by the Named Insured;

but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the Named Insured's products or work performed by or on behalf of the Named Insured after such products or work have been put to use by any person or organization other than an Insured;

(e) to personal injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental;

(f) to property damage to:

(1) property owned by the Named Insured;

(2) the Named Insured's products arising out of such products or any part of such products; or

(3) work performed by or on behalf of the Named Insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith.

AWC 0046250

(g) with respect to liability assumed by the Insured under contract, to:

  (1) property damage to property rented to, occupied or used by or in the care, custody or control of the Insured, if such liability is greater or broader than the Insured's common law or statutory liability therefor;

(h) with respect to advertising activities, to damages claimed for:

  (1) breach of contract other than an implied contract to pay for the misappropriation of an idea;

  (2) infringement or misappropriation of a trademark, service mark or trade name;

  (3) incorrect description of any article or commodity; or

  (4) mistake in advertised price;

(i) to any claim or claims arising out of the Employee Retirement Income Security Act of 1974, Public Law 93-406, commonly referred to as the Pension Reform Act of 1974 and amendments thereto, or similar provisions of any Federal, State or Local Statutory Law or Common Law;

(j) to any claim or claims made by or against the Insured with respect to No-Fault, Personal Injury Protection or Uninsured Motorists;

(k) except with respect to occurrences taking place in the United States of America, its territories or possessions or Canada, to any liability of the Insured directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalization or requisition or destruction of or damage to property by or under the order of any government or public or local authority, with respect to any liability assumed by the Insured under any contract or agreement.

## NUCLEAR INCIDENT EXCLUSION CLAUSE

VIII. It is agreed this policy shall not apply to personal injury or property damage:

(a) with respect to which an Insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liabilty Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b) resulting from the hazardous property of nuclear material and with respect to which:

  (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any amendatory thereof; or

  (2) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization; or

(c) resulting from the hazardous properties of nuclear material, if:

  (1) the nuclear material:

    (i) is at any nuclear facility owned by, or operated by or on behalf of, an Insured, or

    (ii) has been discharged or dispersed therefrom; or

  (2) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

  (3) the personal injury or property damage arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this subparagraph (3) applies only to property damage to property at such nuclear facility.

As used herein: "hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or by-product material; "source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material:

  (1) containing by-product material; and

  (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under subparagraph (a) or (b) thereof; "nuclear facility" means:

(a) any nuclear reactor;

(b) any equipment or device designed or used for:

  (1) separating the isotopes of uranium or plutonium;

  (2) processing or utilizing spent fuel; or

  (3) handling, processing or packaging waste;

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material; "property damage" includes all forms of radioactive contamination of property.

## CONDITIONS

IX. This policy is subject to the following conditions:

(a) Premium. If the Premium is stated in the Declarations as a flat premium charge the premium is not subject to adjustment except as hereinafter provided.

If the premium is stated in the Declarations as other than a flat premium charge, the deposit premium is an advance premium which shall be credited to the amount of the earned premium due at the end of the policy period.

At the close of each period (or part thereof terminating with the end of the policy period) designated in the Declarations as the audit reporting period the earned premium for such period shall be computed in accordance with the rates and minimum premium stated in the Declarations, and upon receipt thereof to the Named Insured shall become due and payable. If the total earned premium for the policy period is less than the premium previously paid, the Company shall return to the Named Insured the unearned portion paid by the Named Insured.

Appropriate additional premium shall be payable with respect to any additional Named Insured and any person who or organization which becomes an Insured under the provisions of Section III (a).

The Named Insured shall maintain records of such information as is necessary for the premium computation, and shall send copies of such records to the Company at the end of the policy period and at such times during the policy period as the Company may direct.

(b) Maintenance of Underlying Insurance. The underlying insurance listed in Item 4 of the Declarations or renewals or replacement thereof not more restrictive, shall be maintained in full effect during the currency of this policy except for any

reduction of the aggregate limit or limits applicable thereto solely by payment of claims in respect of personal injury, property damage or advertising liability which occurs during the period of this policy.

Failure of the Insured to comply with the foregoing shall not invalidate this policy but in the event of such failure, the Company shall only be liable to the same extent as it would have been had the Insured complied with this condition.

