**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| A.W. Chesterton Company., Inc., )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>St. Paul Fire & Marine Insurance Co. )<br>    Defendant. )<br>) | Civil Docket Number:<br>04-CV-12501 GAO |

**MEMORANDUM IN SUPPORT OF CHESTERTON'S
MOTION FOR LEAVE TO AMEND COMPLAINT AND TO REMAND**

The Plaintiff, A.W. Chesterton Company, Inc. ("Chesterton"), hereby respectfully submits this memorandum in support of its motion for leave to amend its complaint pursuant to Fed. R. Civ. P. 15(a) and 28 U.S.C. § 1447(e), and to remand this action to the Middlesex Superior Court.  Chesterton seeks to add claims for declaratory relief against defendant St. Paul Fire & Marine Insurance Co. ("St. Paul"), Fireman's Fund Insurance Co. ("Fireman's"), Atlanta International Insurance Co. ("Atlanta"), and the Massachusetts Insurers Insolvency Fund (the "MIIF").  Because this amendment would destroy diversity jurisdiction, Chesterton requests that the case be remanded.

**BACKGROUND**

Chesterton is a manufacturer of products that, for many years, contained encapsulated asbestos.  Over 400,000 claims have been asserted against Chesterton by persons alleging personal injury resulting from exposure to asbestos fibers (the "Underlying Claims").  From 1968 through 1986, Chesterton maintained primary comprehensive general-liability policies (the "primary policies") and several layers of excess-insurance policies (the "excess policies") that provide coverage for asbestos-related liability.

In 1996, Chesterton filed a civil action for a declaratory judgment in the Middlesex

1

Superior Court (A.W. Chesterton Co. vs. Northbrook Excess & Surplus Ins. Co., et al., Middlesex Civil Action No. 96-4871), against Chesterton's primary-layer excess insurers and the MIIF, seeking a declaration of their respective obligations and damages from the insurers for breach of their policies (the "1996 suit"). The 1996 suit proceeded to judgment, which entered September 2, 2003. In that judgment, the court declared, inter alia, that Chesterton had exhausted all primary policies that were required to be exhausted and that the MIIF, as successor to duties of the insolvent Midland Insurance Co., was required to defend Chesterton once Chesterton established that no other policy provides a duty to defend that has not been exhausted.

In this action, Chesterton is pursuing claims for second-layer excess coverage. St. Paul issued a second-layer excess policy to Chesterton, with an effective period from January 18, 1972 to July 1, 1974 (the "St. Paul Policy"). The St. Paul Policy obligates St. Paul to pay Chesterton's loss in excess of the exhausted primary and first-layer excess policies underlying the St. Paul Policy. It also obligates St. Paul to pay a proportionate share of costs and expenses associated with the Underlying Claims. In nearly every Underlying Claim, the claimant alleges to have suffered asbestos-related injury during the time that the St. Paul Policy was in effect, thereby triggering the St. Paul Policy. Chesterton has exhausted all primary and first-layer policies required to be exhausted before St. Paul's obligations arise, but St. Paul has refused to fulfill its obligations.

Fireman's and Atlanta (then known as Drake Insurance Company of New York) also issued second-layer excess policies to Chesterton (the "Fireman's Policy" and the "Atlanta Policy," respectively). The effective period of the Fireman's Policy is August 15, 1974 to January 1, 1977; the effective period of the Atlanta Policy is January 1, 1977 to January 1, 1978. The Fireman's and Atlanta policies obligate the respective insurer to pay Chesterton's loss in

excess of the underlying primary and first-layer excess policies. These policies also obligate these insurers to pay a proportionate share of costs and expenses associated with the Underlying Claims. As is the case with the St. Paul Policy, nearly every claimant in the Underlying Claims alleges asbestos-related injury during the time the Fireman's and Atlanta policies were in effect, thus triggering both policies. In addition, Chesterton has exhausted all primary and first-layer excess policies required to be exhausted before Fireman's and Atlanta's obligations arise.

