1

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

A.W. Chesterton Company,          )
      Plaintiff,               )
                          )
v.                            )      Civil Docket Number:
                          )      04-CV-12501 GAO
St. Paul Fire and Marine Insurance Co.,  )
Fireman's Fund Insurance Co.,       )
Atlanta International Insurance Co. formerly )
Drake Insurance Co. of New York,     )
      Defendants.             )
_____)

## SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

### PARTIES

1.     Plaintiff, A.W. Chesterton Company ("Chesterton"), is a Massachusetts corporation with its principal place of business in Stoneham, Middlesex County, Massachusetts.

2.     Defendant St. Paul Fire and Marine Insurance Company ("St. Paul"), is a Minnesota corporation with its principal place of business at 385 Washington Street, Saint Paul, Minnesota 55102. St. Paul is, and/or at all relevant times mentioned herein was, engaged in the business of writing liability insurance policies in Massachusetts and elsewhere.

3.     Defendant Fireman's Fund Insurance Company ("Fireman's"), is a California corporation with its principal place of business at 777 San Marin Drive, Novato, CA 94998. Fireman's is, and/or at all relevant times mentioned herein was, engaged in the business of writing liability insurance policies in Massachusetts and elsewhere.

4.      Defendant Atlanta International Insurance Company (formerly known as Drake Insurance Company of New York) ("Atlanta"), is a New York corporation with its principal place of business at 7230 McGinnis Ferry Rd. Suite 300, Suwanee, GA, 30324. Atlanta is and/or at all relevant times mentioned herein was, engaged in the business of writing liability insurance policies in Massachusetts and elsewhere.

## JURISDICTION AND VENUE

5.      Plaintiff is a corporation incorporated under the laws of the Commonwealth of Massachusetts having its principal place of business in the Commonwealth of Massachusetts.

6.      Defendant St. Paul is a corporation incorporated under the laws of the State of Minnesota having a principal place of business in a State other than the Commonwealth of Massachusetts.

7.      Defendant Fireman's is a corporation incorporated under the laws of the State of California having its principal place of business in a State other than the Commonwealth of Massachusetts.

8.      Defendant Atlanta is a corporation incorporated under the laws of the State of New York having a principal place of business in a State other than the Commonwealth of Massachusetts.

9.      St. Paul, Fireman's, and Atlanta, within the time period relevant to the cause of action stated herein, have transacted business within Massachusetts, including contracting to supply services in Massachusetts, contracting to insure persons, property, or risks located within Massachusetts, and engaging in the business of writing or delivering liability insurance policies in Massachusetts.  Moreover, the cause of action

stated herein arises from the Defendants' contracting to supply services in Massachusetts and contracting to insure risks located within Massachusetts at the time of contracting.

10.    The matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332.

## FACTS COMMON TO ALL COUNTS

11.    Chesterton is a family-owned private company that manufactures and distributes fluid-sealing devices, such as packing and mechanical seals, pumps, and technical products.

12.    Some products that Chesterton previously manufactured and distributed for many decades contained encapsulated asbestos.  Although Chesterton's products were and continue to be safe under EPA and OSHA standards, more than 400,000 asbestos-related bodily injury claims have been asserted against Chesterton since 1980 (the "Underlying Claims").

13.    During the period 1968 through 1986, Chesterton was insured by means of primary comprehensive general-liability policies and several layers of excess-insurance policies that provided coverage for asbestos-related liabilities.

14.    After the initial claims were filed against Chesterton in January, 1980, Liberty Mutual Insurance Company ("Liberty Mutual"), which had issued a number of primary-layer comprehensive general-liability policies to Chesterton, took the lead in providing defense and indemnification of Chesterton's asbestos-related claims.  On or about March 31, 1993, after Liberty Mutual had paid substantial amounts in indemnity and defense costs, Chesterton and Liberty Mutual entered into a settlement agreement pursuant to which Chesterton settled its claims for asbestos coverage against Liberty

Mutual. Thereafter, Chesterton negotiated settlements with its other primary carriers, Hartford Insurance Company ("Hartford") and Commercial Union Insurance Company ("Commercial Union").

15.    Chesterton established the A.W. Chesterton Asbestos-Related Claims Trust (the "ARC Trust") with the money received from the settlement with Liberty Mutual to defend and resolve asbestos-related claims made against Chesterton. All proceeds of the settlements that Chesterton reached with Liberty Mutual, Hartford, and Commercial Union were placed into the ARC Trust. Since April, 1993, all defense costs and indemnification payments related to the Underlying Claims have been paid by the ARC Trust.

16.    In 1996, Chesterton filed a declaratory judgment action in Middlesex Superior Court (Civil Action No. 96-4871) against its first layer excess carriers, American Home Assurance Company, United States Fire Insurance Company, The Continental Insurance Company, Northbrook Insurance Company, certain London Market Companies, First State Insurance Company, Stonewall Insurance Company, and the Massachusetts Insurers Insolvency Fund ("MIIF"), seeking a determination of the scope of the defendants' obligations to Chesterton under their policies and damages for the defendants' failure to perform their contractual obligations pursuant to the policies.

17.    A trial was held in June, 2002 (the "Phase I Trial") to decide several issues including whether Chesterton had exhausted all primary comprehensive general-liability insurance available to it that covered asbestos-related claims. The Superior Court issued a memorandum of decision following that trial, in which the Court decided that Chesterton had in fact exhausted all primary coverage that was required to be exhausted.

The Court then scheduled a second trial (the "Phase II Trial") to resolve various issues raised by the remaining defendants and to determine the amounts owed to Chesterton by those defendants.  The Court considered most of the issues raised by the defendants through a series of summary judgment motions.  The Court issued decisions on the motions for summary judgment on May 20, 2003.  The Court then scheduled the Phase II Trial for June 16, 2003 to resolve all outstanding issues of fact.

18.	Prior to the Phase II Trial, Chesterton settled with all of the defendants other than the MIIF.  The Phase II Trial was then held in June, 2003 between Chesterton and the MIIF, and the Court issued its final judgment in September, 2003.

19.	In its final judgment, the Court declared that Chesterton had exhausted all coverage provided by its primary policies that applied to asbestos-related claims. Specifically, Judge McLaughlin, sitting by special assignment, held, "[a]ll valid and collectible primary comprehensive general liability policies, the limits of which were required to have been exhausted prior to any obligation of the defendant excess insurance carriers to indemnify or defend, have been, in fact, exhausted."

20.	Both Chesterton and the MIIF appealed, and that appeal is now pending before the Supreme Judicial Court of Massachusetts (No. SJC-09498).

21.	As set forth in more detail below, St. Paul, Fireman's, and Atlanta issued second-layer excess policies to Chesterton.  Chesterton has exhausted, or will soon exhaust, all primary and first-layer excess coverage required to be exhausted before the obligations of these Defendants' policies arise.

### COUNT I
**(Breach of Contract – St. Paul)**

22.	Chesterton restates the allegations contained in paragraphs 1 through 21.

23.     St. Paul, in consideration for premiums duly paid by Chesterton, issued a second-layer excess policy to Chesterton, bearing policy number 569XA5135 (attached as Exhibit A) (the "St. Paul Policy"), with a policy period of January 18, 1972 to July 1, 1974.