The Named Insured shall give the Company written notice as soon as practicable of any change in the scope of coverage or in the amount or limits of insurance under any policy of underlying insurance, and of the termination of any coverage or exhaustion of aggregate limits of any underlying insurer's liability.

(c) Inspection and Audit. The Company shall be permitted but not obligated to inspect the Insured's property and operations at any time. Neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute any undertaking, on behalf of or for the benefit of the Insured or others, to determine or warrant that such property or operations are safe or healthful, or are in compliance with any law, rule or regulation. The Company may examine and audit the Insured's books and records at any time during the policy period and within three years after the final termination of this policy or within one year after final settlement of all claims arising out of personal injury, property damage or advertising liability which occurs during the period of this policy, as far as they relate to the subject matter of this insurance.

(d) Insured's Duties in the Event of Occurrence, Claim or Suit. In the event of an occurrence, which in the judgement of the Insured is likely to involve the liability

AWC 0046251

of the Company hereunder, written notice containing particulars sufficient to identify the Insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the Insured to the Company as soon as practicable.

If claim is made or suit is brought against the Insured, the Insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representatives.

The Insured shall cooperate with the Company and, upon the Company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the Insured because of personal injury, property damage or advertising liability with respect to which insurance is afforded under this policy; and the insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses.

(e)  Appeals. In the event the Insured or the Insured's underlying insurers elect not to appeal a judgment in excess of the Insured's primary limit, the Company may elect to make such appeal at its cost and expense, and shall be liable for the taxable costs and disbursements and interest incidental thereto, but in no event shall the liability of the Company for ultimate net loss exceed the amount set forth in Item 6(a) of the Declarations for any one occurrence.

(f)  Loss Payable. Liability under this policy with respect to any occurrence shall not attach unless and until the Insured, or the Insured's underlying insurer, shall have paid the amount of the Insured's primary limit on account of such occurrence. The Insured shall make a definite claim for any loss for which the Company may be liable under this policy within twelve (12) months after the Insured shall have been paid an amount of ultimate net loss in excess of the Insured's primary limit or after the Insured's liability shall have been fixed and rendered certain either by final judgment against the Insured after actual trial or by written agreement of the Insured, the claimant, and the Company. If any subsequent payments shall be made by the Insured on account of the same occurrence, additional claims shall be made similarly from time to time. Such losses shall be due and payable within thirty (30) days after they are respectively claimed and proven in conformity with this policy.

(g)  Bankruptcy and Insolvency. In the event of the bankruptcy or insolvency of the Insured or any entity comprising the Insured, the Company shall not be relieved thereby of the payment of any claims hereunder because of such bankruptcy or insolvency.

(h)  Other Insurance. The insurance afforded by this policy shall apply in excess of all other insurance or indemnity available to the Insured except insurance or indemnity purchased by the Named Insured specifically to apply in excess of the Company's limit of liability hereunder.

(i)  Subrogation. In case of any payment hereunder, the Company will act in concert with all other interests (including the Insured) concerned, in the exercise of the Insured's rights of recovery therefor against any person or organization. The apportioning of any amounts which may be so recovered shall follow the principle that any interests (including the Insured) that shall have paid an amount over and above any payment hereunder, shall first be reimbursed up to the amount paid by them; the Company is then to be reimbursed out of any balance then remaining up to the amount paid hereunder; lastly, the interests (including the Insured) of whom this coverage is in excess are entitled to claim the residue, if any. Expenses necessary to the recovery of any such amounts shall be apportioned between the interest (including the Insured) concerned, in the ratio of their respective recoveries as finally settled.

(j)  Changes. Notice to or knowledge possessed by any person shall not effect a waiver or a change in any part of this policy or estop the Company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part hereof, signed by the Company.

(k)  Assignment. Assignment of interest under this policy shall not bind the Company unless and until its consent is endorsed hereon.

## X. Cancellation

This policy may be cancelled by the Insured by surrender thereof to the Company or by mailing to the Company written notice stating when thereafter such cancellation shall be effective. This policy may be cancelled by the Company by mailing to the Insured at the last address shown by the Company, written notice stating when, not less than thirty (30) days or as soon thereafter as permitted by law, such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date of such cancellation stated in the notice shall become the end of the policy period.