Pursuant to the judgment in the 1996 suit, the MIIF must assume its duty to defend Chesterton once there is no other policy with such a duty that has not been exhausted. There are no unexhausted policies that include a duty to defend Chesterton against the Underlying Claims. Therefore, the MIIF must now assume its duty to defend.

Chesterton intended to seek leave to amend the complaint to add these claims, but the Defendant removed this case before Chesterton could do so.

## **ARGUMENT**

Federal R. Civ. P. 15(a) states a liberal rule allowing amendments to pleadings: leave to amend pleadings "shall be freely given when justice so requires." In addition, Fed. R. Civ. P. 20(a) states the rule broadly allowing joinder of additional defendants:

> "All persons . . . may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action."

Both of these rules are satisfied here. Fireman's and Atlanta, as second-layer excess carriers, stand on the same footing as St. Paul, as their duties to indemnify Chesterton for loss and expense related to the Underlying Claims have been triggered. The MIIF is also properly joined as a party defendant because its duty to defend has now been triggered. Thus, the MIIF is required to defend Chesterton for the same claims for which St. Paul, Fireman's, and Atlanta are

required to indemnify Chesterton.  In the words of Rule 20(a), Chesterton's claims against the MIIF arise out of "the same transaction, occurrence, or series of transactions or occurrences." Common questions of law and fact exist as to all four.  Because common questions of law and overlapping questions of fact will arise as to St. Paul and the three proposed defendants, Rules 15 and 20 are satisfied. See <u>Wilson v. Famatex GmbH Fabrik Fuer Textilausruestungsmaschinen</u>, 726 F. Supp. 950, 951-952 (S.D.N.Y. 1989) (Lasker, J.).

In addition, amendment is also appropriate under 28 U.S.C. § 1447(e).  That subsection provides as follows:

> "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e), inserted by Pub. L. 100-702, § 1016(c)(2).

Thus, where, as here, amendment would destroy subject matter jurisdiction, the statute "compels courts to exercise discretion when deciding whether to remand a case to state court by balancing the equities involved and weighing the interests and prejudices to each party involved." <u>Morze v. Southland Corp</u>., 816 F. Supp. 369, 370 (E.D. Pa. 1993).  Courts consider whether, in the interests of justice, a case should be remanded.  <u>Id</u>.  See <u>Carter v. Dover Corp., Rotary Lift Div</u>., 753 F. Supp. 577, 579 (E.D. Pa. 1991) ("[v]irtually every court to address the joinder question since the enactment of § 1447(e) views the statute as signaling a departure from a strict Rule 19 analysis and providing for a flexible, broad discretionary approach").

Among the factors courts consider under § 1447(e) are: (1) any delay (measured from the date of removal), and the reasons for the delay, in seeking to amend; (2) any resulting prejudice to the defendant; (3) the threat of multiple litigation; and (4) the plaintiff's motive in moving to amend, i.e., whether the purpose of the amendment is to defeat diversity jurisdiction. See <u>Casas Office Machs., Inc. v. Mita Copystar America, Inc</u>., 42 F.3d 668, 675 n.8 (1st Cir. 1994), citing

4

Hensgens v. Deere & Co., 833 F.2d 1179, 1182 (5th Cir. 1987); Da Cruz v. Towmasters of New Jersey, Inc., 217 F.R.D. 126, 134 (E.D.N.Y. 2003); Rosenthal v. Life Fitness Co., 977 F. Supp. 597, 600 (E.D.N.Y. 1997).

Each of these factors indicates that amendment is appropriate in this case. First, there is no delay. Chesterton has promptly sought to amend before any action by this Court. See Rosenthal, 977 F. Supp. at 600 (no delay); Mammano v. American Honda Motor Co., 941 F. Supp. 323, 325 (W.D.N.Y. 1996) (plaintiff sought to add defendants shortly after removal).