24.     The St. Paul policy obligates St. Paul to pay Chesterton's "loss," defined as "the sums paid in settlements of losses for which the Insured is liable . . ." in excess of the exhausted primary and first-layer excess policies that underlie the St. Paul policy.

25.     The St. Paul policy also contains a provision relating to payment of a proportionate share of costs and expenses associated with the Underlying Claims against Chesterton, under certain circumstances.

26.     In nearly every Underlying Claim, the claimant alleges to have suffered asbestos-related injury during the time period in which the St. Paul policy was in effect, thereby triggering the St. Paul policy.

27.     Chesterton has exhausted all primary and first-layer excess policies required to be exhausted before the obligations of the St. Paul policy arise.

28.     At least as early as August, 1987, Chesterton put St. Paul on notice that it was being named as a defendant in a large number of lawsuits for asbestos-related personal injuries.  Thereafter, Chesterton periodically updated St. Paul on the amount Chesterton was spending defending and settling Underlying Claims.  Chesterton has responded to numerous specific requests for information by St. Paul related to Chesterton's settlement payments, allocation methods, and exhaustion of primary and first-layer excess policies.

29.    Despite St. Paul's knowledge that it is obligated now to fulfill its insurance obligations to Chesterton, St. Paul has refused to do so.

30.    Chesterton has satisfied all conditions precedent to St. Paul's coverage obligations.

31.    St. Paul has breached the terms of its policy by refusing to assume its indemnification obligations with respect to asbestos-related claims against Chesterton.

32.    As a result of St. Paul's breach of contract, Chesterton has suffered damages and will suffer additional damages until St. Paul assumes its indemnification and expense obligations.

33.    St. Paul has breached the covenant of good faith and fair dealing implied in its policy by refusing to assume its obligations under the St. Paul Policy.

WHEREFORE, Chesterton requests that the Court enter judgment in its favor:

    a.    awarding Chesterton damages in an amount to be determined at trial together with interest, costs, and attorneys' fees; and

    b.    granting Chesterton such other relief as may be appropriate.


## <u>COUNT II</u>
### (Declaratory Judgment – St. Paul)

34.    Chesterton restates the allegations contained in paragraphs 1 through 33.

35.    An actual controversy exists between Chesterton and St. Paul regarding (1) whether Chesterton's first-layer excess insurance has been exhausted, (2) whether St. Paul is liable in full to Chesterton, up to its limits of liability, for all loss arising from all claims for which St. Paul was on the risk at any point in time from the claimant's first exposure through diagnosis, death, or date of claim, (3) whether each Underlying Claim is a separate accident or occurrence, (4) whether the $5 million aggregate limit of liability

applies separately to each annual period during the St. Paul Policy period, (5) whether the limit of liability applicable to so-called "stub" periods of less than twelve months is $5 million, and (6) whether St. Paul has a duty to pay Chesterton a proportionate share of the costs and expenses of defense in addition to the limits of liability.

36. Declaratory relief will resolve the controversy between Chesterton and St. Paul.

WHEREFORE, Chesterton requests that the Court enter judgment declaring and adjudicating Chesterton's rights under the St. Paul policy, including but not necessarily limited to, a specific declaration that:

a. all coverage underlying the St. Paul policy that is required to be exhausted has been properly exhausted;

b. St. Paul is liable in full to Chesterton, up to its limits of liability, for all loss arising from all claims for which St. Paul was on the risk at any point in time from the claimant's first exposure through diagnosis, death, or date of claim;

c. each Underlying Claim is a separate accident or occurrence under the St. Paul policy;

d. each annual period and each "stub" period of less than twelve months during the policy period of the St. Paul Policy carries a separate $5 million aggregate limit of liability so that the limits of liability available under the St. Paul Policy for payment of "loss" total $20 million; and

e. St. Paul's duty to pay a proportionate share of the costs and expenses for the defense of Chesterton in the Underlying Claims, if applicable, is in addition to the limits of liability.

## COUNT III
### (Breach of Contract – Fireman's)

37. Chesterton restates the allegations contained in paragraphs 1 through 36.

38.    Fireman's, in consideration for premiums duly paid by Chesterton, issued a second-layer excess policy to Chesterton, bearing policy number XLX-120 45 23, with an effective period of August 15, 1974 to January 1, 1977 (attached as Exhibit B) (the "Fireman's Policy").

39.    The Fireman's Policy obligates Fireman's to pay Chesterton's "ultimate net loss," defined as "all sums actually paid, or which the Insured is legally obligated to pay, as damages in settlement or satisfaction of claims or suits for which insurance is afforded by this policy . . ." in excess of the exhausted primary and first-layer excess policies that underlie the Fireman's Policy.

40.    The Fireman's Policy also obligates Fireman's to pay a proportionate share of costs and expenses associated with the Underlying Claims against Chesterton, under certain circumstances.

41.    In nearly every Underlying Claim, the claimant alleges to have suffered asbestos-related injury during the time period in which the Fireman's Policy was in effect, thereby triggering the Fireman's Policy.

42.    Chesterton has exhausted all primary and first-layer excess policies required to be exhausted before the obligations of the Fireman's Policy arise.

43.    At least as early as August, 1987, Chesterton put Fireman's on notice that it was being named as a defendant in a large number of lawsuits for asbestos-related personal injuries.  Thereafter, Chesterton periodically updated Fireman's on the amount Chesterton was spending defending and settling Underlying Claims.  Chesterton has responded to numerous specific requests for information by Fireman's related to

Chesterton's settlement payments, allocation methods, and exhaustion of primary and first-layer excess policies.

44.    Despite Fireman's knowledge that it is obligated now to fulfill its insurance obligations to Chesterton, Fireman's has refused to do so.

45.    Chesterton has satisfied all conditions precedent to Fireman's coverage obligations.

46.    Fireman's has breached the terms of its policy by refusing to assume its obligations under the Fireman's Policy with respect to asbestos-related claims against Chesterton.

47.    As a result of Fireman's breach of contract, Chesterton has suffered damages and will suffer additional damages until Fireman's assumes its indemnification and expense obligations.

48.    Fireman's has breached the covenant of good faith and fair dealing implied in its policy by refusing to assume its indemnification and expense obligations.

WHEREFORE, Chesterton requests that the Court enter judgment in its favor:

a.    awarding Chesterton damages in an amount to be determined at trial together with interest, costs, and attorneys' fees; and

b.    granting Chesterton such other relief as may be appropriate.