Irrespective of any statements contained herein to the contrary, this policy may be cancelled by the Company, for non-payment of any unpaid portion of the premium, by mailing to the Insured at the last mailing address known by the Company, written notice stating when, not less than ten (10) days or as soon thereafter as permitted by law, such cancellation shall be effective.

If cancellation is at the request of the Insured, earned premium shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premium shall be computed pro rata. Notice by the Company to the first Named Insured, if more than one, shall be deemed notice to any other interests included as an Insured. Premium adjustment may be made either at the time of cancellation or as soon thereafter as practicable, but payment or tender of unearned premium is not a condition of cancellation.

IN WITNESS WHEREOF, the Company has caused this policy to be signed by its President and Secretary and countersigned on the Declarations page by an authorized representative of the Company.

Secretary

MIDLAND INSURANCE COMPANY

President

AWC 0046252

Policy Number **UL** 7370_4
Renewal of    UL 716482

**UMBRELLA POLICY**

 **MIDLAND INSURANCE COMPANY**

(a stock company, herein called the Company)
160 Water St., New York, New York 10038

**DECLARATIONS**

1. Named Insured:

   A.W. CHESTRON COMPANY

   Producer:

   FRED S. JAMES & COMPANY
   8532700

2. Address

   MIDDLESEX INDUSTRIAL PARK
   ROUTE 193
   STONEHAM, MASSACHUSETTS   02180

3. Policy Period:   From 12:01 A.M.,   FEBRUARY 1, 1983
   to    12:01 A.M.,   FEBRUARY 1, 1984
   standard time at the address of the Insured as stated herein

4. Schedule of Underlying Insurance:   See Endorsement No. 1

5. Retained Limit:    $ 10,000.

6. Limit of Liability:

   (a) $ 10,000,000 each occurrence
   (b) $ 10,000,000 aggregate

7. Premium:

   (a) Flat Charge    $ 7,000.
   (b) Deposit Premium:    $

   (c) Minimum Premium:   $
   (d) Rate:
   (e) Audit Reporting Period:
       Annual unless otherwise stated.

MB : mw
3/2/83

_____
Countersignature          Date

MIDLAND INSURANCE COMPANY

_____

UND 200A Rev. 11/81

ORIGINAL

**AWC 0046253**

# ENDORSEMENT

Schedule of Underlying Insurance
Item 4

| | Limits |
|---|---|
| Workers' Compensation Company | |
| Liberty Mutual (U.S.) | $100,000 E.L. |
| Automobile Liability Company | |
| Liberty Mutual U.S. & Canada | $250/500 B.I. $100,000 P.D. |
| includes Non-ownership & hired car | |
| Mass. Auto Company | |
| Liberty Mutual | $250/500 B.I. $100,000 P.D. |
| Comprehensive General Liability Company | |
| Liberty Mutual (U.S.) Federal* (Canada) includes Non-owned auto | $500,000 C.S.L. $ 50,000 Fire Legal $1,000,000 B.I. & P.D. Combined Single Limit $ 50,000 Tenants Liability |

*Includes hired car and non-ownership

Aircraft Non-Ownership
Company

USAIG                                              $5,000,000.

---

Effective ___ FEBRUARY 1, 1983 ___ 12:01 AM Standard Time  this Endorsement No. 1 PAGE 1 OF 2

attached to and made a part of Policy No. UL 737094 ___ of ___ MIDLAND INSURANCE COMPANY

issued to ___ A.W. CHESTRON COMPANY

(The information above is required only when this endorsement is issued subsequent to preparation of the policy.)

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of this policy other than as above stated.

MB:mw
3/2/83

_Fred A. Koernig, Secretary_

By _____

_Authorized Representative_

_James P. Craig, President_

**AWC 0046254**

Form UND 262 (9/82) 20M                          ORIGINAL

# ENDORSEMENT

Schedule of Underlying Insurance
Item 4

Workers' Compensation

| Company | Limits |
| --- | --- |
| Granite State | $100,000 E.L. |

This policy applies to employees of Grand Caymans only.

Employees of other foreign operations covered by Social Security Systems of respective countries.