Second, there is no resulting prejudice to the defendant St. Paul, since Chesterton moved to amend promptly. See Mammano, 941 F. Supp. at 325 (defendants showed no prejudice, particularly since litigation still in early stages). Moreover, this case involves exclusively state-law claims. Id. (all plaintiff's claims were based exclusively on state law); Carter, 753 F. Supp. at 580 (same). St. Paul will have the same opportunity to defend these claims as it would in this Court. See Rosenthal, 977 F. Supp. at 600. See also Wilson, 726 F. Supp. at 953 (defendant's inability to have case tried in its preferred forum does not alone constitute prejudice).

Third, if amendment is not allowed and the case is not remanded, Chesterton will be forced to litigate two proceedings in different forums. The evidence in each proceeding will be largely the same. There will be the danger of inconsistent results, possibly placing conflicting obligations on Chesterton. There will be waste of judicial resources. Hensgens, 833 F.2d at 1182. See Mammano, 941 F. Supp. at 325 (fact that theories of liability are different does not weigh against joinder, as claims arose from single source); Morze, 816 F. Supp. at 371 (elements and facts relevant to each cause of action overlap, and duplicative testimony was probable).

Finally, the fourth factor requires the Court to determine whether Chesterton's sole motive in seeking leave to amend is to destroy diversity jurisdiction. Rosenthal, 977 F. Supp. at

5

601. Chesterton's motive is not to destroy diversity, but to manage this complex litigation more efficiently.

It is critical that this Court understand why it is important that the MIIF be a party to this proceeding. The judgment in the 1996 suit makes clear that, once no other insurer has a duty to defend Chesterton against Underlying Claims, the MIIF has that duty. That judgment also makes clear that the MIIF's obligations are in no way dependent on whether any "ultimate net loss" coverage is exhausted. In other words, the MIIF's duty to defend is triggered notwithstanding that St. Paul, Fireman's, and Atlanta each have a duty to pay a proportionate share of costs and expenses associated with Chesterton's defense. Chesterton anticipates that the MIIF will litigate the scope of the duty of St. Paul, Fireman's, and Atlanta, in an attempt to reduce its duty-to-defend obligations. If the duty of those insurers to pay costs and expenses is judicially resolved in a proceeding to which the MIIF is not a party, the MIIF may take the position that it is entitled to relitigate those very issues to determine the scope of its defense obligations. At the very least, resolution of this case will be hampered by delay and duplication if the MIIF is not a party.

Chesterton is not motivated by a desire to destroy diversity. As Chesterton has stated, it intended to move to amend in the state court, but St. Paul removed the case before it could do so. Compare Dieng v. Smith & Nephew Dyonics, Inc., 2003 WL 22240748, *2 (S.D.N.Y. 2003) (noting that plaintiffs intended to consolidate suits but defendant served notice of removal before he could). Bare assertions that a plaintiff is motivated only to destroy diversity do not suffice to prove such motivation. Dieng, supra at *3.

## **CONCLUSION**

For the foregoing reasons, Chesterton requests that this Court grant leave to amend the complaint and that the Second Amended Complaint, attached as Exhibit 1 to Chesterton's

Motion for Leave to Amend Complaint and to Remand, be entered on the docket.  Chesterton also requests that this Court remand this action to the Middlesex Superior Court.

        Respectfully submitted,

        A.W. CHESTERTON COMPANY, INC.
        by its attorneys,


        /s/ Martin F. Gaynor III
        Harry L. Manion III, BBO No. 317440
        Martin F. Gaynor III, BBO No. 564384
        Kathryn R. Colburn, BBO No. 653244
        Nicholas D. Stellakis, BBO No. 644981
        COOLEY MANION JONES LLP
        21 Custom House Street
        Boston, MA  02110
        (617) 737-3100
        Email: mgaynor@cmj-law.com


134534v6