## COUNT IV
### (Declaratory Judgment – Fireman's)

49.    Chesterton restates the allegations contained in paragraphs 1 through 48.

50.    An actual controversy exists between Chesterton and Fireman's regarding (1) whether Chesterton's first-layer excess insurance has been exhausted, (2) whether Fireman's is liable in full to Chesterton, up to its limits of liability, for all ultimate net

loss arising from all claims for which Fireman's was on the risk at any point in time from the claimant's first exposure through diagnosis, death, or date of claim, (3) whether each Underlying Claim is a separate accident or occurrence, (4) whether the $5 million aggregate limit of liability applies separately to each annual period during the Fireman's Policy period, (5) whether the limit of liability applicable to the so-called "stub" period of less than twelve months is $5 million, and (6) whether Fireman's has a duty to pay Chesterton a proportionate share of the costs and expenses of defense in addition to the limits of liability.

51.     Declaratory relief will resolve the controversy between Chesterton and Fireman's.

WHEREFORE, Chesterton requests that the Court enter judgment declaring and adjudicating Chesterton's rights under the Fireman's Policy, including but not necessarily limited to, a specific declaration that:

a.     all coverage underlying the Fireman's Policy that is required to be exhausted has been properly exhausted;

b.     Fireman's is liable in full to Chesterton, up to its limits of liability, for all ultimate net loss arising from all claims for which Fireman's was on the risk at any point in time from the claimant's first exposure through diagnosis, death, or date of claim;

c.     each Underlying Claim is a separate accident or occurrence under the Fireman's policy;

d.     each annual period and the "stub" period of less than twelve months during the policy period of the Fireman's Policy carries a separate $5 million aggregate limit of liability so that the limits of liability available under the Fireman's Policy for payment of ultimate net loss total $15 million; and

e.     Fireman's duty to pay a proportionate share of the costs and expenses for the defense of Chesterton in the Underlying Claims, if applicable, is in addition to the limits of liability.

<u>COUNT V</u>
**(Declaratory Judgment – Atlanta)**

52.    Chesterton restates the allegations contained in paragraphs 1 through 51.

53.    Atlanta, then known as Drake Insurance Company of New York, in consideration for premiums duly paid by Chesterton, issued a second-layer excess policy to Chesterton, bearing policy number XL-01483, with an effective period of January 1, 1977 to January 1, 1978 (attached as Exhibit C) (the "Atlanta Policy").

54.    The Atlanta Policy obligates Atlanta to pay Chesterton's "ultimate net loss," defined as "the sums paid in settlement of losses for which the Insured is liable . . ." in excess of the exhausted primary and first-layer excess policies that underlie the Atlanta policy.

55.    The Atlanta Policy also obligates Atlanta to pay a proportionate share of costs and expenses associated with the Underlying Claims against Chesterton, under certain circumstances.

56.    In nearly every Underlying Claim, the claimant alleges to have suffered asbestos-related injury during the time period in which the Atlanta Policy was in effect, thereby triggering the Atlanta Policy.

57.    Chesterton has exhausted all primary policies required to be exhausted before the obligations of the Atlanta Policy arise, and will soon exhaust all first-layer excess policies required to be exhausted before the obligations of the Atlanta Policy arise.

58.    At least as early as August, 1987, Chesterton put Atlanta on notice that it was being named as a defendant in a large number of lawsuits for asbestos-related personal injuries.  Thereafter, Chesterton periodically updated Atlanta on the amount Chesterton was spending defending and settling Underlying Claims.  Chesterton has

responded to numerous specific requests for information by Atlanta related to Chesterton's settlement payments, allocation methods, and exhaustion of primary and first-layer excess policies.

59.    An actual controversy exists between Chesterton and Atlanta regarding (1) whether Chesterton's first-layer excess insurance has been exhausted or when it will be, (2) whether after exhaustion of first-layer excess insurance Atlanta is liable in full to Chesterton, up to its limits of liability, for all ultimate net loss arising from all claims for which Atlanta was on the risk at any point in time from the claimant's first exposure through diagnosis, death, or date of claim, (3) whether after exhaustion of first-layer excess insurance each Underlying Claim is a separate accident or occurrence, and (4) whether after exhaustion of first-layer excess insurance Atlanta has a duty to pay a proportionate share of the costs and expenses of defense in addition to its limits of liability.

60.    Declaratory relief will resolve the controversy between Chesterton and Atlanta.

WHEREFORE, Chesterton requests that the Court enter judgment declaring and adjudicating Chesterton's rights under the Atlanta Policy, including but not necessarily limited to, a specific declaration that:

    a.    all first-layer excess coverage underlying the Atlanta Policy has been properly exhausted;

    b.    Atlanta is liable in full to Chesterton, up to its limits of liability, for all ultimate net loss arising from all claims for which Atlanta was on the risk at any point in time from the claimant's first exposure through diagnosis, death, or date of claim;

    c.    each Underlying Claim is a separate accident or occurrence under the Atlanta Policy;

      d.     Atlanta's duty to pay a proportionate share of the costs and expenses for the defense of Chesterton in the Underlying Claims, if applicable, is in addition to the limits of liability.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Chesterton demands a trial by jury on all issues so triable.

A.W. CHESTERTON COMPANY,
by its attorneys,


/s/ Martin F. Gaynor
Harry L. Manion III, BBO No. 317440
Martin F. Gaynor III, BBO No. 564384
Nicholas D. Stellakis, BBO No. 644981
COOLEY MANION JONES LLP
21 Custom House Street
Boston, MA  02110
(617) 737-3100
Email: mgaynor@cmj-law.com

143375v2

14

### EXCESS THIRD PARTY LIABILITY POLICY

**No. 569XA5135**

**NEW**
FORMER POLICY NO.

A CAPITAL STOCK COMPANY

**ST. PAUL FIRE AND MARINE INSURANCE COMPANY**

ST. PAUL, MINNESOTA

**THE ST. PAUL**
INSURANCE COMPANIES



*Serving you around the world...around the clock*

---

**ITEM 1. Insured's Name and Mailing Address**

A. W. CHESTERTON COMPANY &
COMMERCIAL CHEMICAL COMPANY, INC.
ASHLAND STREET
EVERETT, MASSACHUSETTS

BREWER & LORD
INSURANCE
40 BROAD STREET, BOSTON, MASS.

---

| ITEM 2. POLICY PERIOD:* | | ITEM 3. LOCATION OF COVERAGE: | |
|---|---|---|---|
| FROM | TO | EVERETT, MASSACHUSETTS | and as further defined in the Primary Policy. |
| 1-18-72 | 4-17-74 | | |

*12:01 A.M., Standard time at the address of the Insured as stated herein.