Automobile Liability

| Company | Limits |
| --- | --- |
| Granite State | $500,000 B.I. & P.D.*<br>Combined Single Limit |

*Limits apply excess and DIC of local statutory limits or $10,000 BI & PD combined whichever is greater on owned vehicles.

Limits apply excess and DIC of any other valid and collectible insurance on hired or non-owned vehicles.

Comprehensive General Liability

| Company | Limits |
| --- | --- |
| Granite State | $500,000 B.I. & P.D.<br>Combined Single Limit |

Effective ___ FEBRUARY 1, 1983 ___ 12:01 AM Standard Time this Endorsement No. ___ 1 ___ PAGE 2 OF 2

attached to and made a part of Policy No. ___ UL 737094 ___ of ___ MIDLAND INSURANCE COMPANY

issued to ___ A.W. CHESTRON COMPANY

(The information above is required only when this endorsement is issued subsequent to preparation of the policy.)

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of this policy other than as above stated.

MB:mw
3/2/83

Fred A. Koernig, Secretary

James P. Craig, President

By ___

Authorized Representative

AWC 0046255

Form UND 262 (9/82) 20M                    ORIGINAL

# ENDORSEMENT

## FOLLOWING-FORM FOREIGN LIABILITY

In consideration of the premium charged, it is hereby agreed that
this policy shall not apply to any claim arising out of an occurrence
outside of the United States nor to any suit brought in a jurisdic-
tion outside of the United States unless such liability is covered
by valid and collectible underlying insurance, as listed below, for
the full limits shown therein, and then only for such hazards for
which coverage is afforded under said underlying insurance.

| CARRIER | COVERAGE | LIMITS |
|---|---|---|
| Fidelity & Casualty Company | Employer's Liability | $100,000. each accident |
| Continental Insurance | Automobile Liability | $500,000. BI & PD Combined Single Limit |
| Continental Insurance Company | Comprehensive General Liability | $500,000. BI & PD Combined Single Limit Except $100,000. Communist Country Suits |

Effective ___ FEBRUARY 1, 1983 ___ 12:01 AM Standard Time  this Endorsement No. ___ 2 ___

attached to and made a part of Policy No. ___ UL 737094 ___ of ___ MIDLAND INSURANCE COMPANY

issued to ___ A.W. CHESTRON COMPANY

(The information above is required only when this endorsement is issued subsequent to preparation of the policy.)

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of this policy other than as above stated.

MB:mw
3.2.83

Fred A. Koernig, Secretary

James P. Craig, President

By _____
Authorized Representative

**AWC 0046256**

Form UND 262 (9/82) 20M                    ORIGINAL

# ENDORSEMENT

### ERISA EXCLUSION

In consideration of the premium charged and notwithstanding anything contained herein to the contrary it is hereby agreed that such coverage as is afforded by this policy shall not apply to any claim or claims arising out of the Employee Retirement Income Security Act of 1974, Public Law 93-406, commonly referred to as the Pension Reform Act of 1974 and amendments thereto, or similar provisions of any Federal, State or Local Statutory Law or Common Law.

Effective _____ FEBRUARY 1, 1983 _____ 12:01 AM Standard Time, this Endorsement No. _____ 3

attached to and made a part of Policy No. __UL 737094_____ of _MIDLAND INSURANCE COMPANY_

issued to _____ A.W. CHESTRON COMPANY _____

(The information above is required only when this endorsement is issued subsequent to preparation of the policy.)

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of this policy other than as above stated.

MB:mw
3/2/83

By _____

Authorized Representative

CMI-U-125 (7/80)

ORIGINAL

AWC 0046257

# E N D O R S E M E N T

Its agreed the named insured is amended to read.

A.W. Chesterton Company

Effective __February 1, 1983_____ 12:01 AM Standard Time, this Endorsement No. ____4____
attached to and made a part of Policy No. __UL 737094_____ of ____MIDLAND INSURANCE COMPANY____
issued to ____A. W. Chesterton_____

(The information above is required only when this endorsement is issued subsequent to preparation of the policy.)

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of this policy other than as above stated.

_Fred A. Koernig, Secretary_

By _____
Authorized Representative

_James P. Craig, President_

**AWC 0046258**

Form UND 262 (3/82) 15M

ORIGINAL