**ITEM 4. PRIMARY INSURANCE:**

| INSURER'S NAME | POLICY NO'S. (Including Renewals or Replacements) | DESCRIPTION OF COVERAGE |
|---|---|---|
| UNITED STATES FIRE INS. CO. | DCL 92 10 75 | UMBRELLA EXCESS |

**ITEM 5. LIMITS OF LIABILITY:** The limit of the Company's liability shall be as stated herein, subject to all the terms of this Policy having reference thereto.

| SECTION I | IN-EXCESS OF | SECTION II | SECTION III | COVERAGE |
|---|---|---|---|---|
| COMPANY LIMITS | | UNDERLYING LIMITS | TOTAL LIMITS | |
| $ | Each Person | $ | $ | A. Bodily Injury Automobile |
| $ | Each Accident or Occurrence | $ | $ | |
| $ | Each Person | $ | $ | B. Bodily Injury Except Automobile |
| $ | Each Accident or Occurrence | $ | $ | |
| $ | Aggregate Products | $ | $ | |
| $ | Each Accident or Occurrence | $ | $ | C. Property Damage Auto |
| $ | Each Accident or Occurrence | $ | $ | D. Property Damage Except Automobile |
| $ | Aggregate Operations | $ | $ | |
| $ | Aggregate Protective | $ | $ | |
| $ | Aggregate Products | $ | $ | |
| $ | Aggregate Contractual | $ | $ | |
| $ | Each Accident or Occurrence | $ | $ | E. Combined Single Limit Bodily Injury and/or Property Damage |
| $ | Aggregate | $ | $ | |
| $5,000,000.each occurrence | | $5,000,000. | $10,000,000. | F. Other |
| $5,000,000.00 Aggregate | | $5,000,000. | $10,000,000. | UMBRELLA EXCESS |

**ITEM 6. PREMIUM COMPUTATION ‡Products•**

| PREMIUM BASIS | ESTIMATED EXPOSURE | RATE | ESTIMATED PREM. | DEPOSIT PREM. | MINIMUM PREM. | AUDIT PERIOD |
|---|---|---|---|---|---|---|
| FLAT CHARGE | | FLAT | 1250.PER YR. | $ 304.00 $1250.00 | INSTALLMENT | |

*signature* Brewer & Lord
AUTHORIZED REPRESENTATIVE

AWC 0045655

1-18-72
COUNTERSIGNATURE DATE

BOSTON, MASS.
COUNTERSIGNED AT

14184ELP 2M 8-68 W Rev. 7-63

## INSURING AGREEMENT

In consideration of the payment of premium stated in the Declarations, the ST. PAUL FIRE AND MARINE INSURANCE COMPANY, herein called the Company, agrees to indemnify the Insured, in accordance with the applicable insuring agreements of the Primary Insurance, against loss subject to the limits stated in Item 5, Section I of the Declarations and as fully and to all intents and purposes as though the Primary Insurance had been issued for the limits set forth in Item 5, Section III of the Declarations. This Policy shall apply only to coverages for which an amount is indicated in Item 5, Section I, and then only in excess of the corresponding amount as indicated in Item 5, Section II of the Declarations.

## DEFINITIONS

1. **Loss.** The word "loss" shall be understood to mean the sums paid in settlements of losses for which the Insured is liable after making deductions for all other recoveries, salvages and other insurances (other than recoveries under the policy/ies of the Primary Insurer), whether recoverable or not, and shall exclude all expense and costs.

2. **Costs.** The word "costs" shall be understood to mean interest on judgments, investigations, adjustment and legal expenses (excluding, however, all expense for salaried employees and retained counsel of and all office expense of the Insured).

3. **Primary Insurance.** The term "primary insurance" shall be understood to mean the policy (policies) described in Item 4.

## NUCLEAR ENERGY LIABILITY EXCLUSION

It is agreed that the insurance afforded under any liability coverage of this Policy or of any endorsement used herewith does not apply:

1. Under any Liability Coverage, to injury, sickness, disease, death or destruction
   (a) with respect to which an Insured under the Policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or
   (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the Insured is, or had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2. Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

3. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if
   (a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an Insured or (2) has been discharged or dispersed therefrom;
   (b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or
   (c) the injury, sickness, disease, death or destruction arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury or to destruction of property at such nuclear facility.

4. As used in this endorsement:
   "hazardous properties" include radioactive, toxic or explosive properties;
   "nuclear material" means source material, special nuclear material or byproduct material;
   "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;
   "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;
   "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;
   "nuclear facility" means
   (a) any nuclear reactor,
   (b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,
   (c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,
   (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,
   and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;
   "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;
   With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

THIS SPACE FOR THE ATTACHMENT OF ENDORSEMENTS, IF ANY

AWC 0045656

## CONDITIONS

1. It is agreed that this Policy, except as herein stated, is subject to all conditions, agreements and limitations of and shall follow the Primary Insurance in all respects, including changes by endorsement and the Insured shall furnish the Company with copies of such changes. It is further agreed should any alteration be made in the premium for the policy/ies of the Primary Insurers during the period of this Policy, then the premium hereon other than the Minimum Premium shall be adjusted accordingly.

2. Notice of any accident, which appears likely to involve this Policy, shall be given to the Company, which at its own option, may, but is not required to, participate in the investigation, settlement or defense of any claim or suit. In the event expense and/or costs in connection with any claim or suit is incurred jointly by mutual consent of the Company and of the Insured or Primary Insurer, the Company, in addition to its limits of liability as expressed in Item 5, Section I of the Declarations, shall be liable for no greater proportion of such expense and/or costs than the amount payable by the Company under this Policy bears to the total loss payment.

3. With respect to each coverage in Item 5, Section I of the Declarations, the Bodily Injury limit applicable to each accident is subject to the limit specified as applicable to each person. There is no limit to the number of accidents for which claims may be brought hereunder (provided such accidents occur during the period of this Policy) except as provided by aggregate limits which, with respect to Item 5, Section I, when inserted therein apply to all accidents happening during each twelve months' term of the Policy.

4. All salvages, recoveries or payments recovered or received subsequent to a loss settlement under the Policy shall be applied as if recovered or received prior to such settlement and all necessary adjustments shall then be made between the Insured and the Company, provided always that nothing in this Policy shall be construed to mean that losses under this Policy are not recoverable until the Insured's ultimate net loss has been finally ascertained.

5. This Policy may be cancelled by the named Insured by surrender thereof to the Company or any of its authorized agents, or by mailing to the Company written notice stating when thereafter the cancellation shall be effective. This Policy may be cancelled by the Company by mailing to the named Insured at the address shown in this Policy written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of the surrender, or the effective date and hour of cancellation stated in the notice, shall become the end of the Policy Period. Delivery of such written notice either by the named Insured or by the Company shall be equivalent to mailing.

If the named Insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

In the event of the cancellation or termination of the primary insurance or a renewal thereof, this Policy, to the extent of such cancellation or termination, shall cease to apply at the same time without notice to the Insured.

PROVISIONS REQUIRED BY LAW TO BE STATED IN THIS POLICY:—"This Policy is issued under and in pursuance of the laws of the State of Minnesota, relating to Guaranty Surplus and Special Reserve Funds." Chapter 437, General Laws of 1909.

IN WITNESS WHEREOF, the ST. PAUL FIRE AND MARINE INSURANCE COMPANY, has caused this Policy to be signed by its President and Secretary at St. Paul, Minnesota, and countersigned on the Declarations page by a duly authorized representative of the Company.

_Secretary._                    _President._

AWC 0045657



**THE ST. PAUL**
COMPANIES

*Serving you around the world . . . around the clock*

**ENDORSEMENT**

*The following spaces preceded by an asterisk (\*) need not be completed if this endorsement and the policy have the same inception date.*

| ATTACHED TO AND FORMING PART OF POLICY NO. | \*EFFECTIVE DATE OF ENDORSEMENT | \*ISSUED TO |
|---|---|---|
| 569XA5135 | 4-17-74 | A.W.Chesterton Company & Commercial Chemical Co. |

In consideration of an additional premium of $256.00 , it is understood and agreed that the policy period is amended to read :
       1-18-72   to 7-1-74

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

*Agency Name and Address*

   • Brewer & Lord
     40 Broad Street
     Boston,Mass.  02109
     200241 db

*In Witness Whereof,* the Company has caused this endorsement to be signed by a duly authorized representative of the Company.

*Brewer & Lord*
**AUTHORIZED REPRESENTATIVE**

14600-4 BEF REV. 8-64
PRINTED IN U.S.A.

AWC 0045658



**THE ST. PAUL**
COMPANIES
*Serving you around the world... around the clock*

**ENDORSEMENT**

*The following spaces preceded by an asterisk (\*) need not be completed if this endorsement and the policy have the same inception date.*

| ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 569XA5135 | 7/5/73 | A.W. Chesterton Company et al. |

It is agreed that the address of the Named Insured is amended as follows:

Fallon Road
Middlesex Industrial Park
Stoneham, Mass.

AUG 1 0 1973

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

*Agency Name and Address*

Brewer & Lord
40 Broad Street
Boston, Mass. 02109
200241

*In Witness Whereof,* the Company has caused this endorsement to be signed by its President at St. Paul, Minnesota and countersigned by a duly authorized representative of the Company.

*Brewer & Lord*

*Carl B. _____*
*President*

AUTHORIZED REPRESENTATIVE

14600-4 BEF REV. 8-64
PRINTED IN U.S.A.

AWC 0045659



**THE ST. PAUL**
INSURANCE COMPANIES

*Serving you around the world...around the globe*

ENDORSEMENT

*The following spaces preceded by an asterisk (\*) need not be completed if this endorsement and the policy have the same inception date.*

| ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 569XA5135 | 1-18-72 | |

IT IS HEREBY UNDERSTOOD AND AGREED THAT THE PREMIUM FOR THIS POLICY
IS PAYABLE AS FOLLOWS:

        $304.00  PAYABLE  ON  1-18-72
   $1250.00  PAYABLE  ON  4-17-72
   $1250.00  PAYABLE  ON  4-17-73

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

*Agency Name and Address*

*In Witness Whereof,* the Company has caused this endorsement to be signed by its President at St. Paul, Minnesota and countersigned by a duly authorized representative of the Company.

Carl B. Drake Jr.
President.

Brewer & Lord

AUTHORIZED REPRESENTATIVE

14600-4 BEF REV. 8-64
PRINTED IN U.S.A.

AWC 0045660



**THE ST. PAUL**
INSURANCE COMPANIES
Serving you around the world ... around the clock

**ENDORSEMENT**

*The following spaces preceded by an asterisk (*) need not be completed if this endorsement and the policy have the same inception date.*

| ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 569XA5135 | 1-18-72 | A. W. CHESTERTON COMPANY & COMMERCIAL CHEMICAL CO., INC. |

IT IS UNDERSTOOD AND AGREED THAT ITEM #1, INSUREDS' NAME IS AMENDED TO READ AS FOLLOWS:

         A. W. CHESTERTON COMPANY
         COMMERCIAL CHEMICAL COMPANY, INC. & CHESCO., INC.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

*Agency Name and Address*

*In Witness Whereof,* the Company has caused this endorsement to be signed by its President at St. Paul, Minnesota and countersigned by a duly authorized representative of the Company.

       BREWER & LORD
       40 BROAD ST.
       BOSTON, MA 02109

*President.*

**AUTHORIZED REPRESENTATIVE**

14600-4 BEF REV. 8-64
PRINTED IN U.S.A.

AWC 0045661

# BREWER & LORD
### FOUNDED 1859

June 3, 1974

**TERMS: NET 30 DAYS FROM ABOVE DATE**

Telephone
426-0830

560

*Insurance*
40 BROAD STREET
BOSTON, MASS. 02109

A W CHESTERTON COMPANY
MIDDLESEX INDUSTRIAL
PARK — RTE 93
STONEHAM MASS                02180

CK504    26

EXPIRING POLICY
NO. 56XA5135

TERMS: NET 30 DAYS FROM ABOVE DATE.
RECEIPT OF CHECK ACKNOWLEDGED ONLY WHEN REQUESTED SINCE PAID CHECK CONSTITUTES FULL RECEIPT

| EFF. DATE | POLICY | COMPANY | KIND OF POLICY | PREMIUM |
|---|---|---|---|---|
| 04 17 74 | 56XA5135 | ST PAUL F & M | Excess Liability | 256.00 |
| **EXPIRES** | | | | |
| 7 1 74 | | | | |

Extension Endorsement

Please detach and return TOP portion of this bill to BREWER & LORD

AWC 0045662

| PRODUCER'S CODE | NAME AND LOCATION | PREVIOUS POLICY NUMBER | POLICY NUMBER |
|---|---|---|---|
| 20-211-401 | Brewer & Lord<br>Boston, Massachusetts | New | XLX- 120 45 23 |

**BLANKET EXCESS LIABILITY POLICY**
**(FOLLOWING FORM)**

01 **FIREMAN'S FUND**
INSURANCE COMPANY

FIREMAN'S
**FUND**
AMERICAN
INSURANCE COMPANIES
HOME OFFICE
SAN FRANCISCO
CALIFORNIA

**BREWER & LORD**
INSURANCE
40 BROAD STREET, BOSTON 02109
426-0830

**18** Coverage is provided in the Company designated by number, a stock insurance Company (herein called the Company)

**DECLARATIONS**

ITEM 1. INSURED'S NAME AND ADDRESS (NO., STREET, TOWN, COUNTY, STATE)

A. W. Chesterton Company, Commercial
Chemical Company, Inc., Chesco, Inc.
Middlesex Industrial Park
Route 93
Stoneham, Massachusetts

POLICY PERIOD:

| ITEM 2. | 08-15-74 | 01-01-77 |
|---|---|---|
| | INCEPTION (MO. DAY YR.) | EXPIRATION (MO. DAY YR.) |

12:01 A.M., STANDARD TIME AT THE ADDRESS OF THE NAMED INSURED AS STATED HEREIN.

**ITEM 3.**

LIMIT OF LIABILITY:

$ 5,000,000. . EACH OCCURRENCE
$ 5,000,000. . AGGREGATE

**ITEM 4.**

UNDERLYING INSURANCE LIMIT OF LIABILITY

$ 5,000,000. . EACH OCCURRENCE
$ 5,000,000. . AGGREGATE

**ITEM 5.**

PREMIUM BASIS

$ FLAT CHARGE

**ITEM 6.**

ADVANCE PREMIUM: $ See End. # 1
ANNUAL MINIMUM PREMIUM: $ 1,250.

IN THE EVENT OF CANCELLATION BY THE NAMED INSURED, THE COMPANY SHALL RECEIVE AND RETAIN NOT LESS THAN $ 300. AS THE POLICY MINIMUM PREMIUM.

ITEM 7. SCHEDULE OF UNDERLYING INSURANCE: $5,000,000. combined single limit any one occurrence
Personal Injury and/or Property Damage and/or Advertising Liability as provided by
U. S. Fire, Policy No. to be advised, in excess of various schedules of underlying
insurance as provided by American Employers and Liberty Mutual.

AWC 0044809

## FOLLOWING FORM BLANKET EXCESS LIABILITY POLICY

The Company designated above, a stock insurance company, (herein called the Company) agrees with the insured, named in the declarations made a part hereof, in consideration of the payment of premium and in reliance upon the statements in the declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy.

### INSURING AGREEMENTS

**1. Coverage.** To indemnify the Insured for the Insured's ultimate net loss in excess of the insurance afforded under the Blanket Excess Liability or "Umbrella" policies specified in Item 7 of the Declarations, hereafter called underlying insurance, in full force and effect at the inception of this policy, provided that the insurance for injury to or destruction of property under this policy and underlying policies shall not apply except as respects injury to or destruction of corporeal property, including loss of use thereof.

**2. Limit of Liability.** The Company shall be liable only for the limit of liability stated in Item 3 of the Declarations in excess of the limit or limits of liability of the applicable underlying insurance policy or policies all as stated in the declarations of this policy. The limit of the liability stated in the declarations as applicable to "each occurrence" shall be the total limit of the Company's liability for all damages sustained as the result of any one occurrence, provided, however, in the event of reduction or exhaustion of the applicable aggregate limit or limits of liability under said underlying policy or policies solely by reason of losses paid thereunder on account of occurrences during this policy period, this

policy shall in the event of reduction, apply as excess of the reduced limit of liability thereunder. Subject to the applicable limit of liability as respects each occurrence, the limit of liability stated in the declarations as "aggregate" shall be the total limit of the Company's liability for all damages sustained during each annual period of this policy.

**3. Policy Period.** This policy applies only to occurrences which take place during the policy period.

### DEFINITIONS

"Ultimate net loss" means all sums actually paid, or which the Insured is legally obligated to pay, as damages in settlement or satisfaction of claims or suits for which insurance is afforded by this policy, after proper deduction of all recoveries or salvage.

### CONDITIONS

**1. Maintenance of Primary Insurance.** The Insured warrants, and it is a condition of this policy, that at the inception of this policy, insurance afforded by the underlying policies of insurance (apply-

(Continued on Page Two)

| COUNTERSIGNATURE DATE | COUNTERSIGNATURE OF AUTHORIZED AGENT |
|---|---|
| 08-16-74          ca | |

PAGE ONE

5902—2-72

**(Continued from Preceding Page)**

ing as excess over various policies of primary insurance) with combined limits of liability for said underlying insurance stated in Item 4 of the declarations, or renewals or replacements thereof not affording coverages other than those at inception of this policy, shall be maintained in full effect during the period of this policy, except for reduction of aggregate limits solely as a result of payment of claims arising out of occurrences during this policy period. If such underlying insurance is not maintained in full effect by the Insured or if there is any change in the scope of coverage under any underlying insurance, the insurance afforded by this policy shall apply in the same manner as though such underlying policies had been so maintained and unchanged.

The insurance afforded by this policy is subject to the same warranties, terms (including the terms used to describe the application of the limits of liability), conditions and exclusions as are contained in the underlying insurance on the effective date of this policy, except, unless otherwise specifically provided in this policy, any such warranties, terms, conditions or exclusions relating to premium, the obligation to investigate and defend, the amount and limits of liability, and any renewal agreement.

**2. Notice of Occurance.** The Insured shall immediately advise the Company of any occurrence or disaster which will probably result in liability under this policy. The Company shall not, however, be called upon to assume charge of the settlement or defense of any claims made, or suits brought, or proceedings instituted against the Insured, but shall have the right and opportunity to be associated with the Insured in the defense and trial of any such claims, suits or proceedings relative to any occurrence which, in the opinion of the Company, may create liability on the part of the Company under the terms of the policy. If the Company avails itself of such right and opportunity, the Insured and the Company shall cooperate in all respects so as to effect a final determination of the claim or claims.

**3. Payment of Loss.** It is a condition of this policy that the insurance afforded under this policy shall apply only after all underlying insurance has been exhausted. Upon final determination by settlement, award or verdict of the Insured, the Company shall promptly pay the Insured as the Insured shall pay, or be required to pay, the amounts of any losses falling within the terms or limits of this insurance. All losses covered under this policy shall be due and payable by the Company within 30 days after they are respectively claimed and proof of loss filed with the Company in conformity with this policy. Bankruptcy or insolvency of the Insured shall not relieve the Company of any of its obligations hereunder.

**4. Payment of Expenses.** Loss expenses and legal expenses, including court costs and interest, if any, which may be incurred by the

Insured with the consent of the Company in the adjustment or defense of claims, suits or proceedings shall be borne by the Company and the Insured in the proportion that each party's share of loss bears to the total amount of said loss. Loss expense hereunder shall not include salaries and expense of the Insured's employees incurred in investigation, adjustment and litigation.

**5. Appeal.** In the event the Insured or any underlying insurer elects not to appeal a judgment in excess of the amount of the underlying insurance, the Company may elect to appeal at its expense and shall be liable for the expenses incidental thereto, but in no event shall the liability of the Company for ultimate net loss exceed the amount set forth in the policy plus the expenses incidental to such appeal.

**6. Subrogation.** In the event of any payment of this policy, the Company shall be subrogated to all the Insured's rights of recovery therefor against any person or organization and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights.

Any amount recovered as subrogation shall be apportioned in the inverse order of payment of loss to the extent of actual payment. The expenses of all such recovery proceedings shall be apportioned in the ratio of respective recoveries. If there is no recovery in proceedings conducted solely by the Company, the Company shall bear the expenses thereof.

**7. Premium.** The premium for this policy shall be computed upon the basis stated in the Declarations. The advance premium stated in the Declarations, unless otherwise specified is an estimated premium only. Upon termination of this policy the earned premium shall be computed and if the earned premium is more than the advance premium paid, the Named Insured shall pay the excess to the Company; if less, the Company shall return to the Named Insured the unearned portion, subject to the annual minimum premium stated in the Declarations for each twelve months of the policy period, and subject further to the policy minimum premium as stated in the Declarations.

**8. Cancellation.** This policy may be cancelled by either party upon 30 days' notice in writing to the other stating the date cancellation shall be effective. If cancellation is at the request of the Insured, adjustment of premium shall be at "short rate", and if cancelled by the Company, adjustment shall be made pro rata. However, in the event of cancellation or termination of the underlying insurance, this policy shall cease to apply at the same time without notice to the Insured. Notice shall be given by the Company to the Insured at the address shown in the declarations. Payment or tender of unearned premium is not a condition of cancellation.

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

### (BROAD FORM)

It is agreed that the policy does not apply:

I. Under any Liability Coverage, to injury, sickness, disease, death or destruction

(a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

(a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom; or

(b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

III. As used in this endorsement:

**"hazardous properties"** include radioactive, toxic or explosive properties;

**"nuclear material"** means source material, special nuclear material or byproduct material;

**"source material"**, **"special nuclear material"**, and **"byproduct material"** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**"spent fuel"** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

**"waste"** means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

**"nuclear facility"** means

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1) separating

**(Continued on Next Page)**

AWC 0044810

End. # 1

## INSTALLMENT PREMIUM ENDORSEMENT

In consideration of the premium charged, it is understood and agreed that the premium shall be paid as follows:

| | |
|---|---|
| August 15, 1974 | $ 476. |
| January 1, 1975 | $1,250. |
| January 1, 1976 | $1,250. |

| POLICY NUMBER | INSURED | EFFECTIVE |
|---|---|---|
| XLX-120 45 23 | A. W. Chesterton Company, Etal. | 08-15-74 |

| FIREMAN'S FUND INSURANCE COMPANY<br>THE AMERICAN INSURANCE COMPANY<br>NATIONAL SURETY CORPORATION<br>ASSOCIATED INDEMNITY CORPORATION<br>AMERICAN AUTOMOBILE INSURANCE COMPANY | PRODUCER<br>Brewer & Lord |
|---|---|
| *Stuart D. Sprint*    PRESIDENT | COUNTERSIGNATURE OF AUTHORIZED AGENT<br>*Brewer & Lord* |

180001—1-65 SETS

AWC 0044811

**(Continued from Preceding Page)**

the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at. the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"**nuclear reactor**" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

With respect to injury to or destruction of property, the word "**injury**" or "**destruction**" includes all forms of radioactive contamination of property.

IN WITNESS WHEREOF, FIREMAN'S FUND INSURANCE COMPANY has caused this Policy to be signed by its President and Secretary but this Policy shall not be valid unless countersigned by a duly authorized Agent of the Company.

SECRETARY

PRESIDENT

FINAL PAGE

AWC 0044812

POLICY  XL  U1483

EXCESS LIABILITY POLICY

STOCK COMP/

Renewal of XL

# Drake
## INSURANCE COMPANY OF NEW YORK

55 JOHN STREET, NEW YORK, N.Y. 100

## DECLARATIONS

**Item 1.   Named Insured and Address:** (No., Street, Town, County, State)

A. W. Chesterton
Route 93
Stoneham, Massachusetts

**Item 2.   Policy Period:**
From  Jan. 1, 1977   to   Jan. 1, 1978
12:01 A.M., Standard time at the address of the named insured as stated herein.

**Item 3.** Underlying Insurance:

The Continental Insurance Company –   $5,000,000 each occurrence and aggregate
Umbrella Liability                    in excess of various  primary insurance or
                                      self-insurance.



CORROON & BLACK
OF MASSACHUSETTS, INC.
INSURANCE

One Winthrop Square, Boston, Massachusetts 02110
617-482-4900

**Item 4.** Limit(s) of Coverage
Hereunder:

$15,000,000 each occurrence and aggregate in excess of the limits in Item 3

above.

**Item 5.** Premium:
$13,500.00 flat charge

**Item 6.** Cancellation:
30 days
Date:

**AWC 0045791**

By:

Authorized Representative

## OF NEW YORK

(A stock insurance company, herein called the company)

In consideration of the payment of the premium, in reliance upon the statements in the declarations made a part hereof and subject to all terms of this policy, agree with the insured named in Item 1 of the declarations as follows:

## TERMS AND CONDITIONS

### INSURING AGREEMENT

1. The Company hereby indemnifies the Insured against ultimate net loss in excess of and arising out of the hazards covered ar as defined and in excess of the underlying insurance as shown in Item 3 of the Declarations (hereinafter referred to as "underlyir insurance") but only up to an amount not exceeding the limit(s) shown in Item 4 of the Declarations.

2. Except as may be inconsistent with this Policy, the coverage provided by this Policy shall follow the insuring agreement conditions and exclusions of the underlying insurance (whether primary or excess) immediately preceding the layer of coverage provided by this Policy, including any change by endorsements. The Company shall be notified of any change in coverage or premiu in such underlying insurance and copies thereof shall be furnished to the Company upon request.

3. The limits of the underlying insurance shall be maintained in full effect during the currency of this Policy except f reduction of such limits by exhaustion of aggregate limits (if any) contained therein solely by payment of claims resulting fro accidents or occurrences happening during the period thereof. Failure of the Insured to comply with the foregoing shall not invalida this Policy but in the event of such failure the company shall be liable only to the extent that it would have been liable had t Insured complied therewith.

4. Unless aggregate limits are specifically stated in Items 3 and 4 of the Declarations, the coverage provided by this Poli applies only with respect to each accident or occurrence for limits in excess of the amount provided for same in the underlyir insurance and does not apply over any reduced amount of underlying insurance in the event of the exhaustion or reduction aggregate limits (if any) in the underlying insurance.

5. If aggregate limits are specifically stated in Item 3 and 4 of the Declarations, this Policy will apply in excess of reduc underlying insurance provided such reduction in the underlying insurance is solely the result of accidents or occurrences happeni after the inception date of this Policy. The Insured shall give the Company written notice as soon as possible of any reduction exhaustion of such aggregate limit in the underlying insurance.

6. If more than one insured is named in the Declarations such additional Insured(s) shall not have the effect of increasing t Company's limit of liability for each accident or occurrence stated in Item 4 of the Declarations.

### PREMIUM

7. Premium due the Company for this excess insurance shall be that amount shown in Item 5 of the Declarations and is payab upon delivery of this Policy.

### NOTICE OF LOSS

8. The Insured shall immediately advise the Company of any accident or occurrence which appears likely to result in liabili under this Policy and of subsequent developments likely to affect the Company's liability hereunder. At no time shall the Company called upon to assume charge of the settlement or defense of any claims made or suits brought or proceedings instituted against t Insured, but the Company shall have the right and shall be given the opportunity to associate with the Insured or its underlying insu or insurers, or both, in the control, defense and/or trial of any claims, suits or proceedings which, in the opinion of the Compar involves or appears reasonably likely to involve the Company. If the company avails itself of such right and opportunity, the Insure any underlying insurer or insurers and the Company shall cooperate in the control, defense and/or trial of such claims, suits proceedings, so as to affect a final determination thereof. Failure on the part of the Insured or the underlying insurer or insurers cooperate shall relieve the Company, at its option, of liability under this Policy.

9. The Insured shall be solely responsible for the investigation, settlement, defense and final disposition of any claim made suit brought or proceeding instituted against the Insured to which this Policy would apply and which no underlying insurer or insure is obligated to defend. The Insured shall use due diligence and prudence to settle all such claims and suits which in the exercise sound judgment should be settled, provided, however, that the Insured shall not make or agree to any settlement for any sum, excess of the underlying insurance, without the approval of the Company.

10. The Insured shall (a) cooperate with the underlying insurer or insurers, as required by the terms of the underlying insuranc (b) comply with all the terms and conditions thereof and (c) enforce any right of contribution or indemnity against any person organization who may be liable to the Insured, because of liability with respect to which insurance is afforded under this Policy a the underlying insurance.

### LOSS PAYABLE

11. The Company's obligation to pay any ultimate net loss and costs with respect to any accident or occurrence falling within tl terms of this Policy shall not attach until the amount of the applicable underlying limit has been paid by or on behalf of the Insure on account of such accident or occurrence. The Insured snall make claim for any ultimate net loss and costs under this Policy within period of not exceeding twelve (12) months after, (a) the Insured shall have paid ultimate net loss in excess of the underlying lim. with respect to any accident or occurrence, or (b) the Insured's obligation to pay such amounts shall have been finally determine either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the company.

12. All losses covered by this Policy shall be due and payable by the Company within thirty (30) days after claim has be presented and proper proof of payment of ultimate net loss and costs has been submitted, all in accordance with the terms above.

AWC 0045792

## ULTIMATE NET LOSS AND COSTS

13. Ultimate net loss, as used herein, shall be understood to mean the sums paid in settlement of losses for which the Insured is liable after making deductions for all recoveries, salvages and other insurances (other than recoveries under the underlying insurance policies of co-insurance, or policies specifically in excess hereof), whether recoverable or not, and shall exclude all "Costs".

14. The word "costs", as used herein, shall be understood to mean interest on judgments, investigation, adjustment and legal expenses including taxed court costs and premiums on bonds, for which the Insured is not covered by the underlying insurance, (excluding, however, (a) all expenses for salaried employees and counsel on general retainer, (b) all office expenses of the Insured, and (c) regular fees paid to counsel on general retainer.

15. Costs incurred by the Insured, with the written consent of the Company, shall be apportioned as follows:

(a) in the event of claim or suit arising which appears likely to exceed the underlying insurance limit or limits, no Costs shall be incurred by the Insured without the written consent of the Company.

(b) should such claim or suit be settled previous to going into court for not more than the underlying insurance limit or limits, then no Costs shall be payable by the Company.

(c) should, however, the sum for which the said claim or suit may be settled exceed the underlying insurance limit or limit, then the Company, if it approves such settlement or consents to the proceedings continuing, shall contribute to the Costs incurred by the Insured in the ratio that its proportion of the ultimate net loss as finally adjusted bears to the whole amount of such ultimate net loss.

(d) in the event the Insured elects not to appeal a judgment in excess of the underlying insurance limit or limits, the Company may elect to conduct such appeal at its own cost and expense and shall be liable for the taxable court costs and interest incidental thereto, but in no event shall the total liability of the Company exceed its limit or limits of liability, stated above, plus the costs of such appeal.

(e) in the event a judgment is rendered in excess of the underlying insurance limit or limits and the underlying insurer or insurers elect to appeal such judgment, the duty of obtaining an appeal bond in regard to liability in excess of the underlying insurance limit or limits shall rest with the Insured and its underlying insurer or insurers.

## SUBROGATION AND SALVAGE

16. All salvages, recoveries or payments recovered or received subsequent to a settlement under this Policy shall be applied as recovered or received prior to such settlement and all necessary adjustments shall then be made between the Insured and the Company, provided always that nothing in this clause shall be construed to mean that losses under this Policy are not recoverable until the Insured's ultimate net loss has been finally ascertained.

17. Inasmuch as this Policy is Excess Insurance, the Insured's right of recovery against any person cannot be exclusively subrogated to the company. It is, therefore, understood and agreed that in case of any payment hereunder, the Company will act in concert with all other parties (including the Insured) concerned, in the exercise of such rights of recovery. The apportioning of any amounts which may be so recovered shall follow the principle that any parties (including the Insured) that shall have paid an amount over and above any payment hereunder, shall first be reimbursed up to the amount paid by them, the company is then to be reimbursed out of any balance then remaining up to the amount paid hereunder; lastly the parties (including the Insured) of whom this coverage is in excess are entitled to claim the residue, if any. Expenses necessary to the recovery of any such amounts shall be apportioned between the parties (including the Insured) concerned, in the ratio of their respective recoveries as finally settled.

18. Nothing herein contained shall be construed to mean that the Insured shall be required to enforce by legal action any right subrogation or indemnity before the Company shall pay any loss covered hereunder.

## TERM

19. This Policy applies only to accidents or occurrences happening between the effective and expiration dates shown in Item 2 of the Declarations, unless otherwise cancelled.

## NUCLEAR INCIDENT EXCLUSION

20. It is agreed that this Policy does not apply:

I. Under any Liability Coverage, to injury, sickness, disease, death or destruction

(a) with respect to which an insured under this Policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II. Under any Medical Payments Coverage, or under any Supplementary Payments Provisions relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

AWC 0045793

(a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) h been discharged or dispersed therefrom;

(b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, store transported or disposed of by or on behalf of an insured; or

(c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materia parts or equipment in connection with the planning, construction, maintenance, operation or use of any nucle facility, but if such facility is located within the United States of America, its territories or possessions or Canac this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV. As used herein:

"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source materi special nuclear material or byproduct material; "source material", "special nuclear material", and "byproduct materia have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof; "spent fuel" mea any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear react "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any pers or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or ( thereof; "nuclear facility" means

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time t total amount of such material in the custody of the insured at the premises where such equipment or device located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises us for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-suppc ing chain reaction or to contain a critical mass of fissionable material;

With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioacti contamination of property.

21. This Policy may be cancelled by either party upon written notice, such notice to be not less than the number of days s forth in Item 6 of the Declarations. If cancellation is at the request of the Insured, adjustment of premium shall be at short rate and cancelled by the Company, adjustment shall be pro rata. However, in the event of cancellation or non-renewal of the underlyi insurance immediately preceding this Policy, this Policy terminates as of the same date without notice to the insured. The Compai may, however, cancel this Policy absolutely on five (5) days' notice for non-payment of premium due. Notice shall be given by t Insured to the Company at 55 John Street, N.Y., N.Y. 10038 and by the Company to the Insured at the latter's address as show in the Declarations. Notice by the Company to the first Named Insured, if more than one, shall be deemed notice to any oth interests included as an Insured.

IN WITNESS WHEREOF the Drake Insurance Company of N.Y. has caused this Policy to be signed by its President ar Secretary, but same shall not be binding upon the Company unless countersigned by an authorized representative of the Compan

Secretary                                              President

AWC 0045794



# INSURANCE COMPANY OF NEW YORK
MEMBER OF THE HOWDEN SWANN GROUP

55 JOHN STREET  NEW YORK, N.Y. 10038 ■ 212-349-4654

August 10, 1977

Thomas & Stevens, Inc.
89 State Street
Boston, Massachusetts  02109

Attention:  Theresa Ross

Re:  A. W. Chesterton
     Policy # XL-01483

Dear Theresa:

I am in receipt of your letter of August 3, 1977.

Please mark your records, I will be unable to extend the captioned policy.

If you have any questions, please do not hesitate to contact this writer.

Cordially yours,

John P. McAuley
Senior Underwriter


JPM:cg


AWC 0045795